**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Fetch Compute, Inc., Seth Ian, Greg Graves, Victor Larivee, individually and on behalf of all others similarly situated,

        Plaintiffs,

    v.

Bruce Pon, Trent McConaghy, Christina Pon, Ocean Protocol Foundation Ltd., Ocean Expeditions Ltd., and OceanDAO,

        Defendants.

Case No.: 1:25-cv-09210-DEH

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF OCEAN PROTOCOL FOUNDATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

**MCDERMOTT WILL & SCHULTE LLP**

Joseph B. Evans
James A. Pardo
Lisa Gerson
Daniel H. Kaltman
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 547-5767
jbevans@mcdermottlaw.com
jpardo@mcdermottlaw.com
lgerson@mcdermottlaw.com
dkaltman@mcdermottlaw.com

*Attorneys for Defendant*
*Ocean Protocol Foundation Ltd.*

Dated: February 10, 2026

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................. 2

ARGUMENT .................................................................................................. 5

    I.      THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER OCEAN FOUNDATION ................................................................................. 5

           A.     There Is No Basis For Specific Personal Jurisdiction Under New York's Long Arm Statute .............................................................. 6

           B.     Exercising Personal Jurisdiction Over Ocean Foundation Would Violate Constitutional Due Process ............................................ 10

    II.     EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................................................................................ 13

           A.     Plaintiffs Have Not Alleged Any of the Elements for Fraud (Count One) ............................................................................................ 13

           B.     The CAC Fails To State A Claim For Civil Conspiracy (Count Two) ........................................................................................... 18

           C.     The CAC Fails To State A Claim For GBL Violations (Count Three) ........................................................................................ 18

           D.     The CAC Fails To State A Claim For Breach of Contract (Count Four) and Breach of Covenant of Good Faith and Fair Dealing (Count Five) .................................................................................. 22

           E.     The CAC Fails To State A Claim For Promissory Estoppel (Count Six) ............................................................................................. 24

CONCLUSION ............................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abraham v. American Home Mortgage Servicing, Inc.*,
    947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...................................................................21

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
    18 F.4th 783 (5th Cir. 2021) .................................................................................11

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021).................................................................5, 7

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)..................................................................................18

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
    Case No. 18-cv-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ...........8

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
    884 F.2d 69 (2d Cir. 1989).....................................................................................25

*Arthur v. Orchestrate Bus. LLC*,
    No. 24-CV-02985 (MMG), 2025 WL 2201067 (S.D.N.Y. Aug. 1, 2025) ...............5

*AVRA Surgical Robotics, Inc. v. Gombert*,
    41 F. Supp. 3d 350 (S.D.N.Y. 2014)......................................................................9

*Barron v. Helbiz Inc.*,
    Case No. 20-cv-04703 (LLS), 2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023)..................23, 24

*Basic v. BProtocol Foundation*,
    Case No. 23-cv-533 (RP), 2024 WL 4113751 (W.D. Tex. July 31, 2024) ............12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................13

*Bensusan Restaurant Corp. v. King*,
    126 F.3d 25 (2d Cir. 1997).....................................................................................9

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)....................................................................7

*Berman v. Sugo LLC*,
    580 F. Supp. 2d 191 (S.D.N.Y. 2008)...................................................................23

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007)................................................................10

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)................................................................15

*Cimen v. HQ Cap. Real Est. L.P.*,
   227 A.D.3d 587 (2024) ......................................................................15

*Citibank, N.A. v. K-H Corp.*,
   968 F.2d 1489 (2d Cir. 1992)..............................................................17

*City of New York v. Smokes-Spirits.Com, Inc.*,
   911 N.E.2d 834 (N.Y. 2009)..........................................................21, 22

*Cohen v. Avanade, Inc.*,
   874 F. Supp. 2d 315 (S.D.N.Y. 2012)..................................................23

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013)..........................................................19, 20

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...........................................................................5

*DeAngelis v. Corzine*,
   17 F. Supp. 3d 270 (S.D.N.Y. 2016)....................................................20

*DirecTV Latin Am., LLC v. Park 610, LLC*,
   691 F. Supp. 2d 405 (S.D.N.Y. 2010)....................................................5

*DiStefano v. Carozzi North America, Inc.*,
   286 F. 3d 81 (2d Cir. 2001)................................................................6

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..........................................................................17

*In re EHang Holdings Ltd. Sec. Litig.*,
   646 F. Supp. 3d 443 (S.D.N.Y. 2022)..................................................11

*Ellinghaus v. Educ. Testing Serv.*,
   Case No. 15-cv-3442 (SJF) (AKT), 2016 WL 8711439 (E.D.N.Y. Sept. 30,
   2016) ...............................................................................................21

*Fidrych v. Marriott Int'l Inc.*,
   952 F.3d 124 (4th Cir. 2020) ..............................................................11

*Filler v. Hanvit Bank*,
   156 F. App'x 413 (2d Cir. 2005) .........................................................18

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)............................................................................................10

*Frintzilas v. DirecTV, LLC*,
   731 F. App'x 71 (2d Cir. 2018) ..........................................................................21

*In re Frito-Lay N. Am, Inc. All Natural Litig.*,
   Case No. 12-md-2413 (RRM (RLM), 2013 WL 4647512 (E.D.N.Y. Aug. 29,
   2013) ...................................................................................................................15

*In re Fyre Festival Litig.*,
   399 F. Supp. 3d 203 (S.D.N.Y. 2019)..................................................................16

*In re Gildan Activewear, Inc. Sec. Litig.*,
   636 F. Supp. 2d 261 (S.D.N.Y. 2009)..................................................................15

*Glob. Edge Design Inc. v. Michel*,
   Case No. 20-cv-9654 (PKC), 2021 WL 1549990 (S.D.N.Y. Apr. 20, 2021) ....11, 12

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
   8 F. Supp. 3d 467 (S.D.N.Y. 2014)......................................................................21

*Goshen v. Mut. Life Ins. Co. of New York*,
   98 N.Y.2d 314 (2002) ..........................................................................................19

*Gray v. Seaboard Sec., Inc.*,
   788 N.Y.S.2d 471 (N.Y. 3d Dep't 2005) .............................................................20

*Gucci America, Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)...................................................................................5

*Hadami, S.A. v. Xerox Corp.*,
   272 F. Supp. 3d 587 (S.D.N.Y. 2017)..................................................................14

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019)....25

*Holsworth v. BProtocol Found.*,
   Case No. 20-cv-2810 (AKH), 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ..........12

*Hopwood v. Infinity Contracting Servs. Corp.*,
   217 N.Y.S.3d 586 (N.Y. 2d Dep't 2024) .............................................................23

*Hunt v. Enzo Biochem, Inc.*,
   471 F. Supp. 2d 390 (S.D.N.Y. 2006)..................................................................13

