**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FETCH COMPUTE, INC., SETH IAN, GREG GRAVES, VICTOR LARIVEE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | 1:25-cv-9210-DEH **ORAL ARGUMENT REQUESTED** |
| Plaintiffs, | |
| -against- | |
| BRUCE PON, TRENT MCCONAGHY, CHRISTINA PON, OCEAN PROTOCOL FOUNDATION LTD., OCEAN EXPEDITIONS LTD., AND OCEANDAO, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**OCEAN EXPEDITIONS LTD. AND OCEANDAO'S**
**MOTION TO DISMISS THE COMPLAINT**

MORRISON COHEN LLP
Jason Gottlieb
Michael Mix
Emma McGrath
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendants Ocean Expeditions Ltd. and OceanDAO (through its successor-in-interest Ocean Expeditions Ltd.)*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF FACTS .................................................................... 3

ARGUMENT ................................................................................ 6

   I.   THE COURT LACKS PERSONAL JURISDICTION OVER OE AND OCEANDAO 6

      A.   The Court Lacks General Personal Jurisdiction ............................ 7

      B.   The Court Lacks Specific Personal Jurisdiction ........................... 9

          1.   *The Complaint Fails to Satisfy CPLR 302* ...................... 9

          2.   *The Exercise of Specific Jurisdiction Would Not Comport with Due Process* 13

   II.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST OE OR OCEANDAO 14

      A.   The Complaint Engages In Impermissible Group Pleading ................. 14

      B.   The Complaint Fails to State a Claim for Fraud Against OE or OceanDAO ....... 16

          1.   *The Complaint Fails to Allege Any Misstatements by OE or OceanDAO* ...... 16

          2.   *The Complaint Fails to Allege Fraud Because Fraud Allegations Cannot Be Based on Future Promises, and Also Fails to Plead Scienter, Reliance, Causation, and Cognizable Injury* ...... 17

      C.   The Complaint Fails to State a Claim for Civil Conspiracy Against OE or OceanDAO .................... 17

          1.   *The Civil Conspiracy Claim Fails Because Plaintiffs Have Not Stated Any Other Causes of Action* .................. 17

          2.   *The Complaint Fails to Plead that OE or OceanDAO Entered Into Any Agreement or Committed any Overt Act in Furtherance of Any Agreement* .. 18

      D.   The Complaint Fails to State a Claim under New York GBL §§ 349 and 350 Against OE or OceanDAO .................. 18

          1.   *The Complaint Fails to Allege that OE or OceanDAO Engaged in Consumer-Oriented Deceptive Conduct or False Advertising* .................. 18

          2.   *The GBL §§ 349 and 350 Claims Should Be Dismissed For Failure to Plead Consumer-Oriented Conduct At All, Failure to Plead Actionable Misstatements, and Failure to Plead Causation, Cognizable Injury, or Out-of-Pocket Losses* .................. 19

      E.   The Complaint Fails to State a Claim for Breach of Contract Against OE or OceanDAO .................. 20

          1.   *The Complaint Fails to Allege that OE or OceanDAO Was a Party to Any Contract* .................. 20

          2.   *The Vision Paper and Certain Public Statements Do Not Constitute an Enforceable Contract and Are Barred by the Statute of Frauds* .................. 21

F.    The Complaint Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.................................................................................................. 21

G.    The Complaint Fails to State a Claim for Promissory Estoppel Against OE or OceanDAO.............................................................................................................. 22

H.    The Complaint Fails to Allege that OceanDAO Was the Alter Ego of Pon and McConaghy.......................................................................................................... 23

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021) .................................................................7, 15

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ................................................................................14

*Barlow v. Skroupa*,
    221 A.D.3d 482 (1st Dep't 2023) ...........................................................................22

*Bates v. Abbott Laboratories*,
    2025 WL 65668 (2d Cir. Jan. 10, 2025) .................................................................19

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016).....................................................................................8

*Button v. Doherty*,
    2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025)........................................................18

*Colon v. Pina*,
    2025 WL 2207756 (S.D.N.Y. Aug. 4, 2025) ..........................................................22

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...........................................................................................7, 8, 9

*Dane v. UnitedHealthcare Ins. Co.*,
    974 F.3d 183 (2d Cir. 2020).....................................................................................14

*Dulsky v. Worthy*,
    2013 WL 4038604 (S.D.N.Y. July 30, 2013) .........................................................16

*Edwards v. Sequoia Fund, Inc.*,
    938 F.3d 8 (2d Cir. 2019).........................................................................................20

*Enemigo Ltd. v. Trinity Bev. Grp., LLC*,
    2025 WL 1425731 (S.D.N.Y. May 16, 2025) ..................................................... 17-18

*Fin. Tech. Partners LP v. Circle Internet Fin. Ltd.*,
    2024 WL 4817473 (S.D.N.Y. Nov. 18, 2024)........................................................20

*G3100 N. Am., Inc. v. Paris*,
    2014 WL 6604790 (S.D.N.Y. Nov. 21, 2014)........................................................12

*Goldman v. Trinity Sch. of Med.*,
    2025 WL 1099088 (2d Cir. Apr. 14, 2025) .......................................................7, 10

*Golf Grips Depot, Inc. v. Spark Funding LLC*,
  2023 WL 11758581 (E.D.N.Y. Jan. 23, 2023) ......................................................19

*Herrick v. Grindr LLC*,
  765 F. App'x 586 (2d Cir. 2019) .......................................................................22

*Huang v. Valarshash LLC*,
  2023 WL 6143582 (S.D.N.Y. Sept. 20, 2023).................................................7, 9

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*,
  828 F. App'x 740 (2d Cir. 2020) ................................................................. 13-14

*JN Contemporary Art LLC v. Phillips Auctioneers LLC*,
  29 F.4th 118 (2d Cir. 2022) .............................................................................21

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
  8 F.3d 130 (2d Cir. 1993)................................................................................23

*Kirsch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)............................................................................17

*Kirschner v. J.P. Morgan Chase Bank, N.A.*,
  2020 WL 9815174 (S.D.N.Y. Dec. 1, 2020) ...................................................17

*Liu Jo S.P.A. v. Jenner*,
  630 F. Supp. 3d 501 (S.D.N.Y. 2022)..............................................................21

