**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Fetch Compute, Inc., Seth Ian, Greg Graves, Victor
Larivee, individually and on behalf of all others
similarly situated,

        Plaintiffs,

    v.

Bruce Pon, Trent McConaghy, Christina Pon, Ocean
Protocol Foundation Ltd., Ocean Expeditions Ltd.,
and OceanDAO,

        Defendants.

Case No.: 1:25-cv-09210-DEH

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF THE OCEAN INDIVIDUALS' MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE
<u>ALTERNATIVE, FOR FAILURE TO STATE A CLAIM</u>**

**BROWN RUDNICK LLP**

Stephen D. Palley
Daniel L. Sachs
1900 N Street NW, 4th Floor
Washington, DC 20036
(202) 536-1700 (telephone)
spalley@brownrudnick.com
dsachs@brownrudnick.com

*Attorneys for Defendants Bruce
Pon, Christina Pon, and Trent
McConaghy*

Dated: February 24, 2026

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    I.     The Founding of Ocean Foundation and the $OCEAN Token.............................2

    II.    Creation of OceanDAO..........................................................................................3

    III.   Formation of the Artificial Superintelligence Alliance ..........................................4

    IV.   Alleged Activity Post-Alliance Formation .............................................................5

ARGUMENT ......................................................................................................................... 6

    V.     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE
          OCEAN INDIVIDUALS.........................................................................................6

         A.    There Is No Basis For Specific Personal Jurisdiction Under New
               York's Long-Arm Statute ...........................................................................7

         B.    Exercising Personal Jurisdiction Over the Ocean Individuals
               Would Violate Constitutional Due Process ...............................................11

    VI.   EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS HAVE
          FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE
          GRANTED. ............................................................................................................13

         A.    Plaintiffs Have Not Adequately Alleged Any Elements Of Fraud
               (Count One) ...............................................................................................14

              1.    The Fraud Claim Impermissibly Duplicates The Breach of
                       Contract Claim ............................................................................. 15

              2.    The CAC Fails To Allege A Misrepresentation .......................... 15

              3.    The CAC Lacks Facts Supporting A Strong Inference of
                       Scienter As To The Ocean Individuals ......................................... 17

              4.    Plaintiffs Fail to Plead Specific Reliance...................................... 19

               5.    The CAC Fails to State A Viable Theory Of Injury or
                       Causation Based On a Decrease in Value of the FET Token ....... 20

         B.    The CAC Fails To State A Claim For Civil Conspiracy (Count
                Two)..........................................................................................................21

C.   The CAC Fails To State A Claim For GBL Violations (Count Three)..............................................................................22

D.   The CAC Fails To State A Claim For Breach of Contract (Count Four) and Breach of Covenant of Good Faith and Fair Dealing (Count Five)..........................................................................22

E.   The CAC Fails To State A Claim For Promissory Estoppel (Count Six)..............................................................................24

VII.  Plaintiffs' Alter Ego Allegations Should be Disregarded.....................................24

CONCLUSION..............................................................................................25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
18 F.4th 783 (5th Cir. 2021) ................................................................13

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)..............................................6, 8

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005).................................................................21

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018)..............................10, 20

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
884 F.2d 69 (2d Cir. 1989)...................................................................24

*Arthur v. Orchestrate Bus. LLC*,
2025 WL 2201067 (S.D.N.Y. Aug. 1, 2025) .........................................6

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
510 F. Supp. 3d 108 (S.D.N.Y. 2020)...................................................3

*AVRA Surgical Robotics, Inc. v. Gombert*,
41 F. Supp. 3d 350 (S.D.N.Y. 2014)...................................................10

*Barron v. Helbiz Inc.*,
2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023)........................................23

*Basic v. BProtocol Found.*,
2024 WL 4113751 (W.D. Tex. July 31, 2024) .....................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................14

*Bensusan Rest. Corp. v. King*,
126 F.3d 25 (2d Cir. 1997)...................................................................10

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021)....................................................9

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)..................................................................11

*In re BISYS Sec. Litig.*,
    397 F. Supp.2d 430 (S.D.N.Y. 2005) ............................................................................17, 19

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    467 F. App'x 4 (2d Cir. 2012) ............................................................................24

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*
    4 N.Y.2d 403 (1958) ............................................................................16

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996) ............................................................................17

*Cimen v. HQ Cap. Real Est. L.P.*,
    227 A.D.3d 587 (2024) ............................................................................16, 18

*Citibank, N.A. v. K-H Corp.*,
    968 F.2d 1489 (2d Cir. 1992) ............................................................................20

*Cohen v. Avanade*,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012) ............................................................................23

*Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*,
    2024 WL 1533189 (S.D.N.Y. Apr. 8, 2024) ............................................................................10

*DeAngelis v. Corzine*,
    17 F. Supp. 3d 270 (S.D.N.Y. 2016) ............................................................................22

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ............................................................................21

*In re EHang Holdings Ltd. Sec. Litig.*,
    646 F. Supp. 3d 443 (S.D.N.Y. 2022) ............................................................................12

*Ellington Credit Fund, Ltd., v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ............................................................................15

*Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*,
    2009 WL 3076094 (S.D.N.Y. Sept. 28, 2009) ............................................................................25

*Fidrych v. Marriott Int'l Inc.*,
    952 F.3d 124 (4th Cir. 2020) ............................................................................13

*Filler v. Hanvit Bank*,
    156 F. App'x 413 (2d Cir. 2005) ............................................................................21

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ............................................................................11

iv

*In re Frito-Lay N. Am, Inc. All Natural Litig.*,
2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ............................................................17, 18

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019) ..............................................................................19

*Giuliano v. Barch*,
2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ....................................................................6

*Gomez-Jimenez v. New York Law School*,
103 A.D.3d 13 (1st Dept Dec. 20, 2012) .........................................................................17

*Hanover v. One Commc'ns (Guyana) Inc.*,
2025 WL 948116 (E.D.N.Y. Mar. 28, 2025), appeal dismissed (June 24, 2025)....................12

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).....................24

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
2021 WL 918556 (S.D.N.Y. Mar. 10, 2021) .....................................................................25

*Hunt v. Enzo Biochem, Inc.*,
471 F. Supp. 2d 390 (S.D.N.Y. 2006) ...............................................................................14

*Int'l Shoe Co. v. Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ........................................................................................................11

*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000) ............................................................................................24

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006) ............................................................................................21

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ......................................................................................................20

*Laub v. Faessel*,
297 A.D.2d 28 (2002) ......................................................................................................21

*Long Side Ventures LLC v. Hempacco Co.*,
2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023)...................................................................25

*Matana v. Merkin*,
957 F. Supp. 2d 473 (S.D.N.Y. 2013)...............................................................................23