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945)............................................................................................10

*Karnas v. Cuban*,
   Case No. 22-cv-22538, 2025 WL 3759241 (S.D. Fla. Dec. 30, 2025)...................................12

*Kaufman v. Sirius XM Radio, Inc.*,
   474 F. App'x 5 (2d Cir. 2012) .................................................................................................19

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)...................................................................................................24

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)...................................................................................................18

*Lama Holding Co. v. Smith Barney Inc.*,
   88 N.Y.2d 413 (1996) .............................................................................................................16

*Laub v. Faessel*,
   745 N.Y.S.2d 534 (N.Y. 1st Dep't 2002) ..............................................................................17

*MacNaughton v. Young Living Essential Oils, LC*,
   67 F.4th 89 (2d Cir. 2023) ...............................................................................................18, 19

*Matana v. Merkin*,
   957 F. Supp. 2d 473 (S.D.N.Y. 2013)...................................................................................24

*Meany v. Atomic Protocol Sys. OU*,
   Case No. 23-cv-01582 (PAB) (MEH), 2024 WL 4135762 (D. Colo. Sept. 10,
   2024) .......................................................................................................................................12

*Morris v. Gilbert*,
   649 F. Supp. 1491 (E.D.N.Y. 1986) ......................................................................................20

*Nguyen v. FXCM Inc.*,
   364 F. Supp. 3d 227 (S.D.N.Y. 2019)...................................................................................21

*Oden v. Bos. Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...................................................................................22

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
   763 F.3d 198 (2d Cir. 2014)...................................................................................................13

*Pasternack v. Lab'y Corp. of Am. Holdings*,
   27 N.Y.3d 817 (2016) .............................................................................................................16

*Pearson Educ., Inc. v. Shi*,
   525 F. Supp. 2d 551 (S.D.N.Y. 2007).....................................................................................8

*Prospect Funding Holdings, LLC v. Vinson*,
   256 F. Supp. 3d 318 (S.D.N.Y. 2017).....................................................................................5

*Rich v. Maidstone Fin., Inc.*,
   Case No. 98-cv-2569 (DAB), 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ...................14

*Safex Found., Inc. v. SafeLaunch Ventures Ltd.*,
   694 F. Supp. 3d 1 (D.D.C. 2023) .........................................................................................12

*Sandoval v. Abaco Club on Winding Bay*,
   507 F. Supp. 2d 312 (S.D.N.Y. 2007)...................................................................................7

*Schwab v. E*TRADE Fin. Corp.*,
   258 F. Supp. 3d 418 (S.D.N.Y. 2017)...................................................................................16

*Sigma Lithium Corp. v. Gardner*,
   Case No. 23-cv-7403 (DEH), 2025 WL 1268311 (S.D.N.Y. May 1, 2025) ....................8, 9

*Small v. Lorillard Tobacco Co.*,
   94 N.Y.2d 43 (1999) .............................................................................................................22

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009)....................................................................................................18

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   96 F. Supp. 3d 325 (S.D.N.Y. 2015), *aff'd*, 645 F. App'x 72 (2d Cir. 2016) ....................15

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018)..................................................................................................11

*Starr Found. v. Am. Int'l Grp., Inc.*,
   901 N.Y.S.2d 246 (N.Y. 1st Dep't 2010) .............................................................................17

*Stephenson v. PricewaterhouseCoopers, LLP*,
   482 F. App'x 618 (2d Cir. 2012) ..........................................................................................15

*In re Tether & Bitfinex Crypto Asset Litig.*,
   576 F. Supp. 3d 55 (S.D.N.Y. 2021).....................................................................................14

*Thackurdeen v. Duke Univ.*,
   130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016)......................6

*Troma Entertainment, Inc. v. Centennial Pictures Inc.*,
   729 F.3d 215 (2d Cir. 2013)....................................................................................................9

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019)..................................................................................................10

*Walden v. Fiore*,
   571 U.S. 277 (2014)...............................................................................................................11

*Wheeler v. Topps Co., Inc.*,
    652 F. Supp. 3d 426 (S.D.N.Y. 2023)...................................................................20

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001)...................................................................6, 10

*Yuille v. Uphold HQ Inc.*,
    686 F. Supp. 3d 323 (S.D.N.Y. 2023)...................................................................21

**Statutes**

CPLR § 302(a)(1) ...................................................................6, 9

CPLR § 302(a)(2) ...................................................................9

CPLR § 302(a)(3) ...................................................................9

N.Y. General Obligations Law § 5-701(a)(1)...................................................................24

N.Y. General Business Law § 349...................................................................9, 18-22

N.Y. General Business Law § 350...................................................................9, 18-20

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................14, 18

## PRELIMINARY STATEMENT

Plaintiffs rely on non-interactive website posts as their basis for suing Singapore-based Ocean Protocol Foundation Ltd. ("Ocean Foundation") in New York, crying foul after a highly risky crypto investment did not go as they hoped. Plaintiffs have no legitimate claim against Ocean Foundation, in any jurisdiction, because the alleged "fraud" is based on nothing more than global internet publications, hindsight dissatisfaction, and the impact of a cryptocurrency market downturn in October 2025. But most importantly, these Plaintiffs have no business filing their putative Class Action Complaint ("CAC") in New York. Plaintiffs' meritless claims should be dismissed for lack of personal jurisdiction or, alternatively, for failure to state a claim.

Ocean Foundation is a Singapore-based entity with no offices, direct employees, bank accounts, or operations in the United States, let alone in New York. Indeed, Ocean Foundation explicitly *excluded* the entire United States from its initial distribution of the crypto token ("$OCEAN") and, to this day, that token is not available for transacting on centralized cryptocurrency exchanges in New York. Not surprisingly, Plaintiffs' jurisdictional allegations are devoid of any New York-specific fact involving Ocean Foundation. Instead, Plaintiffs rely on generalized allegations about globally accessible websites and blog posts. From those allegations, they attempt an impermissible leap from worldwide internet publication to New York personal jurisdiction. But New York's long-arm statute or constitutional due process does not permit that, and courts in analogous cryptocurrency cases routinely have rejected the exact jurisdiction-by-internet theory Plaintiffs rely on here. The same result—dismissal for lack of personal jurisdiction—should follow in this case.

Even if personal jurisdiction did exist, the CAC fails to state any claim on which relief could be granted. None of the purported "misrepresentations" made by Ocean Foundation or its

co-defendants were false at the time it was made. New York law[1] does not permit fraud-by-hindsight; a statement that was accurate when made does not later become actionable simply because circumstances changed. Moreover, Plaintiffs fail to allege which (if any) of the alleged misstatements any Plaintiff saw or how any of them induced the Plaintiff to act. Nor do Plaintiffs plead any legally cognizable injury from the alleged fraud. Although contending that prices for the cryptocurrency tokens at issue here have declined generally, Plaintiffs do not allege that they (or any putative class member) has ever sold a single token at a loss. New York's damages rule makes clear that such unrealized market losses are not fraud damages.