*Mercator Corp. v. Windhorst*,
  159 F. Supp. 3d 463 (S.D.N.Y. 2016)..............................................................20

*Metamorfoza D.O.O. v. Big Funny LLC*,
  2021 WL 735243 (S.D.N.Y. Feb. 25, 2021).....................................................11

*Murray v. Stone*,
  230 A.D.3d 1066 (1st Dep't 2024) ..................................................................11

*Negrete v. Citibank, N.A.*,
  759 F. App'x 42 (2d Cir. 2019) .......................................................................16

*Nesbeth v. New York City Mgmt., LLC*,
  2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) .......................................................15

*NG v. Sedgwick Claims Mgmt. Servs.*,
  2025 WL 579960 (S.D.N.Y. Feb. 21, 2025)......................................................22

*Owens v. Ronemus*,
  2024 WL 3105605 (S.D.N.Y. June 24, 2024) .....................................................9

*Pincione v. D'Alfonso*
    506 F. App'x 22 (2d Cir. 2012) ......................................................... 10-11

*In re Platinum-Beechwood Litig.*,
    427 F. Supp. 3d 395 (S.D.N.Y. 2019) ................................................ 15

*Raad v. Bank Audi S.A.L.*,
    2025 WL 1214139 (2d Cir. 2025) ...................................................... 10

*Rodriguez v. It's Just Lunch Int'l*,
    2009 WL 39972 (S.D.N.Y. Feb. 17, 2009) ......................................... 15

*Rosenblatt v. Coutts & Co. AG*,
    750 F. App'x 7 (2d Cir. 2018) ........................................................... 10

*S.G. v. Bank of China Ltd.*,
    2024 WL 1861158 (S.D.N.Y. Apr. 29, 2024) ................................. 14-15

*Saphirstein v. Mauzone Mania LLC*,
    2017 WL 3278893 (E.D.N.Y. July 31, 2017) ..................................... 19

*Shiplane Transp. Inc. v. Hwy 31 Exch. Inc.*,
    2024 WL 3862136 (S.D.N.Y. Aug. 19, 2024) ................................. 6, 7

*Sigma Lithium Corp. v. Gardner*,
    2025 WL 1268311 (S.D.N.Y. May 1, 2025) ....................................... 11

*Sonora Holding B.V. v. Cukurova Holding A.S.*,
    750 F.3d 221 (2d Cir. 2014) ............................................................... 8

*Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC*,
    2018 WL 1610416 (S.D.N.Y. Mar. 30, 2018) ............................... 23-24

*Style Stitch, Inc. v. Avyan Grp. LLC*,
    2025 WL 2710105 (S.D.N.Y. Sept. 23, 2025) ................................ 8, 10

*Sunward Electronics, Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ................................................................. 13

*Thackurdeen v. Duke Univ.*,
    660 Fed. App'x 43 (2d Cir. 2016) ........................................................ 8

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
    729 F.3d 215 (2d Cir. 2013) ............................................................... 11

*Troncoso v. TGI Friday's, Inc.*,
    2020 WL 3051020 (S.D.N.Y. June 8, 2020) ...................................... 19

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...................................................................................................3, 13

*Wang v. Essence International Financial Holdings Ltd.*,
    2025 WL 2450958 (S.D.N.Y. Aug. 26, 2025) .................................................................24

*Wilson v. Dantas*,
    746 F.3d 530 (2d Cir. 2014) .........................................................................................14

*Wolet Capital Corp. v. Walmart Inc.*,
    2021 WL 242297 (S.D.N.Y. Jan. 25, 2021) ...................................................................20

*Zielinski v. Martuscello*,
    2025 WL 1160357 (S.D.N.Y. Apr. 21, 2025) ................................................................14

## Other Authorities

CPLR 301 ...........................................................................................................................8-9

CPLR 302(a)(1)-(4) ...................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(2) ........................................................................................................1

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1, 14

Fed. R. Civ. P. 8 ............................................................................................................14, 15

Fed. R. Civ. P. 9(b) .......................................................................................................15, 16

N.Y. General Business Law § 349 ..................................................................................18, 19

N.Y. General Business Law § 350 ..................................................................................18, 19

Defendants Ocean Expeditions Ltd. ("OE") and OceanDAO (through its successor-in-interest OE) respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) to dismiss the November 4, 2025 Complaint (Dkt. No. 1, the "Complaint" or the "Compl.") filed by Plaintiffs Fetch Compute, Inc., Seth Ian, Greg Graves, Victor Larivee (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs have sued OE and OceanDAO in a misguided attempt to blame someone after a different Defendant, Ocean Protocol Foundation Ltd. ("Ocean Foundation"), justifiably left a business arrangement called the Artificial Superintelligence Alliance (the "Alliance"). The facts alleged in the Complaint illustrate that the Court lacks personal jurisdiction over OE and OceanDAO, and the Complaint contains no allegations of anything OE or OceanDAO did wrong. The Complaint should be dismissed as against OE and OceanDAO.

Plaintiffs allege that the Alliance was a combination of three decentralized artificial intelligence projects: Fetch.ai Foundation Pte. Ltd. ("Fetch"), SingularityNet Foundation ("Singularity"), and Defendant Ocean Foundation. The three platforms' tokens were merged; holders of the Ocean token ($OCEAN) or the Singularity token ($AGIX) converted their tokens to the Fetch token, to be renamed $ASI but continuing to trade under the Fetch ticker $FET. Eventually, a conflict arose among the Alliance members, and Ocean Foundation withdrew from the Alliance, leading to this dispute. Plaintiffs do not allege that either OE or OceanDAO was a member of the Alliance.

The Complaint alleges that OceanDAO held certain $OCEAN tokens designated as "Community Tokens," *i.e.*, they could be distributed to users as autonomous rewards under incentive programs. (In June 2025, OE was formed and OceanDAO transferred all of its assets to OE. OE thus is OceanDAO's successor-in-interest.)

Plaintiffs – a Delaware corporation, two individuals domiciled in New York, and one individual domiciled in California – held $FET or $AGIX tokens; those $AGIX tokens were converted into $FET tokens after the merger.  Plaintiffs broadly allege that OceanDAO converted $OCEAN community tokens to $FET and sold such $FET tokens to the open market, and the increased supply of $FET caused the $FET price to decrease.