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
84 N.Y.2d 430 (1994) ......................................................................................................15

v

*Morgulis v. Bus Patrol America, LLC*,
    2024 WL 3639126 (S.D.N.Y. Aug. 1, 2024) .........................................................................15

*Negrete v. Citibank, N.A.*,
    759 F. App'x 42 (2d Cir. 2019) ........................................................................................20

*Oden v. Bos. Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................................22

*Papa's-June Music, Inc. v. McLean*,
    921 F. Supp. 1154 (S.D.N.Y. 1996)...................................................................................15

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
    763 F.3d 198 (2d Cir. 2014).............................................................................................14

*Pasternack v. Lab'y Corp. of Am. Holdings*,
    27 N.Y.3d 817 (2016) ......................................................................................................19

*Pearson Educ., Inc. v. Shi*,
    525 F. Supp. 2d 551 (S.D.N.Y. 2007)...............................................................................10

*Prospect Funding Holdings, LLC v. Vinson*,
    256 F. Supp. 3d 318 (S.D.N.Y. 2017).................................................................................7

*Sandoval v. Abaco Club on Winding Bay*,
    507 F. Supp. 2d 312 (S.D.N.Y. 2007).................................................................................8

*Schwab v. E\*TRADE Fin. Corp.*,
    258 F. Supp. 3d 418 (S.D.N.Y. 2017)...............................................................................19

*Sigma Lithium Corp. v. Gardner*,
    2025 WL 1268311 (S.D.N.Y. May 1, 2025) .....................................................................10

*Starr Found. v. Am. Int'l Grp., Inc.*,
    76 A.D.3d 25 (2010) ........................................................................................................20

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)...............................................................................................7

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021).................................................................................14

*Thackurdeen v. Duke Univ.*,
    130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016)....................7, 8

*Troma Ent., Inc. v. Centennial Pictures Inc.*,
    729 F.3d 215 (2d Cir. 2013)..............................................................................................10

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
    916 F.3d 143 (2d Cir. 2019)..........................................................................................12

*Urstadt Biddle Props., Inc. v. Excelsior Realty Corp.*,
    65 A.D.3d 1135 (2d Dept 2009) ..................................................................................16

*Walden v. Fiore*,
    571 U.S. 277 (2014)......................................................................................................12

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001)......................................................................................7, 11

**Statutes**

NY Gen. Oblig. Law § 5-701(a)(1) ......................................................................................23

N.Y. Gen. Bus. Law §§ 349–50 ...........................................................................................10

**Other Authorities**

CPLR § 302 .............................................................................................................................7

CPLR § 302(a) .....................................................................................................................11

CPLR § 302(a)(1) ..............................................................................................................8, 10

CPRL § 302(a)(2) .................................................................................................................10

CPLR. § 302(a)(3) ...........................................................................................................10, 11

Fed. R. Civ. P. 9(b) ..............................................................................................14, 15, 21, 22

Fed. R. Civ. P. 12(b)(2)............................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).......................................................................................................1, 13

## PRELIMINARY STATEMENT

Plaintiffs seek to impose sweeping liability on three non-U.S. citizens who reside abroad and lack any contacts whatsoever to the forum. They rely on conclusory allegations, group pleading, and hindsight attacks on business decisions made years before the challenged conduct. The putative Class Action Complaint ("CAC") alleges no facts establishing personal jurisdiction over the Ocean Individuals. It also fails to state any viable cause of action against them. Dismissal is required for both reasons.

First, the Court lacks personal jurisdiction and the case should be dismissed under FRCP 12(b)(2). The CAC concedes that Bruce Pon, Christina Pon, and Trent McConaghy are foreign citizens who reside abroad and have no alleged domicile, presence, or relevant conduct in New York (or elsewhere in this country). Faced with that jurisdictional defect, Plaintiffs resort to impermissible group pleading and speculation, asserting in conclusory fashion that "Defendants" interacted with "the United States market." Settled law requires specific allegations showing each defendant's forum contacts. The CAC pleads none. It relies primarily on globally accessible online materials that neither mention New York nor target any forum audience. Courts consistently hold that such allegations cannot establish personal jurisdiction.

Second, Plaintiffs also fail to state claims under FRCP 12(b)(6). Plaintiffs' fraud claim overlaps with their breach of contract claim, which is impermissible under New York law.[1] In addition, the CAC fails to allege actionable misrepresentations, does not plead facts giving rise to a strong inference of scienter, fails to plead reliance, and alleges a theory of loss causation that violates New York's out-of-pocket loss rule.

---

[1] For purposes of this motion only, the Ocean Individuals assume that New York law applies.

Plaintiffs' remaining claims fare no better. New York does not recognize civil conspiracy to commit fraud as a standalone cause of action. The General Business Law ("GBL") claims fail because Plaintiffs do not allege a deceptive transaction occurring in New York, do not plead consumer-oriented conduct, and do not allege a concrete, out-of-pocket injury traceable to any alleged deception. And Plaintiffs' contract and covenant claims fail simply because there is no contract. That failure applies with even greater force to the Ocean Individuals, as the CAC identifies no statement or agreement by any Ocean Individual showing an intent to be bound in an individual capacity rather than in their corporate capacity.

Finally, Plaintiffs resort to speculation and conclusory labels, asserting without factual support that certain entities are "alter egos" of the Ocean Individuals. Such unsupported assertions are legally insufficient and cannot establish liability or personal jurisdiction.

Stripped of rhetoric, the CAC alleges only that globally disseminated statements were published, that business plans evolved over time, and that market prices later fluctuated. Those allegations do not establish jurisdiction. They do not establish fraud. They do not establish consumer deception. They do not establish contract liability. And they do not justify forcing foreign individuals with no alleged forum contacts to defend themselves in New York. The CAC should therefore be dismissed in its entirety as to the Ocean Individuals.

## STATEMENT OF FACTS[2]

### I.    The Founding of Ocean Foundation and the $OCEAN Token

Defendant Ocean Foundation is a non-profit private limited company incorporated and headquartered in Singapore. It operates the Ocean data platform, a decentralized community where participants can share data to create and train agentic artificial intelligence ("AI") programs. CAC

---

[2] The facts herein are from the CAC and assumed true solely for purposes of this motion.

¶¶ 16, 49. Ocean Foundation is also the original issuer of the $OCEAN cryptocurrency ("$OCEAN"). Community participants who contribute data to the platform are compensated in $OCEAN, and access to the data is priced in $OCEAN. *Id.* ¶ 54.