Plaintiffs' remaining claims fare no better substantively. New York does not recognize civil conspiracy to commit fraud as a standalone cause of action. Plaintiffs' General Business Law ("GBL") claims fail because Plaintiffs do not allege a deceptive transaction occurring in New York, do not plead consumer-oriented conduct, or do not allege a concrete, out-of-pocket injury traceable to any alleged deception. And Plaintiffs' contract and covenant claims fail simply because there is no contract. An aspirational Vision Paper posted on the internet—explicitly labeled informational and contingent on future approvals—does not create a binding agreement with anonymous members of the public.

## STATEMENT OF FACTS[2]

Defendant Ocean Foundation is a non-profit private limited company incorporated and headquartered in Singapore. Ocean Foundation operates the Ocean data platform, a decentralized community whose participants can share data to create and train agentic artificial intelligence ("AI") programs. CAC ¶¶ 16, 49. Ocean Foundation also is the original issuer of the $OCEAN

---

[1] For purposes of this motion only, Ocean Foundation assumes that New York law applies.
[2] The facts herein are from the CAC and assumed true solely for purposes of this motion.

cryptocurrency ("$OCEAN"). Community participants who contribute data to the Ocean platform are compensated in $OCEAN, and those who use the data are charged in $OCEAN. CAC ¶ 54.

Defendant OceanDAO was established in 2020 as a grants program intended to support Ocean Foundation's AI programs and projects by awarding, automatically and autonomously via smart contracts,[3] certain $OCEAN tokens ("Community Tokens") to data contributors on the Ocean platform. CAC ¶¶ 55, 57. Plaintiffs allege that Defendants publicly described OceanDAO as an independent and decentralized initiative when it was launched and that Defendants later stated, in May 2023, that OceanDAO was becoming fully decentralized and autonomous. CAC ¶ 56. Plaintiffs also allege that Ocean Foundation announced the designation of approximately 700,000,000 $OCEAN tokens as Community Tokens, which would be controlled by OceanDAO and could only enter the market through smart contracts. CAC ¶¶ 59–60.

In 2024, non-party Fetch.ai Foundation ("Fetch"), non-party SingularityNET ("Singularity"), and Ocean Foundation proposed merging their activities to a new platform known as the Artificial Superintelligence Alliance (the "Alliance"), an AI superpower that would combine the three companies' AI research and development efforts. CAC ¶¶ 1, 3, 63–65. The Alliance would utilize a single token, $ASI, to compensate data contributors and creators on the platform. CAC ¶ 68. To effectuate that merger, Singularity and Ocean token holders would have their respective tokens converted into $FET, which would then be converted to $ASI. CAC ¶ 3.

Plaintiffs allege the Alliance was presented to the public as being contingent on approval by the Fetch and Singularity token holder communities ($FET and $AGIX holders, respectively). CAC ¶ 74. Plaintiffs allege that the Alliance's Vision Paper ("Vision Paper"), published in April 2024, stated that the approximately 700,000,000 $OCEAN tokens which previously had been set

---

[3] A "smart contract" is computer code stored and run on a blockchain that automatically executes all or parts of an agreement.

aside as Community Tokens would remain controlled by OceanDAO and, after the merger, continue to be earmarked for grants to contributors and creators on the Alliance platform. CAC ¶¶ 75–76. Plaintiffs contend that, to encourage Fetch and Singularity token holders to approve the merger, Defendants made public statements reiterating that the 700,000,000 $OCEAN Community Tokens would remain earmarked for grants after being converted to $ASI. CAC ¶¶ 79–82. Plaintiffs contend that Fetch and Singularity token holders relied on the Vision Paper and Defendants' statements to approve the Alliance. CAC ¶ 81.

According to Plaintiffs, more than a year after the Alliance was formed, Defendants transferred the Community Tokens from OceanDAO to Ocean Expeditions, a Cayman Islands entity incorporated on June 27, 2025. CAC ¶ 87. Plaintiffs contend those transfers were improper because they required approval from OceanDAO's token holders, which was never obtained. CAC ¶¶ 87–88. Plaintiffs allege that approximately four days after the transfers were made to Ocean Expeditions (*i.e.*, on or around July 1, 2025), Defendants began converting the Community Tokens into $FET, ultimately converting 661,218,319 $OCEAN into approximately 286,456,967 $FET. CAC ¶¶ 89–91.

Plaintiffs then contend that, instead of holding the converted $FET as Community Tokens for the Alliance, Defendants sold approximately 263 million of that $FET on the open market. CAC ¶ 95. Ocean withdrew from the Alliance on October 8, 2025. CAC ¶ 96.

Plaintiffs allege that they and all proposed class members are or were holders of $FET, either through pre-merger acquisition or post-merger conversion from $AGIX, and that some Plaintiffs voted in favor of the merger. CAC ¶¶ 11–14. The CAC alleges that class members held or converted their tokens based on Defendants' representations, including the promise to maintain the Community Tokens. CAC ¶ 101. Plaintiffs allege that Defendants' actions to convert $OCEAN Community Tokens to $FET, and then sell that $FET on the open market, caused $FET tokens to

dramatically decrease in value. Plaintiffs seek to recover that decreased value by this action. *Id.*; CAC ¶¶ 121–64.

## ARGUMENT

### I.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER OCEAN FOUNDATION

"To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant." *Arthur v. Orchestrate Bus. LLC*, No. 24-CV-02985 (MMG), 2025 WL 2201067, at *3 (S.D.N.Y. Aug. 1, 2025).[4] Personal jurisdiction may be either general or specific. *Id.* To meet its burden, plaintiff must plead facts that are legally sufficient to establish either general or specific personal jurisdiction, and must do so "separately over each defendant." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). Although the Court must construe all pleadings and factual allegations in Plaintiffs' favor, Plaintiffs "may not rely on conclusory statements without any supporting facts." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 323 (S.D.N.Y. 2017); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 417 (S.D.N.Y. 2010) ("[C]onclusory allegations are not enough to establish personal jurisdiction.").

Plaintiffs do not even attempt to allege general personal jurisdiction,[5] and for good reason: it does not exist. For a foreign corporate entity, general personal jurisdiction may exist only where the entity's "contacts are so 'continuous and systematic' … that it is 'essentially at home' in the state." *Gucci America, Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2014); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (general personal jurisdiction is for those "exceptional"

---

[4] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes and citations are omitted.
[5] *See* CAC ¶ 23 (alleging jurisdiction based solely on a "purposeful availment" theory).

entities engaged in "a continuous and systematic course of doing business [in New York]"). Far from having such "continuous and systematic" business in New York, Ocean Foundation has **nothing** to do with New York. Ocean Foundation is a Singapore entity (CAC ¶ 16) with no offices, employees, banking accounts or business operations in New York, or even the United States. *See* Pon Decl., ¶¶ 3-7.[6] Tellingly, Plaintiffs fail to plead any facts to suggest otherwise.