Plaintiffs, who are not $OCEAN tokenholders and who are faced with the reality that there was nothing inherently unlawful about converting one's $OCEAN tokens to $FET and selling the resulting $FET into the open market, decided to manufacture a made-for-litigation argument that in Alliance-related documents and press releases, certain Defendants – other than OE or OceanDAO – allegedly made misrepresentations about the decentralized nature of OceanDAO and that $OCEAN community tokens would be used for autonomous rewards programs.

There are numerous fatal flaws with Plaintiffs' theory as against OE and OceanDAO.

First, the Court lacks personal jurisdiction over OceanDAO and OE.  Neither Defendant is incorporated in, or has its principal place of business in, New York, and so general jurisdiction is lacking.

Because the Complaint does not allege any actions taken by OE or OceanDAO in New York or any connection whatsoever to New York, Plaintiffs cannot meet any of the specific jurisdiction factors under the New York long-arm statute CPLR 302(a).  Moreover, the exercise of specific jurisdiction over OE or OceanDAO would not comport with due process.  The only alleged contact with New York in the entire Complaint is the fact that two of the four Plaintiffs are domiciled in New York.  But Plaintiffs' domicile alone is precisely the sort of attenuated contact that the United States Supreme Court, in *Walden v. Fiore*, held was insufficient to confer

specific jurisdiction.  571 U.S. 277, 285-86 (2014).  *Walden* thus mandates dismissal of the Complaint for lack of personal jurisdiction.

Second, in addition to the lack of personal jurisdiction, the Complaint fails to state a claim against OE or OceanDAO.  The Complaint attempts to assert various torts and statutory violations, but does not make <u>any</u> actual allegations of wrongdoing against OE or OceanDAO.  All of the alleged misrepresentations were made by <u>other</u> individuals or entities, and the group-pleaded allegations cannot be countenanced.

Finally, the Complaint's offhand allegation that OceanDAO was the alter ego of Defendants Pon and McConaghy does not meet the high bar to impute one defendant's actions to another.

In short, the inclusion of OE and OceanDAO in this litigation is a bad faith attempt to sue as many Defendants as possible.  The Complaint should be dismissed as to OE and OceanDAO.

### STATEMENT OF FACTS[1]

This action concerns the Alliance, an alliance of three decentralized projects with the "goal of developing decentralized AI in an ethical and acceptable manner."  Compl. ¶¶ 1-2.  The alliance consisted of Fetch, Singularity, and Defendant Ocean Foundation.[2]  Compl. ¶¶ 43-50.  There are no allegations that OE or OceanDAO was ever a member of the Alliance.

---

[1]    Facts from the Complaint that are set forth in this Statement of Facts are presumed true only for purposes of this motion to dismiss.  OE and OceanDAO do not concede the truth of any of the allegations made in the Complaint and hereby reserve and preserve all of their rights to deny or contest any allegation made therein.  If the Complaint's allegations of who allegedly did what are somewhat confusing, that fault arises from the Complaint's imprecise allegations and group pleading, as discussed further *infra*.  Regardless, the simple truth is that there are no specific allegations against OE or OceanDAO themselves.

[2]    The Complaint repeatedly utilizes the defined term "Ocean," which Plaintiffs define as Ocean Foundation, not OE or OceanDAO.  Compl. ¶ 16.

Prior to joining the alliance, each Alliance member had issued its own token. Ocean Foundation issued the $OCEAN token. Compl. ¶ 16. Fetch "operated a digital utility token, '$FET.' The $FET token powers Fetch.ai, a decentralized machine learning platform for applications such as asset trading, gig economy work, and energy grid optimization, and indeed the entire alliance." Compl. ¶ 45. Singularity "operates a digital token, '$AGIX.'" Compl. ¶ 48.

The three platforms "announced their joint founding of the Alliance in a vision paper published in April 2024 (the "Vision Paper"). Compl. ¶ 61 & Ex. 10. The Complaint does not allege that OE or OceanDAO authored the Vision Paper; to the contrary, the Vision Paper was published by the Alliance (of which neither OE nor OceanDAO was a member). *Id.* The Alliance determined that $OCEAN and $AGIX tokens would be merged into $FET tokens. Compl. ¶ 68. "The merged tokens were to be renamed $ASI, but continue to trade under Fetch ticker, $FET." *Id.* "[I]t was agreed that upon completion of the merger, the total supply of $FET tokens was to be 2,630,547,141. This would be comprised of 866,700,367 tokens allocated to Singularity, 1,152,997,575 tokens allocated to Fetch and 610,849,199 tokens allocated to [Ocean Foundation]." Compl. ¶ 72. "$OCEAN token holders had the right to receive 0.433226 $FET tokens per $OCEAN token tendered. $AGIX token holders had the right to receive 0.433350 $FET tokens per $AGIX token tendered." *Id.*

OceanDAO was created in 2020 by Ocean Foundation, "purportedly as a grants DAO created to fund Ocean community projects that were curated by the Ocean community." Compl. ¶ 17. The Complaint explains that a decentralized autonomous organization, or "DAO," is a "widely adopted governance model"; "[e]ntities operating with a DAO governance model agree to abide by a shared code or covenant with the community. This mutually adopted code creates a stable and cohesive network with agreed-upon mechanisms for rewarding contributors to the

community and for collective decision-making." Compl. ¶ 34. A "true DAO governance model, once established, allows community members to engage with the organization by holding the organization's tokens. Tokens are typically acquired through self-executing 'smart' contracts on the blockchain. The DAO token holders may, for example, vote to establish what contributions to the DAO will receive a reward, such as for providing computing power or data to the entire network or contributing certain AI code." Compl. ¶¶ 34-35. Accordingly, OceanDAO is a dispersed group of tokenholders; it is not incorporated in, and does not have its principal place of business in, any particular jurisdiction.

In 2021, Ocean Foundation issued a press release (the "Press Release") in which Ocean Foundation "announced that it had pledged 180 million of its tokens to the community via grants in an effort to build the network of participants." Compl. ¶ 55 & Ex. 5. "Under the proposed DAO structure … $OCEAN tokens would be automatically and autonomously awarded via 'smart contracts' to contributors who satisfied pre-determined requirements. The tokens awarded for such projects were called 'Community Tokens.' When users engaged in activities that enhanced the community, Ocean automatically issued the user a certain amount of $OCEAN Community Tokens as a reward." Compl. ¶ 57. Plaintiffs do not allege that OE or OceanDAO wrote the Press Release, and the Press Release itself states that it was written by Ocean Foundation. Compl. Ex. 5.