Plaintiffs allege that Defendants Bruce Pon, Christina Pon, and Trent McConaghy (the "Ocean Individuals") co-founded the Ocean Foundation. *Id.* ¶ 15. The CAC alleges Bruce Pon and Trent McConaghy are directors of Ocean Foundation, *Id.* ¶¶ 15, 21, and incorrectly alleges that Christina Pon is an employee of Ocean Foundation. *Id.* ¶ 20; *see* Declaration of Christina Pon ¶ 5.[3] Bruce Pon is also alleged to be the sole director of Ocean Expeditions. CAC ¶ 15. The CAC alleges the Ocean Individuals are foreign citizens. Both Bruce and Christina Pon are alleged to be citizens of Singapore residing in Bucharest, Romania. *Id.* ¶¶ 15, 20. Trent McConaghy is alleged to be a citizen and resident of Germany. *Id.* ¶ 21. The CAC does not allege that any Ocean Individual resides in, is domiciled in, or conducted suit-related activity in New York or elsewhere in the United States. Plaintiffs also allege, without further factual support, that "the markets" viewed the three Ocean Individuals as the alter egos of Ocean Foundation and that they "utterly dominate and control every aspect of Ocean." *Id.* ¶ 52.

## II.    **Creation of OceanDAO**

The CAC alleges that Defendant OceanDAO was established in 2020 to support the Ocean platform. *Id.* ¶ 17. The CAC alleges that one way OceanDAO would support Ocean Foundation's AI programs and projects was by awarding $OCEAN tokens to projects that add value to the Ocean ecosystem. *See Id.* ¶ 17, CAC Ex. 1 at 1-6. Subsequently, in October 2021, the CAC alleges that Ocean Foundation announced that the OceanDAO would make $140 million USD, roughly 180

---

[3] "On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 115 n.1 (S.D.N.Y. 2020)

million $OCEAN tokens at the time (the "Community Tokens"), available for grants to the Ocean community and data contributors on the Ocean platform. (The "Press Release"), CAC ¶ 55, 57.

Plaintiffs allege that in May 2023 Ocean Foundation announced further changes to the OceanDAO and the Community Tokens. The CAC alleges that in May 2023 it was announced that the OceanDAO had become decentralized and that the remaining $OCEAN tokens were "minted." *Id.* ¶ 56, CAC Ex. 6. The CAC cites a May 22, 2023, blog post by the "Ocean Protocol Team" that states that certain Community Tokens would be "for the community, for Data Farming and more." *Id.* Plaintiffs allege that Ocean Foundation in total announced the designation of approximately 700,000,000 $OCEAN as Community Tokens, which would be controlled by OceanDAO and would be distributed to the Ocean community or "burned (i.e., destroyed)." CAC ¶¶ 59–60.

### III.  Formation of the Artificial Superintelligence Alliance

Nearly a year later, in April 2024, non-party Fetch.ai Foundation ("Fetch"), non-party SingularityNET ("Singularity"), and Ocean Foundation proposed merging the three companies' AI research and development efforts on a new platform known as the Artificial Superintelligence Alliance (the "Alliance"). *Id.* ¶¶ 1, 3, 63–65. The Alliance would utilize a single token, $ASI, to compensate data contributors and creators on the platform. *Id.* ¶ 68. To effectuate that merger, Singularity and Ocean token holders would convert their respective tokens into $FET, which would then be converted to $ASI. *Id.* ¶ 3, 68.

Plaintiffs allege the Alliance merger was presented to the public as being contingent on the Fetch and Singularity token holder communities' ($FET and $AGIX holders, respectively) approval. *Id.* ¶ 74. In April 2024, Ocean Foundation, Fetch, and Singularity jointly published the Alliance's Vision Paper ("Vision Paper"). *Id.* ¶ 3, CAC Ex. 10 at 1. Neither the CAC nor the Vision Paper identifies any Ocean Individuals as authors, nor does the CAC allege that any of them drafted it. The Vision Paper makes no reference to New York or the United States. It states that post-

merger the approximately 700,000,000 $OCEAN rewards or Community Tokens would still be "utilized" for incentive programs. CAC ¶¶ 75–76, CAC Ex. 10 at 20.

The Vision Paper expressly states that it is "for ***informational purposes only***" and "not to be construed as … a recommendation to engage in any specific transactions, including but not limited to the purchase, sale, or holding of any crypto-assets." CAC Ex. 10 at 37. It further provides that "[t]he creators of this document, its affiliates, and contributors make no representations or warranties, expressed or implied, regarding the accuracy, completeness, or reliability of the information contained herein." *Id.* at 37.

Plaintiffs allege that, to encourage Fetch and Singularity token holders to approve the merger, Defendants made public statements reiterating that the Community Tokens would remain earmarked for grants and the "the Fetch and Singularity communities" relied on these statements to approve the Alliance. CAC ¶ 81.

## IV.    Alleged Activity Post-Alliance Formation

According to Plaintiffs, more than a year after the Alliance was formed, Defendants transferred the Community Tokens from OceanDAO to Ocean Expeditions, a Cayman Islands entity incorporated on June 27, 2025. *Id.* ¶ 87. Plaintiffs contend those transfers were improper because they required approval from OceanDAO's token holders, which was not obtained. *Id.* ¶¶ 87–88. Plaintiffs allege that approximately four days after the transfers, on or around July 1, 2025, Defendants exchanged the $OCEAN Community Tokens into $FET, converting 661,218,319 $OCEAN into approximately 286,456,967.46 $FET. *Id.* ¶¶ 89–91.

Plaintiffs then contend upon information and belief that, instead of holding the converted $FET as Community Tokens, Defendants sold approximately 263 million of that $FET on the open market. CAC ¶ 95. Ocean Foundation withdrew from the Alliance on October 8, 2025. *Id.* ¶ 96.

Plaintiffs allege that they are or were holders of $FET, either through pre-merger acquisition or post-merger conversion from $AGIX, and that some Plaintiffs voted in favor of the merger. *Id.* ¶¶ 11–14. The CAC alleges that class members—without identifying any of them—held or converted their tokens based on Defendants' representations, including the promise to maintain the Community Tokens. *Id.* ¶ 101. Plaintiffs allege that Defendants' actions to sell $OCEAN Community Tokens for $FET, and then later sell that $FET on the open market, caused $FET tokens to dramatically decrease in value. Plaintiffs seek to recover that decreased value by this action. *Id.* ¶¶ 121–164.

## ARGUMENT

## V.     THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE OCEAN INDIVIDUALS

"To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant." *Arthur v. Orchestrate Bus. LLC*, 2025 WL 2201067, at *3 (S.D.N.Y. Aug. 1, 2025).[4] To meet its burden, plaintiff must plead facts that are legally sufficient to establish either general or specific personal jurisdiction and must do so "separately over each defendant." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). "[J]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over individual officers and directors must be based on their individual contacts with the forum state." *Giuliano v. Barch*, 2017 WL 1234042, at *6 (S.D.N.Y. Mar. 31, 2017). Although the Court must construe all pleadings and factual allegations in Plaintiffs' favor, Plaintiffs "may not rely on conclusory statements without

---

[4] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

any supporting facts." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 323 (S.D.N.Y. 2017).