As for specific personal jurisdiction, "[i]n analyzing a Rule 12(b)(2) motion, courts in New York follow a two-step process. First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute ... Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *Thackurdeen v. Duke Univ.,* 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). Plaintiffs' CAC fails to allege specific personal jurisdiction under any provision of New York's long arm statute, and fails to allege that specific jurisdiction would comport with due process.

### A.    There Is No Basis For Specific Personal Jurisdiction Under New York's Long Arm Statute

When assessing personal jurisdiction, the Court "must look first to the long-arm statute" of New York. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). New York courts exercise specific jurisdiction under CPLR Section 302. *Thackurdeen* 130 F. Supp. 3d at 798-801. To establish specific jurisdiction under Section 302(a)(1), Plaintiffs must demonstrate that Ocean Foundation "transacts any business in New York" and that the claims asserted "arise[] from[] such a business transaction." *Thackurdeen*, 130 F. Supp. 3d at 801. Under Section 302(a)(1), a non-domiciliary "transacts business" only when he "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of

---

[6] Citations to "Pon Decl." are to the Declaration of Bruce Pon, filed concurrently. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (stating that a court can rely on "pleadings and affidavits" in analyzing personal jurisdiction).

its laws." *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 316 (S.D.N.Y. 2007) (emphasis added).

The CAC alleges nothing which comes close to demonstrating such purposeful availment by Ocean Foundation (or any Defendant). Instead, Plaintiffs rely solely on the generic assertion that "Defendants" engaged with "the United States market." CAC ¶ 23. But each defendant's forum contacts must be alleged separately and supported by concrete facts. *See In re Aegean Marine*, 529 F. Supp. 3d at 135. ("To allege personal jurisdiction over a defendant, group pleading is not permitted."). Plaintiffs' group pleading is alone sufficient to dismiss the CAC.

As for the scant facts Plaintiffs do allege against "Defendants," none suffice to establish personal jurisdiction over Ocean Foundation in New York. Plaintiffs' principal theory is that Ocean Foundation purposefully availed itself of New York because of "Defendants … solicitation and distribution of $OCEAN tokens." CAC ¶ 23. But that theory is unsupported by any facts suggesting such solicitation or distribution to New York, and it is directly contradicted by the facts and documents Plaintiffs rely on for their claims.

As an initial matter, none of the putative class representative Plaintiffs are alleged to have actually purchased $OCEAN.[7] *See* CAC ¶¶ 11-14. Nor could they have done so: Ocean Foundation's 2019 $OCEAN initial token distribution explicitly excluded "citizen[s], domiciled in, resident[s] of, or physically present / located" in the United States. Pardo Decl., Ex. A.[8] And although $OCEAN is offered for ***secondary*** market trading on cryptocurrency exchanges Coinbase, Kraken, and Binance.US (*i.e.*, where Ocean Foundation is not a counterparty to any transaction), Kraken and Binance.US do not allow trading of any cryptocurrency by New York

---

[7] Specific personal jurisdiction must be based solely on the claims and contacts of the named plaintiffs. Unnamed putative class members are irrelevant to the jurisdictional inquiry. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021).

[8] Citations to "Pardo Decl." are to the Declaration of James A. Pardo, filed concurrently.

residents and Coinbase does not allow trading of $OCEAN by New York residents. *Id.*, Exs. B (Coinbase), C (Kraken), and D (Binance.US). Tellingly, Plaintiffs do not otherwise allege any marketing or sales to anyone in New York. *See Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, 2018 WL 2022626, at *5 (S.D.N.Y. Apr. 30, 2018) ("*Alibaba*") (granting motion to dismiss for lack of personal jurisdiction and holding, "[Plaintiff] has not alleged that even a single sale of [Defendant's cryptocurrency] has occurred in New York ... [Plaintiff's] evidence that the majority of visitors to the [Defendant's] website are based in the *United States* is insufficient, without more, to establish a reasonable probability that at least one New York sale has occurred.") (emphasis in original).

Ocean Foundation's actions to specifically exclude New York (and, indeed, the entire United States) from initial distribution of $OCEAN, and the fact that $OCEAN remains unavailable for trading on any centralized cryptocurrency exchange in New York, are the antithesis of the "purposeful availment" required by New York's long-arm statute.

Plaintiffs also contend that alleged misrepresentations in the Vision Paper, Press Release, and "various blog posts" solicited Plaintiffs to act in reliance on those materials. CAC ¶ 23; *see also* CAC Exs. 3-10. But those publications and statements by Ocean Foundation—made online from abroad and not directed to any person in New York—do not constitute business transactions or solicitation **in New York**. *See Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction in New York."); *Sigma Lithium Corp. v. Gardner*, 2025 WL 1268311, at *4 (S.D.N.Y. May 1, 2025) (granting motion to dismiss for lack of personal jurisdiction based on telephone and email communications to New York); *see also Alibaba*, 2018 WL 2022626, at *6 n.5 ("Defendants' use of U.S.-based media and U.S.-based platforms, such as GoDaddy.com, Facebook, Youtube, and Twitter ... is also irrelevant to the question of personal

jurisdiction in New York."). Plaintiffs cannot convert globally accessible online statements into purposeful New York conduct.[9]

Jurisdiction under Section 302(a)(2) also is unavailing to Plaintiffs.[10] That provision applies "only [to] tortious acts performed by a defendant who was ***physically present*** in New York." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). The CAC pleads no such tortious acts or statements by Ocean Foundation (a Singapore entity) or any of its employees while in New York.

Finally, Section 302(a)(3), which applies to out-of-state torts causing in-state injury, also fails. "[T]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York" (*Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013)), and such economic harm is all that is alleged here. But even if the complaint did plead a sufficient in-state injury, Section 302(a)(3) also requires that defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods [sold] or services rendered, ***in the state***," or that it "expects or should reasonably expect [its] act to have consequences ***in the state and*** derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3)(i)–(ii) (emphasis added). As already noted, the CAC is devoid of any allegations that Ocean Foundation had any persistent course of conduct in the United States—let alone in New York. There is no basis to conclude that Ocean

---

[9] Because Ocean Foundation did not conduct any business in New York, "the Court need not consider whether the claim here arises from that transaction," the second requirement of Section 302(a)(1). *Sigma Lithium Corp.*, 2025 WL 1268311, at *4.