The Complaint alleges that "as part of the token merger and vote solicitation process, Defendants promised the community, including Plaintiffs and other Alliance members, that the Alliance would retain the community incentive designation of approximately 700,000,000 $OCEAN tokens allocated for community purposes by [Ocean Foundation] prior to the token merger after their conversion to $FET tokens. … [Ocean Foundation] thus represented to the

5

public, through the Alliance Vision Paper, that 700,000,000 $OCEAN Community Tokens would remain community tokens and not treasury tokens after implementation of the token merger."   Compl. ¶¶ 75-76 & Ex. 10.   Aside from group-pleaded allegations against "Defendants," there are no allegations that any such statements were made by OE or OceanDAO. Compl. ¶¶ 73-82.

Plaintiffs claim that OE was incorporated in the Cayman Islands on June 27, 2025. Compl. ¶ 87.  "Three days later, Defendants transferred all OceanDAO assets to [OE], including hundreds of millions of $OCEAN Community Tokens."  *Id.*  Accordingly, "OceanDAO was converted into [OE]."  Compl. ¶ 18.  Plaintiffs allege that after July 1, 2025, "Defendants, directly or through [Ocean Foundation] and/or [OE], converted 661,218,319 $OCEAN Community Tokens into 286,456,967.46 $FET tokens."  Compl. ¶ 90.  "Once converted into $FET tokens, Defendants proceeded to liquidate the tokens on the open market for their own financial gain."  Compl. ¶ 93.  The Complaint alleges that the sale of $FET tokens into the open market led to a decrease in the value of $FET tokens.  Compl. ¶¶ 101, 108.

Ocean Foundation then withdrew from the Alliance on October 8, 2025.  Compl. ¶ 96.

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER OE AND OCEANDAO

"In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction."  *Shiplane Transp. Inc. v. Hwy 31 Exch. Inc.*, 2024 WL 3862136, at *3 (S.D.N.Y. Aug. 19, 2024) (citation omitted).  Because this is a diversity action, Compl. ¶ 22, "personal jurisdiction is governed by the law of the forum state – here, New York – and the requirements of due process."  *Goldman v. Trinity Sch. of Med.*, 2025 WL 1099088, at *1 (2d Cir. Apr. 14, 2025) (citation omitted).

6

The Court thus must engage in a two-part analysis to determine whether there is personal jurisdiction over a non-resident.  *Shiplane*, 2024 WL 3862136, at \*3.  First, the Court must determine whether the exercise of jurisdiction is appropriate under the New York long-arm statute.  Second, the Court must determine whether such exercise comports with due process.  *Id.*  Plaintiffs cannot rely on the many group-pleaded allegations against "Defendants" to establish jurisdiction.  "Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021).

Plaintiffs fail to meet their burden.  The Complaint vaguely asserts that all six Defendants "are subject to personal jurisdiction in this district where they have purposefully availed themselves of the United States market as more fully set forth below, but including: (i) the solicitation and distribution of \$OCEAN tokens; (ii) the dissemination of the Vision Paper …; (iii) issuance of the Press Release…; and (iv) solicitation of persons in this district to acquire \$OCEAN tokens, convert \$OCEAN tokens, and acquire \$FET tokens in reliance on the statements in the Vision Paper, Press Release, and various blog posts."  Compl. ¶ 28.  Those allegations do not subject OE or OceanDAO to personal jurisdiction in New York.

A.     **The Court Lacks General Personal Jurisdiction**

"General personal jurisdiction subjects a defendant to suit on all claims."  *Huang v. Valarshash LLC*, 2023 WL 6143582, at \*2 (S.D.N.Y. Sept. 20, 2023) (citation omitted).  Under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.  For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.  With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for

general jurisdiction." *Id.* at 137 (citations, quotation marks, brackets, and ellipses omitted). "[E]xcept in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business—the 'paradigm' cases." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

Courts in this circuit repeatedly apply *Daimler* to hold that no general jurisdiction exists for a corporate entity that does not have its place of incorporation or its principal place of business in New York. *See Thackurdeen v. Duke Univ.*, 660 F. App'x 43, 45 (2d Cir. 2016) ("General jurisdiction over a corporate defendant satisfies due process only if the defendant is headquartered or incorporated in the forum state or is otherwise 'at home' in that state. Plaintiffs have not alleged that either defendant satisfies this requirement") (internal citations omitted); *Sonora Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (no personal jurisdiction over corporation where "New York is neither [its] place of incorporation nor its primary place of business."); *Style Stitch, Inc. v. Avyan Grp. LLC*, 2025 WL 2710105, at *3-4 (S.D.N.Y. Sept. 23, 2025) (no general jurisdiction over entity with its place of incorporation and principal place of business in New Jersey).

The Complaint does not allege that OE or OceanDAO is incorporated in New York or has its principal place of business in New York. Compl. ¶ 19. To the contrary, the Complaint concedes that OE "is a Cayman Island limited liability company." *Id.* OceanDAO, as a DAO, was not incorporated and had no principal place of business, but in any event has been "converted into [OE]." Compl. ¶ 18. Thus, according to the principles articulated in *Daimler*,

8

neither OE nor OceanDAO is "at home" in New York and there is no general jurisdiction over either Defendant.[3]

### B.    The Court Lacks Specific Personal Jurisdiction

"Specific personal jurisdiction subjects a defendant to suit only on claims that arise from the defendant's conduct in the forum." *Huang*, 2023 WL 6143582, at *3 (citation omitted). As explained above, in order to establish specific personal jurisdiction, Plaintiffs must sufficiently allege <u>both</u> a statutory and constitutional basis for jurisdiction. The Complaint fails to meet either base.

### 1.    *The Complaint Fails to Satisfy CPLR 302*

New York's long arm statute for specific jurisdiction, CPLR 302(a), provides:

> [a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or 3. commits a tortious act without the state causing injury to person or property within the state … if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

The Complaint does not specify the subsection of CPLR 302(a) on which Plaintiffs rely. Regardless, the Complaint contains no factual allegations fulfilling any of the prongs of CPLR 302(a).