Plaintiffs do not even attempt to allege general personal jurisdiction,[5] and none exists. The Ocean Individuals are foreign citizens who are not alleged to have any connections to New York or the United States. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) ("[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"). None of the Ocean Individuals are domiciled in New York or maintain a residence, office, bank account, or other continuous presence in the state. *See* Declaration of Bruce Pon ¶¶ 3-5; Declaration of Trent McConaghy ¶¶ 3-5; Declaration of Christina Pon ¶¶ 2-4.

As for specific personal jurisdiction, "[i]n analyzing a Rule 12(b)(2) motion, courts in New York follow a two-step process. First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute . . . Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). The CAC fails to allege specific personal jurisdiction under any provision of New York's long-arm statute and fails to allege that specific jurisdiction would comport with due process.

### A.    There Is No Basis For Specific Personal Jurisdiction Under New York's Long-Arm Statute

When assessing personal jurisdiction, the Court "must look first to the long-arm statute" of New York. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). Specific jurisdiction in New York is governed by CPLR § 302. *See Thackurdeen* 130 F. Supp. 3d at 798-801. The CAC fails to plead facts establishing jurisdiction over the Ocean Individuals within any subsection of this statute.

---

[5] *See* CAC ¶ 23 (alleging jurisdiction based solely on a "purposeful availment" theory).

CPLR § 302(a)(1) permits jurisdiction only where a defendant transacts business in New York and the claims arise from that transaction. *Thackurdeen*, 130 F. Supp. 3d at 801. Under Section 302(a)(1), a non-domiciliary "transacts business" only when he "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 316 (S.D.N.Y. 2007).

The CAC pleads no facts demonstrating purposeful availment by the Ocean Individuals. Instead, Plaintiffs rely on the generic assertion that "Defendants" engaged with "the United States market." CAC ¶ 23. But each defendant's forum contacts must be alleged separately and supported by concrete facts. *See In re Aegean Marine*, 529 F. Supp. 3d at 135. ("To allege personal jurisdiction over a defendant, group pleading is not permitted."). Plaintiffs' reliance on group pleading is itself fatal.

The deficiency is particularly clear as to Christina Pon. The CAC repeatedly groups her together with other defendants under collective labels such as "the Pons" or "Defendants," apparently based on the incorrect premise that she is "a current employee of Ocean [Foundation]." CAC ¶ 20; *see also id.* ¶¶ 56, 59. That premise is false. Ms. Pon has not been employed by Ocean Foundation since January 2021, well before any of the conduct alleged in the CAC, and has not held an operative or leadership role since that time. Declaration of Christina Pon ¶ 5. There is therefore no plausible basis to assert that she had any jurisdictional contacts with this forum.

As to Messrs. Pon and McConaghy, the only alleged forum contacts arise from materials posted on the internet that are accessible worldwide, not conduct directed to or occurring in New York. Such allegations do not show that any Ocean Individual purposefully availed himself or herself of New York or transacted business here. Indeed, Plaintiffs' principal theory that the Ocean Individuals purposefully availed themselves of New York because of "Defendants . . . solicitation

and distribution of $OCEAN tokens" (CAC ¶ 23) is unsupported by any factual allegations that might demonstrate such solicitation or distribution to New York, and it is directly contradicted by the facts and documents Plaintiffs rely on for their claims.

As an initial matter, Plaintiffs allege no specific facts explaining with any particularity how any Defendants, including the Ocean Individuals, solicited or distributed $OCEAN to any individuals in this forum. Indeed, none of the named Plaintiffs are alleged to have actually purchased $OCEAN.[6] *See* CAC ¶¶ 11-14. Nor could they have done so because as set forth in Ocean Foundation's Motion to Dismiss ("Ocean Foundation Motion", Dkt. 35), Ocean Foundation expressly excluded New York and the entire United States from the initial distribution of $OCEAN, and $OCEAN remains unavailable for trading on any centralized cryptocurrency exchange in New York. *See* Ocean Foundation Mot. at 7-8; Pardo Decl., Ex. A. That exclusion undermines any claim that the Ocean Individuals transacted business in New York, even as executives of Ocean Foundation.

Plaintiffs also contend that alleged misrepresentations in the Vision Paper, Press Release, and "various blog posts" solicited Plaintiffs to act in reliance on those materials. CAC ¶ 23; *see also* CAC Exs. 3-10. The CAC does not actually allege that the Ocean Individuals authored the Vision Paper or the Press Release. But even accepting Plaintiffs' allegation that certain statements were authored by the Ocean Individuals, that is not enough for personal jurisdiction. The CAC does not allege that any such statement was sent to New York, addressed to New York readers, or otherwise targeted at this forum. Rather, they are passive publications and do not constitute business transactions or solicitation *in New York*. "The law is now settled that the mere availability

---

[6] Specific personal jurisdiction must be based solely on the claims and contacts of the named plaintiffs. Unnamed putative class members are irrelevant to the jurisdictional inquiry. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021).

of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, 2024 WL 1533189, at *7 (S.D.N.Y. Apr. 8, 2024); *see also Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction in New York."); *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, 2018 WL 2022626, at *6, n.5 (S.D.N.Y. Apr. 30, 2018) ("Defendants' use of U.S.-based media and U.S.-based platforms, such as GoDaddy.com, Facebook, Youtube, and Twitter…is also irrelevant to the question of personal jurisdiction in New York."). Plaintiffs cannot convert globally accessible online statements into purposeful New York conduct.[7] The CAC also fails to allege that any named Plaintiffs' claimed reliance arose out of a New York transaction with any Ocean Individual, as required by § 302(a)(1).

Jurisdiction under Section 302(a)(2) is also unavailable.[8] That provision applies "only [to] tortious acts performed by a defendant who was ***physically present*** in New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). The CAC does not plead tortious acts or statements by the Ocean Individuals while physically present in New York.

Finally, Section 302(a)(3), which applies to out-of-state torts causing in-state injury, also fails. "[T]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York" (*Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir.

---

[7] Because the Occean Officers did not conduct any business in New York, "the [c]ourt need not consider whether the claim here arises from that transaction," the second requirement of Section 302(a)(1). *Sigma Lithium Corp. v. Gardner*, 2025 WL 1268311, at *5 (S.D.N.Y. May 1, 2025).

[8] Section 302(a)(2) does not apply to non-tort claims of breach of contract, implied covenant of good faith and fair dealing, promissory estoppel, and GBL Sections 349 and 350. Therefore, Plaintiffs cannot allege jurisdiction over those claims based on Section 302(a)(2). *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014) ("New York law limits § 302(a)(2) jurisdiction to tort claims, so plaintiff cannot rely on this provision to authorize specific jurisdiction for its contract claim.").