[10] Section 302(a)(2) and Section 302(a)(3) do not apply to non-tort claims of breach of contract, implied covenant of good faith and fair dealing, promissory estoppel, and GBL Sections 349 and 350. Therefore, Plaintiffs cannot allege jurisdiction of those claims based on those sections. *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014) ("New York law limits § 302(a)(2) jurisdiction to tort claims, so plaintiff cannot rely on this provision to authorize specific jurisdiction for its contract claim.").

Foundation "should reasonably expect its act to have had consequences in [New York]" when it specifically excluded the entire United States from its business. *See* Pon Decl., ¶¶ 3-7.

In sum, the CAC fails to assert any *prima facie* basis for personal jurisdiction over Ocean Foundation under any part of § 302(a). Where, as here, the CAC contains no specific allegations that Ocean Foundation purposefully directed any activity to New York, the Court should decline to find personal jurisdiction under New York's long-arm statute.

**B.    Exercising Personal Jurisdiction Over Ocean Foundation Would Violate Constitutional Due Process**

Because Plaintiffs have failed to establish jurisdiction under § 302(a), the Court need not reach the constitutional inquiry. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007) ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality."). But assuming, *arguendo*, Plaintiffs could meet their burden of proof under the long-arm statute, exercising specific jurisdiction over Ocean Foundation would offend due process. *See Whitaker*, 261 F.3d at 208.

Personal jurisdiction requires a "strong relationship among the defendant, the forum, and the litigation," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021), such that the defendant has "certain minimum contacts." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). "First, the [non-resident] must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the [non-resident's] forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). The CAC fails each element.

As already noted, the CAC alleges no New York contacts—let alone "minimum contacts"—demonstrating purposeful availment. Ocean Foundation's alleged dissemination of a Vision Paper and blog posts from Singapore and accessible worldwide—without individualized outreach, contracts, or operations in New York—does not constitute "purposeful availment" as a matter of law. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (declining specific jurisdiction and holding that "[a]t bottom, the contacts alleged by [plaintiff] between the [defendant], the forum and the litigation amount to a handful of communications and transfers of funds."). Even assuming the New York Plaintiffs saw those materials on the internet and subsequently transacted $FET tokens, the nexus between those acts and New York is too attenuated and fortuitous to satisfy due-process standards. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (The "relationship must arise out of contacts that the defendant *himself* creates with the forum.") (emphasis in original). Indeed, as noted, Ocean Foundation deliberately and explicitly excepted itself not just from New York, but from the United States as a whole.

Courts in this District have held that publishing content on a "website that is accessible nationwide" does not equate to purposeful availment of New York law. *Glob. Edge Design Inc. v. Michel*, 2021 WL 1549990, at *3 (S.D.N.Y. Apr. 20, 2021) (granting motion to dismiss for lack of personal jurisdiction); *see also In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 457-458 (S.D.N.Y. 2022) (Twitter and LinkedIn posts insufficient to confer jurisdiction where not directed at forum). Other Circuits that have addressed similar jurisdictional arguments have reached the same conclusion—online activity available to anyone, anywhere is not enough for specific jurisdiction. *See, e.g.*, *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021) ("[A] defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there."); *Fidrych v. Marriott Int'l Inc.*, 952 F.3d 124, 141-43 (4th Cir. 2020) (no personal jurisdiction where website did not target the forum more than any other forum).

In fact, federal courts in this and other districts, addressing cryptocurrency claims similar to those in this case, routinely have found personal jurisdiction lacking based on ***more*** extensive contacts than those alleged here. In an analogous case involving a Swiss-based blockchain foundation, the court in *Basic v. BProtocol Foundation* dismissed the complaint for lack of personal jurisdiction. 2024 WL 4113751 (W.D. Tex. July 31, 2024), *report and recommendation adopted*, 2024 WL 4113024 (W.D. Tex. Sept. 6, 2024) ("*Basic*"). The court emphasized that "social media posts, available to nearly the entire world" and even conference attendance in the United States could not establish jurisdiction. *Id.* at *7. It concluded that decentralized token availability and online communications, standing alone, were insufficient to satisfy the minimum contacts required to satisfy due process. *Id.*

Numerous other courts have reached the same conclusion. *See, e.g., Holsworth v. BProtocol Found.*, 2021 WL 706549, at *2 (S.D.N.Y. Feb. 22, 2021) (similar facts as *Basic* and declining to find personal jurisdiction in New York "over citizens of another country" based on "communications world-wide"); *Karnas v. Cuban*, 2025 WL 3759241, at *11 (S.D. Fla. Dec. 30, 2025) (dismissing for lack of personal jurisdiction because social media and other press targeted a "global" audience making "[t]he sole jurisdictional hook … a nationwide campaign"); *Meany v. Atomic Protocol Sys. OU*, 2024 WL 4135762, at *5-6 (D. Colo. Sept. 10, 2024) (no personal jurisdiction against Estonian crypto company because plaintiffs did not "allege that [defendant] intentionally direct[ed] its marketing activity at [forum state] rather than just having the [advertisements] accessible there" and that "unlike tangible goods that must be shipped to customers in a forum state, [defendant's cryptocurrency] products can reach users without [defendant] knowing where those users are located."); *Safex Found., Inc. v. SafeLaunch Ventures Ltd.*, 694 F. Supp. 3d 1, 16-17 (D.D.C. 2023) (declining jurisdiction over a foreign crypto company because social media posts "do not themselves evince any effort to target United States business.").

Because the Vision Paper, Press Release, and other blog posts were accessible worldwide but not directed to any New York audience, Ocean Foundation's alleged involvement in those communications falls far short of meeting the New York long-arm statute and constitutionally required due process. Accordingly, the Court should decline to exercise personal jurisdiction and dismiss the complaint with prejudice under Rule 12(b)(2).

## II. EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if the Court had personal jurisdiction over Ocean Foundation—which it does not—the Complaint should be dismissed because Plaintiffs have failed to allege a legally cognizable claim under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the CAC must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Dismissal is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014).

### A. Plaintiffs Have Not Alleged Any of the Elements for Fraud (Count One)

To plead fraud under New York law, a plaintiff must plausibly allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."[11] *Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d

---

[11] Ocean Foundation cites to securities fraud cases in this section despite the fact that Count One is common law fraud "[b]ecause [the elements of common law fraud] are substantially identical to

390, 399 (S.D.N.Y. 2006). Rule 9(b) also requires that "a party must state with particularity the circumstances constituting fraud." *See In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 130 (S.D.N.Y. 2021).

Here, Plaintiffs identify three statements (collectively, "Statements") by Defendants that Plaintiffs contend were misrepresentations that caused them injury:

- Defendants "confirmed they operated a DAO with the goal of developing open-source AI," CAC ¶ 122, with "no central governance structure." CAC ¶ 124 (the "DAO Statements");

- That approximately 700,000,000 $OCEAN Community Tokens "would remain designated for Alliance community incentives after the token merger, and would not be converted or liquidated into treasury tokens," CAC ¶ 122, but would instead "be awarded to community members through autonomous smart contracts." CAC ¶ 124 (the "Community Tokens Statements"); and

- That Ocean Foundation "would join a merged token network with Singularity and Fetch, that the three entities would form a decentralized community, and that this community would be monitored and guided by the Alliance." CAC ¶ 125 (the "Alliance Statements").