---

[3]    Because general jurisdiction plainly would not comport with due process as articulated in *Daimler*, it is not necessary to determine whether CPLR 301 provides for general jurisdiction over them or whether the "doing business" test of CPLR 301 even remains viable after *Daimler*. *See Owens v. Ronemus*, 2024 WL 3105605, at *5 n.4 (S.D.N.Y. June 24, 2024).

<u>First</u>, the Complaint contains no allegations that OE or OceanDAO transacted any business within New York or contracted anywhere to supply goods or services in the state. The Complaint thus fails to meet CPLR 302(a)(1).

The Second Circuit has explained that "[t]o establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Raad v. Bank Audi S.A.L.*, 2025 WL 1214139, at *1 (2d Cir. 2025). "For purposes of the New York long-arm statute, transacting business means purposeful activity-some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum State." *Style Stitch*, 2025 WL 2710105, at *4. The "'overriding criterion' in determining whether an entity 'transacts any business' in New York within the meaning of the statute is whether the entity purposefully avails itself of the privilege of conducting activities within New York." *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 9-10 (2d Cir. 2018) (citation and quotation marks omitted).

The Complaint contains no non-conclusory facts whatsoever of <u>any</u> business transacted by OE or OceanDAO in New York. As explained above, neither OE nor OceanDAO was a party to the Vision Paper, did not disseminate the Press Release, and is not alleged to have made any other statements. Regardless, "general marketing efforts, including its website and email campaigns," are not sufficient to confer specific jurisdiction under CPLR 302(a)(1) if not "specifically targeted at New York residents." *Goldman*, 2025 WL 1099088, at *2.

<u>Second</u>, because the Complaint contains no allegations that OE or OceanDAO committed any tortious actions within the state of New York, Plaintiffs cannot satisfy CPLR 302(a)(2). *See Pincione v. D'Alfonso*, 506 F. App'x 22, 25 (2d Cir. 2012) ("CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he

performed the wrongful act.") (quotation marks omitted); *Sigma Lithium Corp. v. Gardner*, 2025 WL 1268311, at *6 (S.D.N.Y. May 1, 2025) ("Sigma does not contend that Valim was physically present in New York at the time of the alleged misrepresentation; CPLR § 302(a)(2) is therefore inapplicable.").

Third, the Complaint fails to meet CPLR 302(a)(3) because the Complaint fails to allege that OE or OceanDAO committed a tortious act outside of New York causing injury to persons or property within New York, and also fails to meet the subsections of CPLR 302(a)(3).

The Complaint does not allege that OE or OceanDAO committed any tortious act whatsoever. Neither OE nor OceanDAO authored the Vision Paper or the Press Release, and are not alleged to have made any misrepresentations. Compl. ¶¶ 73-82. *See Metamorfoza D.O.O. v. Big Funny LLC*, 2021 WL 735243, at *5 (S.D.N.Y. Feb. 25, 2021) (no jurisdiction under CPLR 302(a)(3) where "Plaintiff has failed to plausibly plead that Defendants committed a tortious act.").

The Complaint also does not allege an "injury to person or property within the state." "It is well-settled that residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction under section 302(a)(3) … The suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013). (citations, quotation marks, and brackets omitted). "In the context of a commercial tort, where the damage is solely economic, the situs of a commercial injury is where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred." *Murray v. Stone*, 230 A.D.3d 1066, 1066 (1st Dep't 2024). Any potential loss

suffered by Plaintiffs – the decrease in the value of their $FET tokens – would be "solely economic," and thus cannot provide a basis for jurisdiction.

The Complaint further fails to meet the two subsections of CPLR 302(a)(3). CPLR 302(a)(3)(i) is not satisfied because the Complaint fails to plead that OE or Ocean DAO "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." "In essence, in order to exercise jurisdiction over Defendants pursuant to section 302(a)(3)(i), the Defendants must be engaged in 'some ongoing activity *within New York State*' … Section 302(a)(3)(i) requires something more than a one shot single business transaction." *G3100 N. Am., Inc. v. Paris*, 2014 WL 6604790, at *5 (S.D.N.Y. Nov. 21, 2014), quoting *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997) (cleaned up, emphasis in original). The Complaint contains no allegations of ongoing activity in New York State by OE or OceanDAO.

CPLR 302(a)(3)(ii) also is not satisfied because the Complaint fails to plead that OE or OceanDAO "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The "'derived substantial revenue' requirement 'narrows the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character.'" *G31000*, 2014 WL 6604790, at *5, quoting *Ingraham*, 90 N.Y.2d at 599. In addition to failing to allege a tortious act expected to have consequences in New York, the Complaint contains no allegations whatsoever concerning any revenue derived in New York by OE or OceanDAO.

Fourth, the Complaint fails to meet CPLR 302(a)(4) because there are no allegations that OE or OceanDAO own, use, or possess any real property within New York.

2.    *The Exercise of Specific Jurisdiction Would Not Comport with Due Process*

Likewise, the exercise of specific jurisdiction over OE or OceanDAO would not comport with due process.

The United States Supreme Court has explained that "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284 (2014). The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (emphasis in original). The analysis also "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there … it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state." *Id.* at 286. Additionally, a "plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

Here, the Complaint does not allege any relationship between OE or OceanDAO themselves and New York. The <u>only</u> connection to New York in the entire Complaint is that two of the four Plaintiffs are domiciled in New York. *See* Compl. ¶¶ 12-13. That is precisely the theory of specific jurisdiction that the Supreme Court foreclosed in *Walden*. As such, the exercise of specific jurisdiction over OE or OceanDAO would be inconsistent with due process. *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 745 (2d

Cir. 2020) (plaintiff's domicile in New York "is insufficient, standing alone, to satisfy due process").

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST OE OR OCEANDAO

In addition to the lack of personal jurisdiction over OE or OceanDAO, the Complaint fails to state a claim.

"To survive a rule 12(b)(6) motion to dismiss, the complaint must include enough facts to state a claim to relief that is plausible on its face." *Wilson v. Dantas*, 746 F.3d 530, 535 (2d Cir. 2014) (citation and quotation marks omitted). "Although all allegations contained in the complaint are assumed to be true, this tenet is inapplicable to legal conclusions." *Id.* (citation and quotation marks omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (citation omitted).