2013)), and the CAC alleges only economic harm. But even if the CAC did plead a sufficient in-state injury, Section 302(a)(3) also requires that defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods [sold] or services rendered, *in the state*," or that it "expects or should reasonably expect [its] act to have consequences *in the state and* derives substantial revenue from interstate or international commerce[.]" C.P.L.R. § 302(a)(3)(i)–(ii) (emphasis added). The CAC alleges no facts showing that any Ocean Individual engaged in a persistent course of conduct in New York or the United States. Nor does it plead facts supporting a reasonable expectation of New York consequences, particularly where the underlying business expressly excluded the United States. Section 302(a)(3) therefore cannot support jurisdiction over the Ocean Individuals.

In sum, the CAC fails to assert any *prima facie* basis for personal jurisdiction over the Ocean Individuals under any part of § 302(a). Because the CAC contains no specific allegations that the Ocean Individuals purposefully directed any activity to New York, the Court should decline to find personal jurisdiction under New York's long-arm statute.

### B.    Exercising Personal Jurisdiction Over the Ocean Individuals Would Violate Constitutional Due Process

Because Plaintiffs have failed to establish jurisdiction under § 302(a), the Court need not reach the constitutional inquiry. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007) ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality."). Even if Plaintiffs could satisfy the long-arm statute, exercising specific jurisdiction over the Ocean Individuals would violate due process. *See Whitaker*, 261 F.3d at 208.

Personal jurisdiction requires a "strong relationship among the defendant, the forum, and the litigation[,]" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021), such that the defendant has "certain minimum contacts." *Int'l Shoe Co. v. Wash., Off. of Unemployment*

*Comp. & Placement*, 326 U.S. 310, 316 (1945). "First, the [non-resident] must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the [non-resident's] forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).

Plaintiffs' allegations fail at the threshold. The Vision Paper, Press Release, and "various blog posts" were disseminated online to a global audience. The CAC does not allege that any of these materials targeted New York, the United States, or any forum specific audience. Despite conclusory assertions that the "Defendants" purportedly "solicit[ed] persons in this district" to act in reliance on statements in these materials (CAC ¶ 23), Plaintiffs cite no materials that mention New York or the United States. Plaintiffs instead rely on allegations that New York residents happened to view these materials online and then chose to act. But that theory rests entirely on third party conduct, and "is precisely the sort of unilateral activity of a third party that cannot satisfy the requirement of contact with the forum . . . ." *Walden v. Fiore*, 571 U.S. 277, 291 (2014). Plaintiffs allege nothing more than the global publication of online statements accessible to viewers everywhere. Yet it is "well-established that the mere accessibility of the defendants' websites in the forum cannot by itself establish the necessary minimum contacts." *Hanover v. One Commc'ns (Guyana) Inc.*, 2025 WL 948116, at *9 (E.D.N.Y. Mar. 28, 2025), appeal dismissed (June 24, 2025); *see also In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 457-58

(S.D.N.Y. 2022) (Twitter and LinkedIn posts insufficient to confer jurisdiction where not directed at forum).[9] Accordingly, these statements do not create sufficient contacts with New York. [10]

Courts confronting similar allegations in cryptocurrency cases have reached the same conclusion even where the asserted contacts were more substantial than those alleged here. In *Basic v. BProtocol Foundation*, for example, the court dismissed a complaint for lack of personal jurisdiction despite allegations involving worldwide social media postings and United States conference participation, emphasizing that online statements "available to nearly the entire world" and decentralized token availability did not establish minimum contacts. *Basic v. BProtocol Found.,* 2024 WL 4113751, at *7 (W.D. Tex. July 31, 2024), R&R adopted, 2024 WL 4113024 (W.D. Tex. Sept. 6, 2024).

Because the alleged conduct consists solely of worldwide communications not directed at New York, the Ocean Individuals lack constitutionally required minimum contacts with this forum. The exercise of personal jurisdiction would therefore violate due process, and the CAC should be dismissed under Rule 12(b)(2).

## VI.  EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Even if the Court had personal jurisdiction over the Ocean Individuals—it does not—the CAC should be dismissed under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the CAC must contain "enough facts to state a claim to relief that is plausible on its face."

---

[9] Other Circuits have reached the same conclusion. *See, e.g.*, *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 787 (5th Cir. 2021) ("defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there."); *Fidrych v. Marriott Int'l Inc.*, 952 F.3d 124, 141-43 (4th Cir. 2020) (no personal jurisdiction where website did not target the forum more than any other forum).

[10] Plaintiffs' assertion that jurisdiction exists based on alleged "solicitation and distribution" of tokens fails for the independent reason that, as explained above, the CAC pleads no supporting facts and the record shows that New York and the United States were excluded from the initial distribution and that the token is not available for trading on centralized exchanges in New York.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014).

### A. Plaintiffs Have Not Adequately Alleged Any Elements Of Fraud (Count One)

Count One against the Ocean Individuals fails for many of the same reasons set forth in Ocean Protocol Foundation's Motion to Dismiss. *See* Ocean Foundation Mot. at 13-18.

To plead fraud under New York law, a plaintiff must plausibly allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390, 399 (S.D.N.Y. 2006). Rule 9(b) also requires that "a party must state with particularity the circumstances constituting fraud." *See In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 130 (S.D.N.Y. 2021).

Here, Plaintiffs identify three statements (collectively, "Statements") that Plaintiffs contend were misrepresentations that caused them injury:

- "Defendants" . . . "confirmed they operated a DAO with the goal of developing open-source AI," CAC ¶ 122, with "no central governance structure." CAC ¶ 124;
- That approximately 700,000,000 $OCEAN Community Tokens "would remain designated for Alliance community incentives after the token merger, and would not be converted or liquidated into treasury tokens," CAC ¶ 122, but would instead "be awarded to community members through autonomous smart contracts." CAC ¶ 124; and
- That Ocean Foundation "would join a merged token network with Singularity and Fetch, that the three entities would form a decentralized community, and that this community would be monitored and guided by the Alliance." CAC ¶ 125.

Even accepting Plaintiffs' non-conclusory allegations as true, none of the Statements support a fraud claim

### 1. The Fraud Claim Impermissibly Duplicates The Breach of Contract Claim

 "Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract." *Ellington Credit Fund, Ltd., v. Select Portfolio Servicing, Inc*., 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011) (citing *W.B. David & Co., Inc. v. DWA Commc'ns, Inc*. 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004) (New York law does not "recognize claims that are essentially contract claims masquerading as claims of fraud"). "A fraud claim is redundant if it arises out of the same facts as a breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties." *Id. at 198; Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc*., 84 N.Y.2d 430, 435 (1994) ("an intention not to perform a contract does not bring on heavier damages than actual nonperformance.") (cleaned up).