Even accepting Plaintiffs' non-conclusory allegations true, none of these Statements is sufficient to support a fraud claim for at least five, independent reasons.

First, the CAC does not allege that any of the purported Statements were materially false when made. *See Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 599 (S.D.N.Y. 2017). In fact, Plaintiffs' own exhibits to the CAC confirm that the Statements were ***true*** when made.[12] "[E]xpressions of hope for the future do not constitute actionable representations of fact ... [A] party does not make an actionable representation of fact when predicting a future event with no

---

those governing § 10(b), [so] the identical analysis applies." *Rich v. Maidstone Fin., Inc.*, 2002 WL 31867724, at *13 (S.D.N.Y. Dec. 20, 2002).

[12] CAC Exhibits 1, 2, and 6 describe the launch, vision, and implementation of OceanDAO that were true when made. Regarding the Community Tokens Statement, the Plaintiffs' exhibits demonstrate that Community Tokens were distributed through DAO processes and that community grants operated as described. *See, e.g.*, CAC, Ex. 15. And regarding the Alliance Statement, Plaintiffs do not dispute that Ocean Foundation joined the Alliance. *See* CAC, Ex. 13.

knowledge of whether or not the event may occur." *Cimen v. HQ Cap. Real Est. L.P.*, 227 A.D.3d 587, 587 (2024). Here, Plaintiffs do not allege contemporaneous falsity. At most, they allege that subsequent developments diverged from earlier plans or expectations which, of course, happens all the time without fraud or misrepresentation.[13] New York law does not permit such allegations to sustain a fraud claim.

Second, the CAC fails to plead non-conclusory facts supporting a "strong inference" of scienter. *Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012). Plaintiffs allege no particularized facts showing that Ocean Foundation intended not to perform in accordance with its Statements, at the time they were made. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325 (S.D.N.Y. 2015), *aff'd*, 645 F. App'x 72 (2d Cir. 2016) (declining to find scienter and holding that "in retrospect, certain actions or statements may be interpreted or characterized as demonstrating awareness of fraud, fraud by hindsight is not a cognizable theory of relief."). Instead, Plaintiffs allege that Ocean Foundation was motivated "to liquidate the tokens on the open market for their own financial gain." CAC ¶ 93; *see also* CAC ¶ 126. But "[t]he mere fact that … [the alleged] sales occurred does not suffice to establish scienter." *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009). Simply alleging Ocean Foundation's self-interested desire to profit does not give rise to an inference of fraudulent intent. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (general corporate profit motive does not establish scienter); *In re Frito-Lay N. Am, Inc. All Natural Litig.*, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) ("Frito-Lay's generalized motive to … increase sales and profits, does not support a strong inference of fraudulent intent.").

---

[13] Such divergence is even more common where, as here, significant time passed between the statements and alleged consequences. In this case, the majority of statements cited by Plaintiff were made **years** before the merger was even contemplated, not "shortly before Defendants began converting the $OCEAN Community Tokens." CAC ¶ 126.

Third, Plaintiffs fail to plead reliance. Under New York law, a plaintiff alleging fraud must establish it actually heard or read the putative statement and relied on it in some way. *See, e.g.*, *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817 (2016) ("[F]raud is intended to protect a party from being induced to act or refrain from acting based on false representations—a situation which does not occur where, as here, the misrepresentations were not communicated to, or relied on, by plaintiff."). Here, Plaintiffs allege only that "Plaintiffs and Class member relied on [the Statements] when voting to approve the token merger and in acquiring, holding, and converting ASI tokens." CAC ¶ 128. Such conclusory, group pleading does not suffice to plead reliance. The CAC does not allege which Plaintiff saw which statement, when any Plaintiff saw it, or how it influenced any Plaintiff's decision.[14] *Schwab v. E*TRADE Fin. Corp.*, 258 F. Supp. 3d 418, 430 (S.D.N.Y. 2017) (dismissing securities fraud claim for failure to plead reliance because the allegations "fail to show with any sort of particularity that the plaintiff was aware—whether by reading, hearing, or otherwise—of any of the challenged misstatements."); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019) (dismissing fraud claim where there was "no assertion that any plaintiff saw, read, or otherwise noticed" the alleged misrepresentation). Conclusory allegations of reliance, untethered to any pleaded exposure to the alleged misstatements, are insufficient and require dismissal. *Schwab,* 258 F. Supp. 3d at 430 (finding failure to plead reliance because the "allegations of detrimental reliance are entirely conclusory.").

Fourth, Plaintiffs fail to plead cognizable injury. Under New York law, fraud damages are limited to actual, realized pecuniary loss, not expected profits or market value fluctuations. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 422 (1996) (dismissing fraud claim

---

[14] To the extent Plaintiffs argue that they relied on the Vision Paper, the Vision Paper explicitly states that "[b]y accessing this document, you acknowledge and agree that any reliance on or use of the information provided shall be at your sole risk." CAC, Ex. 10 at 38.

because there were "no losses here."). The CAC does not allege that any Plaintiff sold any $FET tokens or otherwise realized a loss. The CAC instead alleges that "the class members have been left ***holding*** tokens." CAC ¶ 8 (emphasis added). Indeed, Plaintiffs Ian and Larivee received exactly what the merger contemplated: converted FET tokens at the agreed ratio determined by the Alliance. *See* CAC ¶¶ 3, 12, 14. In addition, Plaintiffs Fetch Compute and Graves are only alleged to be "a ***holder*** of $FET tokens," conceding that they have, at most, unrealized losses. CAC ¶¶ 11,13 (emphasis added). As the First Department has explained, a fraud claim fails where a plaintiff "remained in possession of the true value of the stock, whatever that value may have been at any given time." *Starr Found. v. Am. Int'l Grp., Inc.*, 901 N.Y.S.2d 246 (N.Y. 1st Dep't 2010).

Finally, even if Plaintiffs could plead injury, they fail to plead causation. A fraud plaintiff must allege that the injury "is the natural and probable consequence of the defrauder's misrepresentation." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992) (dismissing fraud claim based on lack of causation). The CAC does not isolate how any Statements proximately caused Plaintiffs' alleged losses, as opposed to later, independent developments such as general cryptocurrency market fluctuations. Plaintiffs' theory rests on an impermissible market-wide inference that later price declines must have resulted from earlier statements. Such allegations are insufficient as a matter of law. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (dismissing securities fraud claim because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price."); *see also Laub v. Faessel*, 745 N.Y.S.2d 534 (N.Y. 1st Dep't 2002) (dismissing fraud claim because "plaintiff failed to allege or provide any

17

evidence that [defendant's] asserted misrepresentations—rather than market forces—caused plaintiff's alleged losses.").