### A.    The Complaint Engages In Impermissible Group Pleading

The Second Circuit has explained that Rule 8 "requires, at a minimum, that a complaint gives each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). A complaint that "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct … fail[s] to satisfy this minimum standard." *Id. See also Zielinski v. Martuscello*, 2025 WL 1160357, at *3 (S.D.N.Y. Apr. 21, 2025) ("As currently written, the Court must find that the Complaint engages in impermissible group pleading and lumps all the Defendants together in each claim and provides no factual basis to distinguish their conduct."); *S.G. v. Bank of China Ltd.*, 2024 WL 1861158, at *4 (S.D.N.Y. Apr. 29, 2024) ("Where, as here, a complaint lumps all the defendants together in each claim and provides no factual basis to distinguish their

conduct, it fails to satisfy this minimum standard.  And, relevant here, the fact that separate legal entities may have a corporate affiliation does not alter this pleading requirement."); *Nesbeth v. New York City Mgmt., LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) (dismissing complaint due to impermissible group pleading and explaining "[t]hat separate legal entities might share a corporate affiliation does not alter the requirement of pleading in a manner that provides fair notice to each defendant of the claims against it.").

The prohibition against group pleading is even more strict under Rule 9(b), which governs the Complaint's fraud claim.  *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 453 (S.D.N.Y. 2019) ("These allegations rely on impermissible group pleading that does not satisfy Rule 9(b)"); *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111, 147 (S.D.N.Y. 2021) ("A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b)."); *Rodriguez v. It's Just Lunch Int'l*, 2009 WL 399728, at *4 (S.D.N.Y. Feb. 17, 2009) ("General allegations against a group of defendant[s] are insufficient to satisfy Rule 9(b).").

The Complaint violates both Rule 8 and Rule 9(b) because it is replete with allegations made against "Defendants" generally, without specifying to which of the six Defendants Plaintiffs refer.  *See* Compl. ¶¶ 1-2, 4-10, 57, 73, 75, 77, 80-81, 83, 85-103, 105-08, 110-11, 122-27, 129, 131-39, 143-49, 151-54, 156, 158-59, 161, 163-64.  Illustrating the absurdity of Plaintiffs' group pleading stratagem, numerous allegations made against all "Defendants" collectively <u>pre-date</u> OE's incorporation on June 27, 2025.  Compl. ¶ 87.  It is literally impossible for OE to have been involved in many of the allegedly wrongful activities set forth in the Complaint and ascribed to all "Defendants."  Accordingly, the Court should reject Plaintiffs' attempt to circumvent their pleading obligation and should disregard those allegations made

against all Defendants collectively.  Absent allegations <u>specifically</u> against OE or OceanDAO, no cause of action can be sustained against them.

**B.**    **The Complaint Fails to State a Claim for Fraud Against OE or OceanDAO**

The Complaint does not sufficiently allege that OE or OceanDAO committed fraud.  The "elements of fraud under New York law are:  [1] a misrepresentation of material fact, [2] the falsity of that representation, [3] knowledge by the party who made the representation that it was false when made, [4] justifiable reliance by the plaintiff, and [5] resulting injury." *Negrete v. Citibank, N.A.*, 759 F. App'x 42, 47 (2d Cir. 2019) (quotation marks omitted).  "Claims for fraud must be pled with 'particularity'" under Fed. R. Civ. P. 9(b), which "ordinarily requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where the when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (citation and quotation marks omitted).[4]

*1.    The Complaint Fails to Allege Any Misstatements by OE or OceanDAO*

There are no non-conclusory allegations of any misstatements by OE or OceanDAO. Plaintiffs point to alleged misstatement in the Vision Paper, the Press Release, and various press releases and social media and blog posts.  Compl. ¶¶ 73-82, 122-25.  But crucially, none of those allegedly false statements were made by OE or OceanDAO.  Compl. ¶¶ 73-82.

Plaintiffs cannot state a fraud claim against OE or OceanDAO without any particular allegations of any specific misstatements made by them.  *See Dulsky v. Worthy*, 2013 WL 4038604, at *5 (S.D.N.Y. July 30, 2013) (dismissing fraud claim against defendants where "plaintiffs have failed to plead with particularity that Deluca or IRG made any false statements to

---

[4]    The Complaint does not allege what state's law applies to Plaintiffs' common law claims. Given that Plaintiffs and Defendants collectively reside in several different jurisdictions, OE and OceanDAO utilize New York law on this motion.  If the Court determines that another state's law applies to the common law claims, OE and OceanDAO respectfully request that they be permitted to file a supplement describing that state's law.

plaintiffs – as discussed above – or that plaintiffs relied on those statements to their detriment."); *Kirschner v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 9815174, at *18 (S.D.N.Y. Dec. 1, 2020) ("It is well-settled that a plaintiff who alleges fraud against multiple defendants must plead with particularity by setting forth separately acts complained of by each defendants"); *Hunt*, 471 F. Supp. 2d at 408 (dismissing fraud claim against defendants who never "made a single misleading statement").  Because there are no allegations of any misstatements by OE or OceanDAO, the fraud claim should be dismissed against them.

       2.     *The Complaint Fails to Allege Fraud Because Fraud Allegations Cannot Be Based on Future Promises, and Also Fails to Plead Scienter, Reliance, <u>Causation, and Cognizable Injury</u>*

OE and OceanDAO adopt and incorporate by reference the portions of the motion to dismiss filed on February 10, 2026 by Ocean Foundation (Dkt. No. 34, the "Ocean Foundation Motion") arguing that the fraud claim (1) cannot be based on future promises, (2) fails to plead reliance, (3) fails to plead scienter, and (5) fails to plead a cognizable injury, and (6) fails to plead causation.

**C.    The Complaint Fails to State a Claim for Civil Conspiracy Against OE or <u>OceanDAO</u>**

       1.     *The Civil Conspiracy Claim Fails Because Plaintiffs Have Not Stated Any <u>Other Causes of Action</u>*

"New York does not recognize an independent tort of conspiracy."  *Kirsch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citations omitted).  Accordingly, if the Complaint has not stated any other causes of action, "it necessarily fails to state an actionable claim for civil conspiracy."  *Id.*  Because, as explained herein, the Complaint does not state a claim against OE or OceanDAO, Plaintiffs cannot establish a civil conspiracy claim.