Here, Plaintiffs allege "Defendants" committed fraud by converting Community Tokens into $FET and selling them for their own gain, which they characterize as a "blatant breach" of contractual obligations. CAC ¶¶ 5–6, 92, 153. The fraud claim relies on the same facts as the breach of contract claim with only conclusory assertions of fraudulent intent. Such repackaging is impermissible. *See Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing fraud claim indistinct from breach of contract claim that "merely appended allegations about [defendants'] state of mind to the claim for breach of contract.")

### 2. The CAC Fails To Allege A Misrepresentation

Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting … fraud" which means that Plaintiffs must "specify the fraudulent statements, the speaker, where and when the statements were made, and explain why the statements were fraudulent." *Morgulis v. Bus Patrol America, LLC,* 2024 WL 3639126, at *10 (S.D.N.Y. Aug. 1, 2024).

The CAC does not identify any statement that was false when made by any Ocean Individual. *Channel Master Corp. v. Aluminum Ltd. Sales, Inc*. 4 N.Y.2d 403, 406-7 (1958) (fraudulent misrepresentation claim requires showing that "defendant knowingly uttered a falsehood intending to deprive [the] plaintiff of a benefit and that the plaintiff was thereby deceived and damaged."). At most, it alleges later developments diverged from earlier expectations.[11] But that is not fraud. *Urstadt Biddle Props., Inc. v. Excelsior Realty Corp*., 65 A.D.3d 1135, 1137 (2d Dept 2009) (fraud in inducement requires allegation of a false "material existing fact."). Much of the challenged pre-merger conduct references future events, s*ee* CAC ¶¶ 51-83 (referencing Exs. 2, 5-16), but "expressions of hope for the future do not constitute actionable representations of fact . . . A party does not make an actionable representation of fact when predicting a future event with no knowledge of whether or not the event may occur." *Cimen v. HQ Cap. Real Est. L.P.*, 227 A.D.3d 587 (2024). The CAC alleges that "Pon and McConaghy" ultimately did not "stand behind their promises" and "violated the core tenets of the[ir] covenant" when they saw an "opportunity to line their pockets . . . and quash a future competitor" (CAC ¶¶ 8, 84, 89) but these are allegations of a breach, not of an intentionally false representation. For that reason the fraud claim must be dismissed. *Id.* at 587-98 (affirming dismissal of fraud claim based on alleged misstatements of expected future results).

Moreover, the CAC does not identify any Defendant's promise that Community Tokens would be held indefinitely in $OCEAN. *See* CAC Ex. 5 at 1 (announcing "$140 million USD in grants for the community"); CAC Ex. 6 at 8-9 (discussing tokens that are "earmarked for community incentives"). Plaintiffs rely heavily on the Vision Paper, which states only that certain

---

[11] Such divergence is even more common where, as here, significant time passed between the statements and alleged consequences.  In this case, the majority of statements Plaintiffs cite were made **years** before the merger was even contemplated, not "shortly before Defendants began converting the $OCEAN Community Tokens." CAC ¶ 126.

tokens were "designed for community incentives" and that, after the merger, those rewards would "still be utilized for upcoming incentives programs." CAC, Ex. 10 at 20. That language speaks to purpose, not denomination. It does not represent that the tokens would be maintained indefinitely in $OCEAN, prohibit conversion, or restrict the form in which incentives could be distributed. At most, the Vision Paper is silent as to the form of those "rewards" and whether they will be held or disseminated in $OCEAN, $FET, cash or any other manner. Plaintiffs' "subjective misunderstanding of information that is not objectively false or misleading cannot mean that defendant has committed the tort of fraud." *Gomez-Jimenez v. New York Law School,* 103 A.D.3d 13, 18 (1st Dept Dec. 20, 2012) (dismissing fraud claim based on alleged statements that "was not actually false (even if it was incomplete)" (cleaned up).

### 3. The CAC Lacks Facts Supporting A Strong Inference of Scienter As To The Ocean Individuals

To state a fraud claim, Plaintiffs must allege facts with particularity giving rise to a strong inference of scienter as to each defendant. *In re BISYS Sec. Litig.*, 397 F. Supp.2d 430, 441 (S.D.N.Y. 2005) [12]; *see also* Ocean Foundation Mot. at 15-16.

The CAC fails this standard. Plaintiffs' scienter theory rests primarily on the assertion that "Defendants" sold Community Tokens "for their own benefit." CAC ¶ 126. But self-interested desire to profit does not give rise to an inference of fraudulent intent. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (general corporate profit motive does not establish scienter); *In re Frito-Lay N. Am, Inc. All Natural Litig.*, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) ("Frito-Lay's generalized motive to…increase sales and profits, does not support a strong inference of fraudulent intent.").

---

[12] *See also id*. at 440 ("group pleading doctrine has no effect on the PSLRA's *scienter* requirement . . . it does not permit plaintiffs to presume the state of mind of [defendants] at the time the alleged misstatements were made.").

The CAC also fails to allege particularized facts connecting any Defendant to any purportedly fraudulent conduct. It does not allege which Defendant(s) sold tokens, or any basis for the conclusion that the alleged sales were for any *Defendant's* benefit or financial gain. *See* CAC ¶ 95. Allegations made "[u]pon information and belief," including the admission that it is "unclear precisely how many tokens were ultimately sold," are "insufficient to state a fraud claim." *Id.*[13]; *Cimen*, 227 A.D.3d at 588 (cleaned up).

The pleading deficiencies are even more pronounced as to the Ocean Individuals. Apart from the caption and first sentence, the CAC references Ms. Pon by name only five times and the allegations against her are only her citizenship and domicile, that she is a co-founder of Ocean who is viewed as an alter ego of Ocean Foundation, and that she supports Ocean Foundation's goals of data sharing and monetization. *See* CAC ¶¶ 15, 20, 52-53. It alleges no statement she made, no transaction she directed, and no facts suggesting intent to deceive.

The scienter allegations against Bruce Pon and Trent McConaghy are similarly deficient. The CAC does not allege that either sold or authorized the sale of tokens or received proceeds in furtherance of a fraud. *See* CAC ¶¶ 93–99, 126. The CAC criticizes an October 9, 2025, statement that purportedly encouraged the sale of $FET as a "dog whistle", but this blog post is attributed to the "Ocean Protocol Team" not Messrs. Pon or McConaghy. *See* CAC ¶ 99, Ex. 18. The CAC cites their statements in certain exhibits, but the allegations often conflate statements made by an entity with statements made by an individual (*compare e.g.*, CAC, Ex. 17 at 42 ("OE had *only* one way out. . .") with CAC ¶ 92 ("Defendants 'had only one way out . . .'")) and do not allege specific facts from which a strong inference of scienter could be inferred. The generalized allegations about the "Defendants" do not suffice to allege a strong inference of scienter as to the Ocean Individuals.