### B.    The CAC Fails To State A Claim For Civil Conspiracy (Count Two)

New York does not recognize civil conspiracy as an independent cause of action. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). A conspiracy claim "cannot stand alone" and must be dismissed if the underlying independent tort has not been adequately pleaded. *Filler v. Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005) (dismissing conspiracy claim based on insufficiently plead fraud claims). Here, Count Two alleges civil conspiracy based on the fraud inadequately alleged in Count One. Therefore, Count Two should be dismissed. *Id.*

Even if Plaintiffs had alleged a viable fraud claim, Count Two still fails because Plaintiffs contend, without any specifics, that "Defendants agreed amongst themselves." CAC ¶¶ 131-33. Courts routinely dismiss conspiracy claims that rely on "sweeping references to the collective fraudulent actions of multiple defendants" without particularized factual allegations required under Rule 9(b). *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 579–80 (2d Cir. 2005) (dismissing conspiracy claim as insufficient under Rule 9(b)). That is precisely what Plaintiffs have done here. *See* CAC ¶¶ 131-39.

### C.    The CAC Fails To State A Claim For GBL Violations (Count Three)

Count Three alleges violations of GBL §§ 349 and 350. To plead a claim under § 349, a plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). New York courts treat the standard of recovery under § 350 as the same as that under § 349. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th

89, 96 (2d Cir. 2023). The GBL claims fail because the CAC does not plead any transaction that occurred in New York, any consumer-oriented action, or any injury or causation.[15]

The New York Court of Appeals has made clear that because GBL § 349 requires "the transaction in which the consumer is deceived ***must occur in New York***." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324-25 (2002) (emphasis added). This is because applying the statute to out-of-state conduct "would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially lead to the nationwide, if not global, application of [§] 349." *Id.* Some courts have applied *Goshen* to require that a plaintiff "actually view a deceptive statement while in New York," while others have "focus[ed] on where the underlying deceptive 'transaction' takes place." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013). Under either test, Count Three should be dismissed.

Here, the CAC does not allege any deceptive transaction occurring in New York. Although two named Plaintiffs are alleged to be domiciled in New York (CAC ¶¶ 12–13), domicile alone is insufficient. The CAC does not allege that these Plaintiffs reviewed the Vision Paper, press releases, or blog posts in New York, or that any transaction—whether voting on the merger or acquiring, holding, or converting tokens—occurred in New York. *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7-8 (2d Cir. 2012) (rejecting § 349 claim based on "allegations that deceptive terms and conditions were published on a website controlled from New York, when there is no further allegation of plaintiffs' receipt of this information in New York").

Likewise, Plaintiffs' allegations that Defendants disseminated "promotional statements, information, and materials" to "the public at large" and to "potential acquirers of $OCEAN and

---

[15] Ocean Foundation combines its arguments for alleged violations of GBL Sections 349 and 350 because courts typically analyze them "together." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89 (2d Cir. 2023) (citing *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 at n.1 (2002) (noting these statutes are "otherwise identical.")).

$FET tokens" say nothing about New York-specific transactions. CAC ¶ 148; *Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426 (S.D.N.Y. 2023) (dismissing GBL claims and holding that "Courts have consistently rejected claims under § 349 and § 350 based solely on an out-of-state customer's interacting with a website controlled in New York."). Nor do Plaintiffs allege that any $OCEAN or $FET trading occurred on a New York-based platform or through a New York-based intermediary, because such sales and trading could not have occurred for the reasons already noted. *See supra* Section I.A; *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013) ("cases focus on where the underlying deceptive 'transaction' takes place, regardless of the plaintiff's location or where the plaintiff is deceived."). Because the CAC alleges nothing specific to New York, let alone conduct that actually occurred in New York, Plaintiffs' GBL claims are insufficient under *Goshen* and should be dismissed.

Plaintiffs' GBL claims also fail because GBL § 349 is directed at deceptive practices involving consumer goods or services purchased for personal, family, or household use—not investments. *Gray v. Seaboard Sec., Inc.,* 788 N.Y.S.2d 471 (N.Y. 3d Dep't 2005) (holding that suit against broker for failing to provide investment advice did not state a claim under § 349). Courts consistently have held that investments fall outside the statute's scope; investments are not "consumer goods" akin to "an automobile, a television set, or the myriad consumer goods found in supermarkets." *Morris v. Gilbert*, 649 F. Supp. 1491, 1497 (E.D.N.Y. 1986). Even Plaintiffs concede that the tokens at issue here are akin to investment commodities (CAC ¶ 40, "[crypto] tokens maintain characteristics similar to commodities that can be sold or traded on exchanges"), and that their alleged injuries derive entirely from market-price movements and alleged "depress[ion]" of token value—not from the purchase or use of goods or services in the ordinary consumer sense. CAC ¶¶ 115–16, 129, 139, 146–47; *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 284 (S.D.N.Y. 2016) ("[Plaintiff's] § 349 claim suffers from the same defects as the claim in

*Morris*. [Plaintiff] invested funds … as investments, not as a purchase of traditional consumer goods."); *see also Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 241 (S.D.N.Y. 2019) (dismissing GBL claim because "forex trading is not consumer-oriented conduct" but "traded as investments.").

Just as with its fraud claim (*see supra* Section II.A.), Plaintiffs' GBL claims also fail because the CAC "fail[s] to allege that any of the misrepresentations were false when made." *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 345 (S.D.N.Y. 2023) (dismissing GBL claims). To state a claim under § 349, it is not enough to allege that defendant's statement was accurate when made but became inaccurate later because of subsequent developments or events. *Ellinghaus v. Educ. Testing Serv.*, 2016 WL 8711439, at *8 (E.D.N.Y. Sept. 30, 2016).

Likewise, Plaintiffs have not pled causation or cognizable injury. A plaintiff must allege that the deceptive act was the direct cause of an actual injury, typically an out-of-pocket loss. *See*, *e.g.*, *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834 (N.Y. 2009); *Abraham v. American Home Mortgage Servicing, Inc.*, 947 F. Supp. 2d 222 (E.D.N.Y. 2013). Courts reject claims where alleged injuries are speculative, derivative of third-party conduct, or untethered to any specific deceptive transaction. *See Smokes-Spirits.Com*, 911 N.E.2d at 838–40; *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71 (2d Cir. 2018).