   2. *The Complaint Fails to Plead that OE or OceanDAO Entered Into Any*
     *Agreement or Committed any Overt Act in Furtherance of Any Agreement*

  Additionally, the Complaint fails to sufficiently allege the elements of civil conspiracy.

"To satisfy the elements of civil conspiracy, a plaintiff must demonstrate the primary tort, as well

as: (1) an agreement between two or more parties; (2) an overt act in furtherance of that

agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and

(5) resulting damage or injury." *Enemigo Ltd. v. Trinity Bev. Grp.*, *LLC*, 2025 WL 1425731, at

*5 (S.D.N.Y. May 16, 2025) (citation and quotation marks omitted).  There are no factual

allegations that OE or OceanDAO agreed with any other Defendant to do anything.  Without an

agreement, OE and OceanDAO could not have taken any overt acts in furtherance of that

agreement, could not have intentionally participated in the furtherance of that agreed-upon plan

or purpose, and could not have damaged Plaintiffs.  *See id.* (dismissing civil conspiracy claim

because complaint "fails to allege any facts that might suggest the Selby defendants agreed to

participate in a conspiracy or committed any overt act, intentional or otherwise, in furtherance of

that agreement"); *Button v. Doherty*, 2025 WL 2776069, at *4 (S.D.N.Y. Sept. 30, 2025)

("conclusory allegations of conspiracy are wholly insufficient") (citation and quotation marks

omitted).

**D.** **The Complaint Fails to State a Claim under New York GBL §§ 349 and 350**
  **Against OE or OceanDAO**

   1. *The Complaint Fails to Allege that OE or OceanDAO Engaged in*
     *Consumer-Oriented Deceptive Conduct or False Advertising*

  For similar reasons to why Plaintiffs do not state a fraud claim against OE or OceanDAO,

they do not state a claim under GBL §§ 349-50.  GBL § 349, among other things, makes it

unlawful to engage in any "deceptive act[] or practice[] in the conduct of any business, trade or

commerce or in the furnishing of any service" in New York.  GBL § 350 prohibits "[f]alse

18

advertising in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.   Both claims often are analyzed together, and require the plaintiff to "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."   *Bates v. Abbott Labs.*, 2025 WL 65668, at *1 (2d Cir. Jan. 10, 2025) (citation and quotation marks omitted).

As explained above, there are no allegations that OE or OceanDAO made any consumer-facing statements whatsoever, let alone any that are deceptive or constitute false advertising.   *See Golf Grips Depot, Inc. v. Spark Funding LLC*, 2023 WL 11758581, at *5 (E.D.N.Y. Jan. 23, 2023) (dismissing GBL § 349 claim against defendant because plaintiffs "do not specify what [defendant] said or did"); *Troncoso v. TGI Friday's, Inc.*, 2020 WL 3051020, at *30 (S.D.N.Y. June 8, 2020) (dismissing GBL§§ 349 and 350 claims against defendant due to lack of allegations that defendant "was engaged in the allegedly misleading labeling"); *Saphirstein v. Mauzone Mania LLC*, 2017 WL 3278893, at *3 (E.D.N.Y. July 31, 2017) (dismissing GBL §§ 349 and 350 claims due to lack of allegations that certain defendants "themselves are liable for the alleged nutritional mislabeling").   Accordingly, the GBL §§ 349 and 350 claims should be dismissed as against OE and OceanDAO.

   2.   *The GBL §§ 349 and 350 Claims Should Be Dismissed For Failure to Plead Consumer-Oriented Conduct At All, Failure to Plead Actionable Misstatements, and Failure to Plead Causation, Cognizable Injury, or <u>Out-of-Pocket Losses</u>*

OE and OceanDAO adopt and incorporate by reference the portions of Ocean Foundation Motion arguing that the GBL §§ 349 and 350 claims fail because:  (1) the Complaint does not allege a deceptive transaction occurring in New York, (2) there are no factual allegations of consumer-oriented conduct whatsoever (pleaded against any Defendant), (3) the Complaint fails

to allege any statements that were false when made, and (4) the Complaint fails to plead causation, a cognizable injury, or out-of-pocket losses.

### E. The Complaint Fails to State a Claim for Breach of Contract Against OE or OceanDAO

#### 1. The Complaint Fails to Allege that OE or OceanDAO Was a Party to Any Contract

There are no allegations that OE or OceanDAO was a party to any contract, which is fatal to the Complaint's claim for breach of contract.  "To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019).  "A breach of contract claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal, and a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 469 (S.D.N.Y. 2016) (citations and internal quotation marks omitted).  *See also Fin. Tech. Partners LP v. Circle Internet Fin. Ltd.*, 2024 WL 4817473, at *3 (S.D.N.Y. Nov. 18, 2024) (dismissing contract claim against defendant who was not a party to the relevant contract); *Wolet Capital Corp. v. Walmart Inc.*, 2021 WL 242297, at *4 (S.D.N.Y. Jan. 25, 2021) (same).

Here, there are no allegations that OE or OceanDAO was party to any contract.  The alleged "contract" consists of the Vision Paper and assorted "public statements."  Compl. ¶ 151. As explained above, OE and OceanDAO did not author the Vision Paper and there are no allegations of any public statements made by OE or OceanDAO.  As such, OE and OceanDAO cannot be liable for breach of contract and the claim should be dismissed as against them.

2.      *The Vision Paper and Certain Public Statements Do Not Constitute an*
        <u>*Enforceable Contract and Are Barred by the Statute of Frauds*</u>

OE and OceanDAO adopt and incorporate by reference the portions of the Ocean

Foundation Motion arguing that the Vision Paper and various "public statements" do not

constitute an enforceable contract and the alleged agreement is barred by the Statute of Frauds.

**F.      The Complaint Fails to State a Claim for Breach of the Covenant of Good
        <u>Faith and Fair Dealing</u>**

"[I]mplicit in every contract is a covenant of good faith and fair dealing which

encompasses any promises that a reasonable promisee would understand to be included." *JN*

*Contemporary Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (quotation

marks and ellipses omitted).  The "implied covenant of good faith and fair dealing includes a

promise that neither party to a contract shall do anything that has the effect of destroying or

injuring the right of the other party to receive the fruits of the contract, or to violate the party's

presumed intentions or reasonable expectations." *Id.* (quotation marks omitted).