---

[13] *See also* CAC ¶ 98 (alleging rationale for liquidations based on "all likelihood").

*In re BISYS Sec. Litig.*, 397 F. Supp.2d at 449 (dismissing securities fraud claims as to individual defendants for whom individualized allegations of scienter were inadequate).

### 4.  Plaintiffs Fail to Plead Specific Reliance

Under New York law, a plaintiff alleging fraud must establish it actually heard or read the putative statement and relied on it in some way. *See, e.g.*, *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016) ("fraud is intended to protect a party from being induced to act or refrain from acting based on false representations—a situation which does not occur where, as here, the misrepresentations were not communicated to, or relied on, by plaintiff."). Here, Plaintiffs allege only that "Plaintiffs and Class member relied on [the Statements] when voting to approve the token merger and in acquiring, holding, and converting ASI tokens." CAC ¶ 128. Such conclusory, group pleading does not suffice to plead specific reliance. The CAC does not allege which Plaintiff saw which statement, when any Plaintiff saw it, or how it influenced any Plaintiff's decision.[14] *Schwab v. E\*TRADE Fin. Corp.*, 258 F. Supp. 3d 418, 430 (S.D.N.Y. 2017) (dismissing securities fraud claim for failure to plead reliance because the allegations "fail to show with any sort of particularity that the plaintiff was aware—whether by reading, hearing, or otherwise—of any of the challenged misstatements."); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019); ("no assertion that any plaintiff saw, read, or otherwise noticed" the alleged misrepresentation). Conclusory allegations of reliance, untethered to any pleaded exposure to the alleged misstatements, are insufficient and require dismissal.

---

[14] To the extent Plaintiffs argue that they relied on the Vision Paper, the Vision Paper expressly states that "[b]y accessing this document, you acknowledge and agree that any reliance on or use of the information provided shall be at your sole risk." CAC, Exhibit 10 at 38.

5.  **The CAC Fails to State A Viable Theory Of Injury or Causation Based On a Decrease in Value of the FET Token**

Plaintiffs fail to plead cognizable injury. Under New York law, fraud damages are limited to the "actual pecuniary loss sustained as a direct result of the wrong" not expected profits or market value fluctuations. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 422 (1996) (dismissing fraud claim because there were "no losses here."). The CAC does not allege that any Plaintiff sold any $FET tokens or otherwise realized a loss. The CAC instead alleges that "the class members have been left ***holding*** tokens." CAC ¶ 8 (emphasis added). Indeed, Plaintiffs Ian and Larivee received exactly what the merger contemplated: converted FET tokens at the agreed ratio determined by the Alliance. *See* CAC ¶¶ 3, 12, 14. In addition, Plaintiffs Fetch Compute and Graves allege they are "***holder[s]*** of $FET tokens," conceding that they have, at most, unrealized losses. CAC ¶¶ 11,13 (emphasis added). As the First Department has explained, a fraud claim fails where a plaintiff "remained in possession of the true value of the stock, whatever that value may have been at any given time." *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 28 (2010).

Plaintiffs' theory of loss causation also fails New York's out-of-pocket rule because it seeks recovery based on what the price of $FET would have been (*see* CAC ¶ 111) if "Defendants" had not allegedly bought and sold the $FET Community Tokens, which is precisely the type of speculation-based recovery that is impermissible. *See Negrete v. Citibank, N.A.*, 759 F. App'x 42, 47-48 (2d Cir. 2019) (dismissing fraud claim because alleged damages were "the profits [plaintiffs] would have made were it not for the allegedly fraudulent" conduct); *Lama Holding Co.,* 88 N.Y.2d at 442 (rejecting loss theory that was "undeterminable and speculative").

Finally, even if Plaintiffs could plead injury, they fail to plead causation. A fraud plaintiff must allege that the injury "is the natural and probable consequence of the defrauder's misrepresentation." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992) (dismissing

fraud claim based on lack of causation). The CAC does not isolate how any Statements proximately caused Plaintiffs' alleged losses, as opposed to later, independent developments such as general market fluctuations. Plaintiffs' theory rests on an impermissible inference that later market-wide price declines *must have* resulted from earlier statements, which is insufficient as a matter of law. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (dismissing securities fraud claim because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which . . . account for some or all of that lower price."); *see also Laub v. Faessel*, 297 A.D.2d 28, 32  (2002) (dismissing fraud claim because "plaintiff failed to allege or provide any evidence that [defendant's] asserted misrepresentations—rather than market forces—caused plaintiff's alleged losses.").

## B.    The CAC Fails To State A Claim For Civil Conspiracy (Count Two)

New York does not recognize civil conspiracy as an independent cause of action. *Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006). A conspiracy claim "cannot stand alone" and must be dismissed if the underlying independent tort has not been adequately pleaded. *Filler v. Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005) (dismissing conspiracy claim based on insufficiently plead fraud claims). Here, Count Two alleges civil conspiracy based on the fraud inadequately alleged in Count One.  Therefore, Count Two should be dismissed. *Id.*

Even if Plaintiffs had alleged a viable fraud claim (they do not), Count Two still fails because Plaintiffs allege without particularity that "Defendants agreed amongst themselves." CAC ¶ 131-33. Courts routinely dismiss conspiracy claims that rely on "sweeping references to the collective fraudulent actions of multiple defendants" without particularized factual allegations required under Rule 9(b). *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 579–80

(2d Cir. 2005) (dismissing conspiracy claim as insufficient under Rule 9(b)). That is precisely what Plaintiffs have done here. *See* CAC ¶ 131-39.

### C.    The CAC Fails To State A Claim For GBL Violations (Count Three)

Plaintiffs' New York GBL §§ 349–350 claim against the Ocean Individuals fails for the same reasons set forth in Ocean Protocol Foundation's motion, which the Ocean Individuals incorporate by reference. *See* Ocean Foundation Mot. at 18-22. Plaintiffs do not allege a deceptive transaction that occurred in New York. The CAC's allegations concern investment-related token activity rather than consumer-oriented goods or services, which is outside the scope of the statute. *See DeAngelis v. Corzine, 17 F. Supp. 3d 270, 284 (S.D.N.Y. 2016)* ("[Plaintiff's] § 349 claim suffers from the same defects as the claim in Morris. [Plaintiff] invested funds … as investments, not as a purchase of traditional consumer goods."). As with its fraud claims, the CAC does not attribute to any Ocean Individual a statement that was materially misleading when made. Plaintiffs also do not plead causation or a cognizable injury and instead base their claim on an impermissible "fraud-on-the-market" general causation theory. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 903 (E.D.N.Y. 2018) (dismissing GBL claim for causation because "[n]one of these allegations provides any indication that Plaintiff ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view [] the website . . . ."). Finally, Plaintiffs do not plead any realized, out-of-pocket loss traceable to the alleged deception because, as demonstrated above, the CAC contains no allegations that any Plaintiff sold their $FET or otherwise suffered a realized loss. Count Three should therefore be dismissed with prejudice as to the Ocean Individuals.