Here, Plaintiffs do not specify which Vision Paper statements, press releases, or blog posts any Plaintiff read, when or where that occurred, or how the statements directly caused Plaintiff to enter a specific transaction that produced an out-of-pocket loss. *See* CAC ¶¶ 140–49; *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F.Supp.3d 467, 480 ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."). Indeed, Plaintiffs' claim is based entirely on an impermissible "fraud-on-the-market" general causation

theory, *i.e.*, that because Defendants allegedly issued misleading public statements on the internet, Plaintiffs necessarily saw them and relied on them (years later, in some cases) when voting on the merger or converting or trading crypto. But New York courts have specifically rejected efforts to import such market-wide presumptions into § 349, which requires a concrete causal link between the alleged deception and each of Plaintiffs' transactions. *See Smokes-Spirits.Com*, 911 N.E.2d at 838–40. The CAC is devoid of any such details, and the publication and dissemination of statements on the internet is not enough. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 903 (E.D.N.Y. 2018) (dismissing GBL claim for causation because "[n]one of these allegations provides any indication that Plaintiff ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view [] the website.").

Finally, even if it were permissible to plead causation in the abstract, as Plaintiffs have not done, they do not plead any realized, out-of-pocket loss traceable to the alleged deception because, as demonstrated above, the CAC contains no allegations that any Plaintiff sold their $FET or otherwise suffered a realized loss. *See supra* Section II.A.; *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (dismissing GBL claim because it "sets forth deception as both act and injury" and, thus, "contains no manifestation of either pecuniary or actual harm."). Plaintiffs' claims of a speculative loss of hoped-for token value do not qualify as quantifiable damages required under the GBL. *See* CAC ¶¶ 129, 139, 146–47 (asserting "financial harm" and "depress[ed]" token value, but no concrete loss measure).

### D. The CAC Fails To State A Claim For Breach of Contract (Count Four) and Breach of Covenant of Good Faith and Fair Dealing (Count Five)

Plaintiffs' theory that the "Vision Paper and public statements … solicited Plaintiffs and Class members to enter into a covenant," and that by "approving the token merger and acquiring,

holding, and converting ASI tokens, Plaintiffs … accepted this solicitation, thereby creating a binding contract" fails as a matter of law. CAC ¶¶ 151-52.

A contract based claim that fails "to allege facts sufficient to show that an enforceable contract existed" must be dismissed. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). The Vision Paper is unsigned, not addressed to Plaintiffs, does not identify contractual counterparties, and does not state any of the essential terms to create a binding agreement. *See Hopwood v. Infinity Contracting Servs. Corp.*, 217 N.Y.S.3d 586 (N.Y. 2d Dep't 2024). In short, it is an aspirational "vision statement," not a contract or offer to contract. And as if the absence of usual contract terms were not clear enough, the Vision Paper explicitly states that it is "for ***informational purposes only***" and "not to be construed as … a recommendation to engage in any specific transactions, including but not limited to the purchase, sale, or holding of any crypto-assets." CAC, Ex. 10 at 36 (emphasis added); *see Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320-21 (S.D.N.Y. 2012) (finding no contract existed between the parties because of disclaimer language). A document that disclaims even ***recommending*** a transaction cannot be a contract memorializing such a transaction.

In *Barron v. Helbiz Inc.*, this District addressed a similar attempt to make a cryptocurrency whitepaper an enforceable contract. 2023 WL 5672640, at *10 (S.D.N.Y. Sept. 1, 2023). The court dismissed the breach of contract claim, stating:

> "[T]he Whitepaper does not read as an offer that conveys an intent to be bound. Rather, it is a marketing material, a sales tactic more akin to a promotion or an advertisement, which in New York are generally not considered to be offers … Even plaintiffs characterize whitepapers as generally spelling out the nature of the proposed coin, the economics of its operations, how the funds raised will be used, and its technical details, among others … Without more definite statements, the broad generalizations made in the Whitepaper regarding future performance cannot be read as contractual promises. To find otherwise would be to hamstring

defendants to one business plan, with no room for organic growth or pivots in other directions."

*Id.* (cleaned up).

Just like the whitepaper in *Barron*, the Vision Paper here set forth the "economics of the operation" (*i.e.*, conversion rates between $FET and $OCEAN) and the "technical details" of the Alliance (*i.e.*, structure and voting). *Id.*; *see generally* CAC Ex. 10; CAC ¶ 63 ("The Vision Paper outlines the Platforms' joint mission."); CAC ¶ 70 ("The Vision Paper detailed the factors taken into consideration by the Platforms when determining the exchange rates."). The same result (dismissal) should follow.

Even if the Vision Paper could be a "contract," it would be barred by New York's Statute of Frauds. Under New York General Obligations Law § 5-701(a)(1), any agreement that "[b]y its terms is not to be performed within one year from the making thereof" is void unless memorialized in a signed writing. The alleged contract here, as Plaintiffs portray it, is an unsigned, open-ended governance and tokenomics framework that by its terms extended well beyond one year.

Plaintiffs' Count Five for breach of the covenant of good faith and fair dealing fails because such a covenant can exist only where "the parties [are] in a contractual relationship." *Matana v. Merkin*, 957 F. Supp. 2d 473, 493 (S.D.N.Y. 2013) (dismissing good faith and fair dealing claim because there was no contractual relationship between the parties). No such contract existed between Ocean Foundation and Plaintiffs.

### E.    The CAC Fails To State A Claim For Promissory Estoppel (Count Six)

"A claim for promissory estoppel requires Plaintiff[s] to show 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). The CAC does not meet these requirements for the same reasons the fraud claim fails. *See supra* Section II.A. The

Vision Paper and any other alleged statements do not set forth any "clear and unambiguous promises." *See supra* Section II.D; *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (dismissing promissory estoppel claim because plaintiff "has not alleged a sufficiently unambiguous promise."). Like Plaintiffs' fraud claim, the CAC alleges nothing to establish when, how, and in what context any of the Plaintiffs viewed the alleged promises and relied upon them. *See supra* Section II.A. Moreover, Count Six suffers from the same fatal damages theory as Plaintiffs' fraud and GBL claims. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989) (Damages in promissory estoppel claims are "only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages.").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the CAC for lack of personal jurisdiction over Ocean Foundation or, if it concludes personal jurisdiction exists, dismiss the CAC for failure to state a claim as to Ocean Foundation.

Dated:    February 10, 2026    Respectfully Submitted,
          New York, New York

                                  **MCDERMOTT WILL & SCHULTE LLP**

                                  By:  */s/ James A. Pardo*
                                        Joseph B. Evans
                                        James A. Pardo
                                        Lisa Gerson
                                        Daniel H. Kaltman
                                        One Vanderbilt Avenue
                                        New York, New York 10017
                                        Telephone:  (212) 547-5767
                                        jbevans@mcdermottlaw.com
                                        jpardo@mcdermottlaw.com
                                        lgerson@mcdermottlaw.com
                                        dkaltman@mcdermottlaw.com

                                        *Attorneys for Defendant Ocean Protocol Foundation Ltd.*

25