OE and OceanDAO cannot be liable for breach of the covenant of good faith and fair

dealing because, as noted above, they are not party to any contract.  *See Liu Jo S.P.A. v. Jenner*,

630 F. Supp. 3d 501, 518 (S.D.N.Y. 2022) ("A cause of action based upon a breach of a

covenant of good faith and fair dealing requires a contractual obligation between the parties.

Because no such contract exists between Liu Jo and Elite and Society, Liu Jo has failed to state a

claim of breach of the implied covenant of good faith against Elite or Society").

Additionally, there are no factual allegations that OE or OceanDAO breached any such

covenant.

G. **The Complaint Fails to State a Claim for Promissory Estoppel Against OE or OceanDAO**

The elements of promissory estoppel are "(i) a sufficiently clear and unambiguous promise; (ii) reasonable reliance on the promise; and (iii) injury caused by the reliance." *NG v. Sedgwick Claims Mgmt. Servs.*, 2025 WL 579960, at *4 (S.D.N.Y. Feb. 21, 2025).

The Complaint fails to allege any promise made by OE or OceanDAO, or that Plaintiffs relied on such promise.  The Complaint claims in conclusory fashion that "Defendants made clear unambiguous promises in public statements and through the Alliance Vision Paper that $OCEAN Community Tokens would remain designated for community incentives."  Compl. ¶ 161.  But, as explained above, there are no factual allegations that OE or OceanDAO made any such "promises."  Indeed, the examples of statements listed in ¶ 161 of the Complaint are all written by other Defendants, not OE or OceanDAO.  *See Colon v. Pina*, 2025 WL 2207756, at *10 (S.D.N.Y. Aug. 4, 2025) (dismissing promissory estoppel claim against one particular defendant because "Colon has not alleged a clear and unambiguous promise made by GTB on which he relied, and thus cannot state a claim against GTB"); *Barlow v. Skroupa*, 221 A.D.3d 482, 484 (1st Dep't 2023) ("plaintiffs fail to state a cause of action for promissory estoppel as against Katz and Luff because the complaint fails to allege any 'clear and unambiguous' promise by either one of them").  There similarly are no allegations that Plaintiffs suffered any damages resulting from reliance on any promise by OE or OceanDAO.  *See Herrick v. Grindr LLC*, 765 F. App'x 586, 592 (2d Cir. 2019) (affirming dismissal of promissory estoppel claim where plaintiff "has failed to explain how his injury was sustained … by reason of his reliance on the alleged promise") (internal quotation marks omitted).

**H.    The Complaint Fails to Allege that OceanDAO Was the Alter Ego of Pon and McConaghy**

As a last gasp, the Complaint offhandedly alleges that "it is unclear whether OceanDAO was a distinct legal entity or an alter ego that Pon and McConaghy used to carry out their scheme." Compl. ¶ 17.  Plaintiffs do not have sufficient confidence in their allegations to avoid the use of conditional language like "it is unclear whether," and Plaintiffs do not specify to which "Pon" Defendant they refer.  No matter; Plaintiffs have not met the high bar to plead alter ego in any event.[5]

OceanDAO, like a prototypical DAO, was not a corporate entity, but instead a "widely adopted governance model" that "allows community members to engage with the organization by holding the organization tokens," Compl. ¶¶ 34-35.  In other words, a DAO is a dispersed group of tokenholders that governs a digital assets project.  We are unaware of any case that has found that anyone is the alter ego of a DAO.

Regardless, under basic alter ego principles, Plaintiffs fail to meet the high bar to disregard the corporate (or in this case, non-corporate) form.  Typically, the "law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on the shareholders."  *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993).  But because OceanDAO was not incorporated, it has no state of incorporation.

OceanDAO's successor-in-interest OE, though, is a Cayman entity, and "Cayman Islands law permits piercing corporate veils, but only in 'exceptional cases' where 'special circumstances exist indicating that the corporate form is a mere façade concealing true facts.'" *Stillwater Liquidating LLC v. Net Five Palm Pointe, LLC*, 2018 WL 1610416, at *9 (S.D.N.Y.

---

[5]    The Complaint also alleges that Defendants Bruce Pon, Christina Pon, and Trent McConaghy are "viewed by the markets as the alter ego of Ocean," Compl. ¶ 52, but, as noted above, "Ocean" is defined as Ocean Foundation, Compl. ¶ 16.

Mar. 30, 2018) (citation and brackets omitted).  "Traditionally, exceptional circumstances have been found when a company (1) engages in conduct that is illegal, or *ultra vires* … (2) perpetrates a fraud against the minority shareholders and the wrongdoers themselves are in control of the company, or (3) passes a resolution which requires a qualified majority by simple minority."  *Id.* at \*24-25.  *See also Wang v. Essence International Financial Holdings Ltd.*, 2025 WL 2450958, at \*2 n.1 (S.D.N.Y. Aug. 26, 2025) (same).  The Complaint contains no allegations meeting the "exceptional circumstances" required to pierce OE's corporate veil.

To the extent New York law applies, the Court should reach the same result.  To pierce the corporate veil under New York law, the plaintiff "must show: (1) the owners exercise completed domination of the corporation in respect to the transaction attacked, and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  *Wang*, 2025 WL 2450958, at \*2.  "A plaintiff must allege more than a defendant's improper or bad faith actions; rather, the plaintiff must adequately allege the existence of a corporate obligation and that defendant exercised complete domination and control over the corporation and abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice."  *Id.* (citation, quotation marks, and brackets omitted).  There are no allegations whatsoever coming close to such criteria.

Accordingly, the Court should disregard the Complaint's alter ego allegation.

## **CONCLUSION**

For the reasons set forth herein, OE and OceanDAO (through its successor-in-interest OE) respectfully request that the Court dismiss the Complaint as against them.

24

Dated:  New York, New York
         February 24, 2026

MORRISON COHEN LLP

By:   _/s/ Jason Gottlieb_____
      Jason Gottlieb
      Michael Mix
      Emma McGrath
      909 Third Avenue
      New York, New York 10022
      (212) 735-8600
      jgottlieb@morrisoncohen.com
      mmix@morrisoncohen.com
      emcgrath@morrisoncohen.com

*Attorneys for Defendants Ocean Expeditions Ltd.*
*and OceanDAO (through its successor-in-interest*
*Ocean Expeditions Ltd.)*