### D.    The CAC Fails To State A Claim For Breach of Contract (Count Four) and Breach of Covenant of Good Faith and Fair Dealing (Count Five)

Plaintiffs' breach of contract and covenant of good faith and fair dealing claims against the Ocean Individuals fails for the same reasons set forth in Ocean Protocol Foundation's Motion to

Dismiss, which the Ocean Individuals incorporate by reference. Ocean Foundation Mot. at 22-24. The CAC pleads no enforceable agreement with the Ocean Individuals. It identifies no offer, acceptance, consideration, counterparties, or definite terms, and instead relies on an aspirational "Vision Paper" and public statements. This District has rejected efforts to convert crypto "whitepapers" into contracts because such materials read as marketing rather than offers. *See Barron v. Helbiz Inc.*, 2023 WL 5672640, at *10 (S.D.N.Y. Sept. 1, 2023). The Vision Paper's own text forecloses any intent to be bound: it is unsigned, not addressed to Plaintiffs, and expressly states it is for informational purposes only and not a recommendation to engage in any specific transaction, which courts treat as negating contractual intent. *See Cohen v. Avanade*, Inc., 874 F. Supp. 2d 315, 320–21 (S.D.N.Y. 2012). Even if it was a contract, it would be barred by the Statute of Frauds because it cannot be performed within one year and is not memorialized in a signed writing. NY Gen. Oblig. Law § 5-701(a)(1). Finally, Plaintiffs' Count Five for breach of the covenant of good faith and fair dealing fails because such a covenant can exist only where "the parties [are] in a contractual relationship." *Matana v. Merkin*, 957 F. Supp. 2d 473, 493-94 (S.D.N.Y. 2013) (dismissing good faith and fair dealing claim because there was no contractual relationship between the parties).

These defects apply with even greater force to the Ocean Individuals. Plaintiffs' contract theory rests on the Vision Paper, yet the CAC does not allege that any Ocean Individual authored, issued, signed, or adopted that document, and the exhibit itself does not identify any Ocean Individual as an author. *See* CAC ¶¶ 61, 63 (describing the Vision Paper as outlining the vision of "the Platforms," *i.e.*, SingularityNET, Fetch.ai, Ocean Protocol); Ex. 10 at 1 (listing the authors as "SingularityNET, Fetch.ai, Ocean Protocol"). Plaintiffs identify no statement or agreement by any Ocean Individual demonstrating an intent to be bound in an individual capacity. That omission is independently fatal because, under New York law, corporate officers and directors are not

personally liable for a corporation's contractual obligations absent clear and explicit evidence that they intended to assume personal liability, such as execution of the agreement in an individual capacity. *See, e.g., Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4, 10 (2d Cir. 2012) ("For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity.").

### E.    The CAC Fails To State A Claim For Promissory Estoppel (Count Six)

"A cause of action for promissory estoppel under New York law requires the plaintiff[s] to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). The CAC fails these requirements for the same reasons that the fraud claim fails. Neither the Vision Paper nor any other alleged statements contain any "clear and unambiguous promise[s.]" *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 615 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586, 592 (2d Cir. 2019) (dismissing promissory estoppel claim because plaintiff " fails to allege a sufficiently unambiguous promise . . . ."). Like for the fraud allegations, the CAC does not allege when, how, and in what context any Plaintiff viewed the alleged promises and relied upon them. Moreover, Count Six suffers from the same invalid damages theory as Plaintiffs' fraud and GBL claims. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (Damages in promissory estoppel claims are "only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages.").

### VII.    <u>Plaintiffs' Alter Ego Allegations Should be Disregarded</u>

The CAC fails to allege any facts showing that Ocean Foundation or OceanDAO, each of which is a distinct legal entity separate from the Ocean Individuals, is an alter ego of the Ocean Individuals. "To state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are

insufficient." *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, 2009 WL 3076094, at *3 (S.D.N.Y. Sept. 28, 2009). Plaintiffs' alter ego allegations do not meet this standard.

With respect to OceanDAO, Plaintiffs offer only the speculative remark that it is "unclear" whether OceanDAO is an alter ego of Pon and McConaghy. CAC ¶ 17. That is not a factual allegation and cannot support alter ego liability. With respect to Ocean Foundation, Plaintiffs rely on similarly conclusory statements that the Ocean Individuals "dominate and control" the entity and are "viewed by the markets as the alter egos of Ocean." *Id.* ¶ 52. But the CAC alleges no facts explaining how any defendant supposedly exercised such domination or control, and it provides no factual support for these characterizations. Such unsupported labels are insufficient as a matter of law. *See Long Side Ventures LLC v. Hempacco Co.*, 2023 WL 6386888, at *10 (S.D.N.Y. Sept. 29, 2023) (dismissing alter ego allegations because there was "no clear explanation" as to how defendants "exercise dominion and control over the entities.").

These allegations are also insufficient to establish personal jurisdiction. Courts consider multiple factors in assessing alter ego status for purpose of assessing jurisdiction, including failure to observe corporate formalities, undercapitalization, commingling of funds, shared offices or accounts, overlapping ownership and management, and use of the corporation to perpetrate a wrongful act. *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *10 (S.D.N.Y. Mar. 10, 2021). Plaintiffs allege none of these facts. Accordingly, their conclusory alter ego assertions cannot support jurisdiction and should be disregarded.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the CAC for lack of personal jurisdiction over the Ocean Individuals or, if it concludes personal jurisdiction exists, dismiss the CAC for failure to state a claim as to the Ocean Individuals.

Dated:   February 24, 2026          Respectfully Submitted,
         New York, New York

                                    **BROWN RUDNICK LLP**


                                    By:  */s/ Stephen D. Palley*  _____

                                        Stephen D. Palley
                                        Daniel L. Sachs
                                        1900 N Street NW, 4th Floor
                                        Washington, DC 20036
                                        (202) 536-1700 (telephone)
                                        spalley@brownrudnick.com
                                        dsachs@brownrudnick.com

                                        *Attorneys for Defendants Bruce Pon,*
                                        *Christina Pon, and Trent McConaghy*

**WORD COUNT CERTIFICATION**

I, Stephen D. Palley, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c). According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 8,264 words in the document.

/s/ Stephen D. Palley
Stephen D. Palley