**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Fetch Compute, Inc., Seth Ian, Greg Graves, Victor Larivee, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

Bruce Pon, Trent McConaghy, Christina Pon, Ocean Protocol Foundation Ltd., Ocean Expeditions Ltd., and OceanDAO,

Defendants.

Case No.: 1:25-cv-09210-DEH

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CLAIM**

**MCDERMOTT WILL & SCHULTE LLP**

Joseph B. Evans
James A. Pardo
Lisa Gerson
Daniel H. Kaltman

One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 547-5400
jbevans@mcdermottlaw.com
jpardo@mcdermottlaw.com
lgerson@mcdermottlaw.com
dkaltman@mcdermottlaw.com

*Attorneys for Defendant Ocean Protocol Foundation Ltd.*

**BROWN RUDNICK LLP**

Stephen D. Palley
Daniel L. Sachs

1900 N Street NW
4th Floor
Washington, DC 20036
Tel: (202) 536-1700
spalley@brownrudnick.com
dsachs@brownrudnick.com

*Attorneys for Defendants Bruce Pon, Christina Pon, and Trent McConaghy*

**MORRISON COHEN LLP**

Jason Gottlieb
Michael Mix
Emma McGrath

909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600
jgottlieb@morrisoncohen.com
mmix@morrisoncohen.com
emcgrath@morrisoncohen.com

*Attorneys for Defendants Ocean Expeditions Ltd. and OceanDAO (through its successor-in-interest Ocean Expeditions Ltd.)*

Dated: April 30, 2026

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

ARGUMENT .......... 6

I. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS .......... 6

A. There Is No Basis For Specific Personal Jurisdiction Under New York's Long Arm Statute .......... 8

1. The CAC Does Not Allege Jurisdiction Under Section 302(a)(1) .......... 8

2. The CAC Does Not Allege Jurisdiction Under Section 302(a)(2) .......... 15

3. The CAC Does Not Allege Jurisdiction Under Section 302(a)(3) .......... 15

B. Exercising Personal Jurisdiction Over Defendants Would Violate Constitutional Due Process .......... 16

II. EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS FAIL TO STATE A CLAIM. .......... 19

A. The CAC Improperly Engages in Impermissible Group Pleading .......... 19

B. Plaintiffs Have Not Alleged Any of the Elements for Fraud (Count One) .......... 20

1. The CAC Fails to Allege A Misrepresentation by Any Defendant .......... 21

2. The CAC Lacks Allegations Supporting a Strong Inference of Scienter As To All Defendants .......... 24

3. Plaintiffs Fail to Plead Specific Reliance .......... 26

4. The CAC Fails to State a Viable Theory of Injury or Causation Based on a Decrease in Value of the $FET Token .......... 28

C. The CAC Fails To State A Claim For Civil Conspiracy (Count Two) .......... 30

D. The CAC Fails To State A Claim For GBL Violations (Count Three) ... 31

E. The CAC Fails To State A Claim For Breach of Contract (Count Four) and Breach of Covenant of Good Faith and Fair Dealing (Count Five) ... 35

F. The CAC Fails To State A Claim For Promissory Estoppel (Count Six) ... 38

III. PLAINTIFFS' ALTER EGO ALLEGATIONS SHOULD BE DISREGARDED ... 38

CONCLUSION ... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ....................34

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021)....................7, 8

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....................31

*Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*,
No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) ....................9, 14

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
884 F.2d 69 (2d Cir. 1989)....................38

*Arthur v. Orchestrate Bus.*
No. 24-CV-02985 (MMG), *LLC*, 2025 WL 2201067(S.D.N.Y. Aug. 1, 2025)....................6

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
510 F. Supp. 3d 108 (S.D.N.Y. 2020)....................4

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ....................19, 20

*AVRA Surgical Robotics, Inc. v. Gombert*,
41 F. Supp. 3d 350 (S.D.N.Y. 2014)....................15

*Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*,
234 F. Supp. 3d 526 (S.D.N.Y. 2017)....................33

*Barron v. Helbiz Inc.*,
No. 20 CIV. 04703 (LLS), 2023 WL 5672640 (S.D.N.Y. Sept. 1, 2023) ....................36

*Basic v. BProtocol Found.*,
No. A-23-CV-533-RP, 2024 WL 4113751 (W.D. Tex. July 31, 2024), *R&R adopted*, No. 1:23-CV-533-RP, 2024 WL 4113024 (W.D. Tex. Sept. 6, 2024), *vacated in part,* No. 1:23-CV-533-RP, 2024 WL 6077793 (W.D. Tex. Dec. 16, 2024) ....................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................19

*Bensusan Rest. Corp. v. King*,
126 F.3d 25 (2d Cir. 1997)....................15

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021)....................9

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008)....................35

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007)....................16

*In re BISYS Sec. Litig.*,
397 F. Supp. 2d 430 (S.D.N.Y. 2005)....................24, 26

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
467 F. App'x 4 (2d Cir. 2012) ....................37

*Camacho v. Northeastern Univ.*,
No. 18 CIV. 10693 (ER), 2019 WL 5190688 (S.D.N.Y. Oct. 15, 2019) ....................11

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996)....................24

*Cimen v. HQ Cap. Real Est. L.P.*,
227 A.D.3d 587 (1st Dep't 2024) ....................22, 23, 25

*Citibank, N.A. v. K-H Corp.*,
968 F.2d 1489 (2d Cir. 1992)....................29

*City of New York v. Smokes-Spirits.Com, Inc.*,
12 N.Y.3d 616 (2009) ....................34

*Cohen v. Avanade, Inc.*,
874 F. Supp. 2d 315 (S.D.N.Y. 2012)....................36

*Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*,
No. 23-CV-7106 (LJL), 2024 WL 1533189 (S.D.N.Y. Apr. 8, 2024) ....................13

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)....................31, 32

*DirecTV Latin Am., LLC v. Park 610, LLC*,
691 F. Supp. 2d 405 (S.D.N.Y. 2010)....................11

*Dorris v. Danone Waters of Am.*,
711 F. Supp. 3d 179 (S.D.N.Y. 2024), *on reconsideration in part,* No. 22 CIV. 8717 (NSR), 2024 WL 4792048 (S.D.N.Y. Nov. 14, 2024) ....................31

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................29

*In re EHang Holdings Ltd. Sec. Litig.*,
646 F. Supp. 3d 443 (S.D.N.Y. 2022)....................18

*Ellinghaus v. Educ. Testing Serv.*,
No. 15CV3442SJFAKT, 2016 WL 8711439 (E.D.N.Y. Sept. 30, 2016)....................33

*Ellington Credit Fund, Ltd., v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011)....................29

*Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*,
No. 08 CIV. 2991 (RJH), 2009 WL 3076094 (S.D.N.Y. Sept. 28, 2009)....................38

*Enemigo Ltd. v. Trinity Bev. Grp., LLC*,
No. 22 CIV. 9794 (NRB), 2025 WL 1425731 (S.D.N.Y. May 16, 2025)....................30

*English v. Danone N. Am. Public Ben. Corp.*,
678 F.Supp.3d 529 (S.D.N.Y. 2023)....................31

*ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*,
50 A.D.3d 397 (1st Dep't 2008)....................23

*Filler v. Hanvit Bank*,
156 F. App'x 413 (2d Cir. 2005)....................30

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....................17

*Frintzilas v. DirecTV, LLC*,
731 F. App'x 71 (2d Cir. 2018)....................34

*In re Frito-Lay N. Am, Inc. All Natural Litig.*,
No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)....................25

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019)....................27

*Giuliano v. Barch*,
No. 16 CV 0859 (NSR), 2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017)....................7

*Glob. Edge Design Inc. v. Michel*,
No. 20-CV-9654 (PKC), 2021 WL 1549990 (S.D.N.Y. Apr. 20, 2021)....................17

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
8 F. Supp. 3d 467....................34

*Goldman v. Trinity Sch. of Med.*,
No. 24-1827-CV, 2025 WL 1099088 (2d Cir. Apr. 14, 2025) ............7, 14

*Gomez-Jimenez v. New York Law School*,
103 A.D.3d 13 (1st Dep't 2012) ............22

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002) ............31, 32

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014)............7

*Haussmann, Tr. of Konstantin S. Haussmann Tr. v. Baumann*
157 N.Y.S.3d 355 (N.Y. Sup. 2021)............10

*Herrick v. Grindr, LLC*,
306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019)............38

*Holsworth v. BProtocol Found.*,
No. 20 CIV. 2810 (AKH), 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021)............18

*Hopwood v. Infinity Contracting Servs. Corp.*,
217 N.Y.S.3d 586 (2d Dep't 2024)............35

*Hunt v. Enzo Biochem, Inc.*,
471 F. Supp. 2d 390 (S.D.N.Y. 2006)............20, 24

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
893 F. Supp. 1251 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1999)............12

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945)............17

*JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*,
No. 18-CV-3844 (CS), 2019 WL 2578306 (S.D.N.Y. June 24, 2019), *aff'd sub nom.*, *Yih v. Taiwan Semiconductor Mfg. Co*., 815 F. App'x 571 (2d Cir. 2020)............13

*Karnas v. Cuban*,
No. 22-CV-22538, 2025 WL 3759241 (S.D. Fla. Dec. 30, 2025)............18

*Kaye v. Grossman*,
202 F.3d 611 (2d Cir. 2000)............38

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)............30

*Kirschner v. J.P. Morgan Chase Bank, N.A.*,
2020 WL 9815174 (S.D.N.Y. Dec. 1, 2020) ............24

*Kravitz v. Binda*,
No. 17-CV-07461 (ALC)(SN), 2020 WL 927534 (S.D.N.Y. Jan. 21, 2020) ..........................17

*Kumaran v. Northland Energy Trading, LLC*,
No. 19-CV-8345 (MKV) (RWL), 2025 WL 1982945 (S.D.N.Y. July 9, 2025) .....................23

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ..........................................................................................28, 29

*Laub v. Faessel*,
745 N.Y.S.2d 534 (1st Dep't 2002) ...........................................................................29

*Long Side Ventures LLC v. Hempacco Co.*,
No. 22-CV-08152 (ALC), 2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023)..............................39

*MacNaughton v. Young Living Essential Oils, LC*,
67 F.4th 89 (2d Cir. 2023) ........................................................................................31

*Mantello v. Hall*,
947 F. Supp. 92 (S.D.N.Y. 1996) ................................................................................12

*Matana v. Merkin*,
957 F. Supp. 2d 473 (S.D.N.Y. 2013)...........................................................................38

*McVetty v. TomTom North America, Inc.*,
No. 19 CV 4908 (NSR), 2021 WL 965239 (S.D.N.Y. 2021).............................................32

*Meany v. Atomic Protocol Sys. OU*,
No. 23-CV-01582-PAB-MEH, 2024 WL 4135762 (D. Colo. Sept. 10, 2024) .......................18

*Mercator Corp. v. Windhorst*,
159 F. Supp. 3d 463 (S.D.N.Y. 2016)...........................................................................37

*Metamorfoza D.O.O. v. Big Funny LLC*,
No. 19-CV-11743 (RA), 2021 WL 735243 (S.D.N.Y. Feb. 25, 2021) ..................................16

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
84 N.Y.2d 430 (1994) ................................................................................................30

*Morris v. Gilbert*,
649 F. Supp. 1491 (E.D.N.Y. 1986) .............................................................................32

*Negrete v. Citibank, N.A.*,
759 F. App'x 42 (2d Cir. 2019) ...................................................................................28

*Nguyen v. FXCM Inc.*,
364 F. Supp. 3d 227 (S.D.N.Y. 2019).....................................................................32, 33

*Oden v. Bos. Sci. Corp.*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018), *adhered to on reconsideration,* No. 18CV0334SJFSIL, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) ....................................34

*Papa's-June Music, Inc. v. McLean*,
921 F. Supp. 1154 (S.D.N.Y. 1996)....................................30

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
763 F.3d 198 (2d Cir. 2014)....................................19

*Pasternack v. Lab'y Corp. of Am. Holdings*,
27 N.Y.3d 817 (2016) ....................................26

*Paterno v. Laser Spine Inst.*,
24 N.Y.3d 370 (2014) ....................................10

*Pearson Educ., Inc. v. Shi*,
525 F. Supp. 2d 551 (S.D.N.Y. 2007)....................................14

*Pettenato v. Beacon Health Options, Inc.*,
425 F. Supp. 3d 264 (S.D.N.Y. 2019)....................................17

*In re Platinum-Beechwood Litig.*,
427 F. Supp. 3d 395 (S.D.N.Y. 2019)....................................19

*Poms v. Dominion Diamond Corp.*,
No. 655733/2017, 2019 WL 2106090 (N.Y. Sup. May 15, 2019) ....................................10

*Prickett v. New York Life Ins. Co.*,
896 F. Supp. 2d 236 (S.D.N.Y. 2012)....................................26

*Prospect Funding Holdings, LLC v. Vinson*,
256 F. Supp. 3d 318 (S.D.N.Y. 2017)....................................7

*Reich v. Lopez*,
38 F. Supp. 3d 436 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) ..........................10, 11

*Rich v. Maidstone Fin., Inc.*,
No. 98 CIV. 2569 (DAB), 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ...........................20

*Rider v. Uphold HQ Inc.*,
657 F. Supp.3d 491 (S.D.N.Y. 2023)....................................27

*S.G. v. Bank of China Ltd.*,
No. 23-CV-2866 (LAK), 2024 WL 1861158 (S.D.N.Y. Apr. 29, 2024) *aff'd sub nom., S.G. v. Bank of China U.S.A.*, No. 24-1426, 2024 WL 4891390 (2d Cir. Nov. 26, 2024) ....................................19

*Safex Found., Inc. v. SafeLaunch Ventures Ltd.*,
694 F. Supp. 3d 1 (D.D.C. 2023) ....................18

*Sandoval v. Abaco Club on Winding Bay*,
507 F. Supp. 2d 312 (S.D.N.Y. 2007) ....................8

*Schwab v. E*TRADE Fin. Corp.*,
258 F. Supp. 3d 418 (S.D.N.Y. 2017) ....................27, 28

*Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*,
222 F.3d 63 (2d Cir. 2000) ....................27

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ....................35

*Spagnola v. Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009) ....................31

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
96 F. Supp. 3d 325 (S.D.N.Y. 2015), *aff'd*, 645 F. App'x 72 (2d Cir. 2016) ....................23, 24

*Starr Found. v. Am. Int'l Grp., Inc.*,
901 N.Y.S.2d 246 (1st Dep't 2010) ....................28

*Stephenson v. PricewaterhouseCoopers, LLP*,
482 F. App'x 618 (2d Cir. 2012) ....................24, 27

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
No. 16 CIV. 8883 (ER), 2018 WL 1610416 (S.D.N.Y. Mar. 30, 2018), *aff'd sub nom., Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC,* 777 F. App'x 16 (2d Cir. 2019) ....................39, 40

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ....................7

*Thackurdeen v. Duke Univ.*,
130 F. Supp. 3d 792 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) ....................7, 8

*Troma Entertainment, Inc. v. Centennial Pictures Inc.*,
729 F.3d 215 (2d Cir. 2013) ....................15

*Troncoso v. TGI Friday's, Inc.*,
No. 19 CIV. 2735 (KPF), 2020 WL 3051020 (S.D.N.Y. June 8, 2020) ....................33

*Twin Hills Holdings, LLC v. Furling*,
No. 21CV3507PKCSJB, 2023 WL 2742303 (E.D.N.Y. Mar. 31, 2023) ....................10

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019)....................17

*Urstadt Biddle Prop., Inc. v. Excelsior Realty Corp.*,
65 A.D.3d 1135 (2d Dep't 2009)....................21

*In re Wachovia Equity Sec. Litig.*,
753 F. Supp. 2d 326 (S.D.N.Y. March 31, 2011)....................25

*Walden v. Fiore*,
571 U.S. 277 (2014)....................12

*Wang v. Essence Int'l Fin. Holdings Ltd.*,
No. 24-CV-8204 (VEC), 2025 WL 2450958 (S.D.N.Y. Aug. 26, 2025)....................40

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990)....................26

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001)....................8, 17

*Yuille v. Uphold HQ Inc.*,
686 F. Supp. 3d 323 (S.D.N.Y. 2023)....................33

**Statutes**

N.Y. Gen. Bus. L. § 349 .................... *passim*

N.Y. Gen. Bus. L. § 350 ....................15, 31, 33

N.Y. Gen. Obl. L. § 5-701(a)(1) ....................36

**Other Authorities**

C.P.L.R. § 302.................... *passim*

Fed. R. Civ. P. 8 ....................19, 20

Fed. R. Civ. P. 9(b) ....................19, 20, 31

Fed. R. Civ. P. 12(b)(2)....................4, 6, 7, 11, 18

Fed. R. Civ. P. 12(b)(6)....................19

## PRELIMINARY STATEMENT

Plaintiffs seek to convert dissatisfaction with the outcome of a complicated transaction into sweeping liability against Singapore-based Ocean Protocol Foundation Ltd. ("Ocean Foundation"), foreign individuals Bruce Pon, Christina Pon and Trent McConaghy (collectively, "Individual Defendants"), OceanDAO, and OceanDAO's successor-in-interest, Cayman-based Ocean Expeditions ("OE") (OceanDAO and OE collectively, "DAO Defendants", and with Ocean Foundation and the Individual Defendants, "Defendants").[1] Plaintiffs have no legitimate claim against Defendants, in any jurisdiction, because the "fraud" they allege is based on nothing more than global internet publications, hindsight dissatisfaction, and the impact of a cryptocurrency market downturn in October 2025. But most importantly, Plaintiffs filed their Amended Class Action Complaint ("CAC") in a venue where they cannot establish personal jurisdiction over any Defendant. Plaintiffs' meritless claims should be dismissed for lack of personal jurisdiction or, alternatively, for failure to state a claim.

Ocean Foundation does not have any offices, direct employees, bank accounts, or operations in the United States, let alone in New York. The Individual Defendants are foreign citizens who reside abroad and have no domicile, presence, or alleged relevant conduct in New York or elsewhere in the U.S. OceanDAO is a decentralized autonomous organization that similarly was neither incorporated nor operating in New York; its successor-in-interest, OE, is a Cayman Islands entity.

In addition to these insurmountable jurisdictional hurdles, the CAC relies on impermissible group pleading and speculation. Incredibly, the CAC contains even more group-pleaded

[1] Defendants use the term "Defendants" herein intentionally for convenience on this consolidated motion, but do not to endorse or adopt Plaintiffs' use of the same term in their amended complaint to improperly group-plead against the individual defendants.

allegations than Plaintiffs' original complaint. Settled law, however, requires specific allegations as to *each* defendant's forum contacts. Plaintiffs attempt to correct their pleading deficiencies by alleging that Defendants (collectively, without specific allegations as to each Defendant) engaged a New York law firm and consulting company. Even if that was true (and it is not), courts have consistently held that merely retaining professional service providers in a forum state does not establish purposeful availment sufficient for personal jurisdiction. The CAC also relies on generalized allegations about globally accessible passive websites and blog posts by certain Defendants—inviting the Court to make an impermissible leap from worldwide internet publication to New York personal jurisdiction. New York's long-arm statute and constitutional due process do not permit that, and courts in analogous cases routinely reject the exact jurisdiction-by-internet theory Plaintiffs advance here. The same result—dismissal for lack of personal jurisdiction—should follow in this case.

Even if personal jurisdiction did exist, the CAC fails to state any claim on which relief could be granted. None of the alleged "misrepresentations" were false when made. New York law[2] does not permit fraud-by-hindsight; a statement that was accurate when made does not later become actionable simply because circumstances changed. Moreover, Plaintiffs allege that only ***a single class member*** saw and relied on ***one alleged publication*** prior to voting on the Alliance. But the CAC does not plead that a single class member saw or relied on any alleged false statement. Plaintiffs also fail to plead any legally cognizable injury. Plaintiffs do not allege that they (or any putative class member) sold a single token at a loss. New York's damages rule makes clear that such unrealized market losses are not recoverable as fraud damages. As to the DAO Defendants,

[2] For purposes of this motion only, Defendants assume that New York law applies.

there are no allegations that they were members of the Alliance, or authored or disseminated any of the statements containing alleged misrepresentations.

Plaintiffs' remaining claims fare no better substantively. New York does not recognize civil conspiracy to commit fraud as a standalone cause of action. Plaintiffs' General Business Law ("GBL") claims fail because Plaintiffs do not allege a deceptive transaction occurring in New York, do not plead consumer-oriented conduct, and do not allege an out-of-pocket injury traceable to any alleged deception. And Plaintiffs' contract and covenant claims fail simply because there is no contract. An aspirational Vision Paper posted on the internet—expressly labeled informational and contingent on future approvals—is not a binding agreement with members of the public. This deficiency applies with even greater force to the Individual Defendants and DAO Defendants, as the CAC identifies no statement or agreement showing intent to be bound.

## STATEMENT OF FACTS[3]

Defendant Ocean Foundation is a non-profit private limited company incorporated and headquartered in Singapore. Ocean Foundation operates the Ocean data platform, a decentralized community whose participants can share data to create and train agentic artificial intelligence ("AI") programs. CAC ¶¶ 16, 49. Ocean Foundation is the original issuer of the $OCEAN cryptocurrency ("$OCEAN"). Community participants who contribute data to the Ocean platform are compensated in $OCEAN, and those who use the data are charged in $OCEAN. *Id.* ¶ 54.

Plaintiffs allege the Individual Defendants co-founded Ocean Foundation. *Id.* ¶ 15. The CAC further alleges that Bruce Pon and Trent McConaghy are directors of the Ocean Foundation, (*id.* ¶¶ 15, 21), and incorrectly alleges that Christina Pon is an Ocean Foundation employee (*id.* ¶

[3] The facts stated herein are from the CAC and assumed true solely for purposes of this motion.

20; Declaration of Christina Pon ¶ 6 ("C. Pon Decl.")).[4] Bruce Pon is also alleged to be the sole director of Ocean Expeditions. CAC ¶ 15. The Individual Defendants are acknowledged to be foreign citizens and residents. *Id.* ¶¶ 15, 20-21. Without factual support, Plaintiffs allege that "the markets" viewed the Individual Defendants as alter egos of Ocean Foundation and that they "utterly dominate and control every aspect of" that entity. *Id.* ¶ 52.

Plaintiffs further allege that OceanDAO was established in 2020 by Ocean Foundation as a grants program intended to support Ocean Foundation's AI programs and projects, and that certain $OCEAN tokens would be awarded, automatically and autonomously via smart contracts, to data contributors of the Ocean platform ("Community Tokens"). *Id.* ¶¶ 55, 57. A decentralized autonomous organization, or "DAO," is a "widely adopted governance model"; "[e]ntities operating with a DAO governance model agree to abide by a shared code or covenant with the community." *Id.* ¶ 34. "DAO token holders may, for example, vote to establish what contributions to the DAO will receive a reward, such as for providing computing power or data to the entire network or contributing certain AI code." *Id.* ¶¶ 34-35.

Using vague, impermissible group-pleading, Plaintiffs allege that certain Defendants publicly described OceanDAO as an independent and decentralized initiative when it was launched and that Defendants later stated, in May 2023, that OceanDAO was becoming fully decentralized and autonomous. *Id.* ¶ 56-57. Plaintiffs also allege that Ocean Foundation announced the designation of approximately 700,000,000 $OCEAN tokens as Community Tokens, which could enter the market only through smart contracts. *Id.* ¶¶ 59–60.

---

[4] "On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 115 n.1 (S.D.N.Y. 2020).

In 2024, non-party Fetch.ai Foundation ("Fetch"), non-party SingularityNET ("Singularity"), and Ocean Foundation proposed sharing certain costs for a new platform called the Artificial Superintelligence Alliance (the "Alliance"), which would combine the three companies' AI research and development efforts. *Id.* ¶¶ 1, 3, 63–65. The Alliance would utilize a single token, $ASI, to compensate data contributors and creators on the platform. *Id.* ¶ 115. Singularity token holders ("$AGIX") and $OCEAN token holders could convert their respective tokens into $FET, and the combined $FET token would be renamed $ASI. *Id.* ¶¶ 3, 64.

Plaintiffs amended their complaint to now allege that "Defendants" (without specifying which ones) secured and paid for the services of a purported New York law firm and a New York consulting firm in connection with forming the Alliance. *Id.* ¶¶ 63, 65. Regarding the law firm, Plaintiffs allege that "Defendants" paid one-third of the firm's fees and received advice about the Alliance's formation and the token conversion. *Id.* ¶ 77. Regarding the consulting firm, Plaintiffs allege that it conducted media training, which Bruce Pon and McConaghy attended remotely (*id.* ¶ 81), and the firm was involved in "drafting, editing, and finalizing" certain publications about the Alliance (*id.* ¶ 83).

According to Plaintiffs, consummating the Alliance was publicly presented as contingent on $FET and $AGIX holders' approval. *Id.* ¶¶ 69, 92, 126. The Alliance's Vision Paper ("Vision Paper"), published in April 2024, stated that approximately 700,000,000 $OCEAN tokens which previously had been set aside as Community Tokens, would continue to be earmarked for "community incentive programs." *Id.* ¶¶ 127–28. Plaintiffs contend that, to encourage Fetch and Singularity token holders' approval, "Defendants" made public statements reiterating that the 700,000,000 $OCEAN Community Tokens would remain earmarked for grants after conversion to $ASI. *Id.* ¶¶ 130–34. Plaintiffs contend that the nebulous "Fetch and Singularity communities" relied on the Vision Paper and "Defendants'" statements to approve the Alliance. *Id.* ¶ 134.

According to Plaintiffs, on June 27, 2025, more than a year after the Alliance was formed, "Defendants" incorporated OE in the Cayman Islands and three days later "transferred all OceanDAO assets to OE, including hundreds of millions of $OCEAN Community Tokens." *Id.* ¶ 139. Plaintiffs contend those transfers "breached … public statements" because they were not approved by the "token holder community." *Id.* ¶¶ 139–40. Plaintiffs allege that on or around July 1, 2025, Defendants began converting the $OCEAN Community Tokens into $FET, ultimately converting 661,218,319 $OCEAN into approximately 286,456,967 $FET. *Id.* ¶¶ 141–43, 189–91. Plaintiffs then allege on information and belief that, instead of utilizing the tokens for the community, Defendants "then sold approximately 263 million $FET tokens into the open market." *Id.* ¶ 147. Ocean Foundation withdrew from the Alliance on October 8, 2025. *Id.* ¶ 148.

Plaintiffs allege that they are or were holders of $FET, either through pre-Alliance acquisition or post-Alliance conversion from $AGIX, and that some Plaintiffs voted in favor of the Alliance. *Id.* ¶¶ 11–14. The CAC vaguely alleges that putative class members "acquired, held and/or converted their tokens based on the Defendants' express promises to maintain approximately 700,000,000 tokens as community tokens that could not be liquidated like treasury tokens." *Id.* ¶ 160. Plaintiffs allege that Defendants' conversion of $OCEAN Community Tokens to $FET, and then sale of $FET on the open market, caused $FET tokens to decrease in value. *Id.* ¶ 160. Plaintiffs seek to recover that decreased value.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "the plaintiff must make a *prima facie* showing that the Court has personal jurisdiction over the defendant." *Arthur v. Orchestrate Bus.* No. 24-CV-02985 (MMG), *LLC*, 2025 WL 2201067, at *3 (S.D.N.Y. Aug. 1,

2025).[5] To meet its burden, Plaintiffs must plead facts that are legally sufficient to establish either general or specific personal jurisdiction, and must do so "separately over each defendant." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). Because this is a diversity action (*see* CAC ¶ 22), "personal jurisdiction is governed by the law of the forum state – here, New York – and the requirements of due process." *Goldman v. Trinity Sch. of Med.*, No. 24-1827-CV, 2025 WL 1099088, at *1 (2d Cir. Apr. 14, 2025). "[J]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over individual officers and directors must be based on their individual contacts with the forum state." *Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, at *6 (S.D.N.Y. Mar. 31, 2017). Although the Court construes all pleadings and factual allegations in Plaintiffs' favor, Plaintiffs "may not rely on conclusory statements without any supporting facts." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 323 (S.D.N.Y. 2017).

Plaintiffs allege only specific personal jurisdiction based on a "purposeful availment" theory.[6] CAC ¶ 23. "In analyzing a Rule 12(b)(2) motion, courts in New York follow a two-step process. First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute . . . Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *Thackurdeen v. Duke Univ.,* 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). Plaintiffs' CAC fails to allege specific

---

[5] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

[6] Plaintiffs do not even attempt to allege general personal jurisdiction, and for good reason: it does not exist as to any Defendant. For a foreign corporate entity, general personal jurisdiction may exist only where the entity's "contacts are so 'continuous and systematic'. . . that it is 'essentially at home' in the state." *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2014). "[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013). The CAC does not allege that any Defendant is "at home" or domiciled in New York. *See* CAC ¶¶ 16–21.

jurisdiction over Defendants under any provision of New York's long arm statute and fails to plead jurisdictional allegations that would comport with due process.

### A. There Is No Basis For Specific Personal Jurisdiction Under New York's Long Arm Statute

When assessing personal jurisdiction, this Court "must look first to [New York's] long-arm statute." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). New York courts exercise specific jurisdiction under CPLR Section 302. *Thackurdeen*, 130 F. Supp. 3d at 798–801. Plaintiffs fail to adequately allege jurisdiction under the relevant subsections of Section 302.

#### 1. The CAC Does Not Allege Jurisdiction Under Section 302(a)(1)

To establish specific jurisdiction under Section 302(a)(1), Plaintiffs must demonstrate that Defendants "transact[] any business in New York" and that the claims asserted "arise[] from[] such a business transaction." *Thackurdeen*, 130 F. Supp. 3d at 801. A non-domiciliary, like Defendants, "transacts business" only when he "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 316 (S.D.N.Y. 2007). Plaintiffs must allege each defendant's forum contacts separately and supported by competent facts. *See In re Aegean Marine*, 529 F. Supp. 3d at 135. ("To allege personal jurisdiction over a defendant, group pleading is not permitted"). Here, Plaintiffs' group pleading alone is sufficient basis to dismiss the CAC. But even the scant facts alleged against "Defendants" are insufficient to establish personal jurisdiction in New York.[7]

[7] The deficiency is particularly clear as to Christina Pon. The CAC repeatedly groups her together with other defendants under collective labels such as "the Pons" or "Defendants," apparently based on the incorrect premise that she is "a current employee of Ocean [Foundation]." CAC ¶ 20; *see also id.* ¶¶ 56, 59. That premise is false. Ms. Pon has not been employed by Ocean Foundation since January 2021, well before any of the conduct alleged in the CAC and has not held an operative or leadership role since that time. C. Pon Decl. ¶ 6. There is, therefore, no plausible basis to assert that she had any jurisdictional contacts with this forum.

***No Purchase of $OCEAN Occurred in New York***. As an initial matter, no Plaintiff alleges that they actually purchased or held $OCEAN.[8] *See* CAC ¶¶ 11–14. Nor could they have done so; Ocean Foundation's 2019 $OCEAN initial token distribution explicitly excluded "citizen[s], domiciled in, resident[s] of, or physically present / located" in the United States. Pardo Decl., Ex. A. And although cryptocurrency exchanges such as Coinbase, Kraken, and Binance.US offer $OCEAN for ***secondary*** market trading (*i.e.*, where Ocean Foundation is not a counterparty to any transaction), Kraken and Binance.US do not allow trading of any cryptocurrency by New York residents and Coinbase does not allow trading of $OCEAN by New York residents. *Id.*, Exs. B (Coinbase), C (Kraken), and D (Binance.US). Ocean Foundation's actions to specifically exclude the entire U.S. from initial distribution of $OCEAN, and the fact that $OCEAN remains unavailable for trading on any centralized cryptocurrency exchange in New York, are the antithesis of the "purposeful availment" required by New York's long-arm statute.[9] *See Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *5 (S.D.N.Y. Apr. 30, 2018) ("*Alibaba*") (dismissing for lack of personal jurisdiction and holding, "[Plaintiff] has not alleged that even a single sale of [Defendant's cryptocurrency] has occurred in New York.").

***The Alleged Hiring of Service Providers in New York is Insufficient***. The core of Plaintiffs' amended jurisdictional theories is Defendants' alleged engagement of a supposed New York law firm and New York consulting firm. CAC ¶ 23. However, even accepting the allegations as true (which they are not, as explained below), courts have consistently held that merely retaining

[8] Specific personal jurisdiction must be based solely on the claims and contacts of the named plaintiffs. Unnamed putative class members are irrelevant to the jurisdictional inquiry. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021).

[9] The other Defendants are not alleged to have issued $OCEAN tokens.

professional service providers in a forum state does not establish purposeful availment sufficient for personal jurisdiction. *See Twin Hills Holdings, LLC v. Furling*, No. 21CV3507PKCSJB, 2023 WL 2742303, at *5 (E.D.N.Y. Mar. 31, 2023) ("Plaintiff has not identified any decisions holding that the hiring of a New York-based vendor can be the entire basis of specific jurisdiction under Section 302(a)(1), and the Court is unaware of any such authorities"); *Poms v. Dominion Diamond Corp.*, No. 655733/2017, 2019 WL 2106090, at *4 (N.Y. Sup. May 15, 2019) ("[A] foreign entity hiring a law firm, which has a presence in New York, but without a substantial connection between the law firm's engagement and the subject matter of the litigation, has been held an insufficient basis to confer New York jurisdiction over the foreign entity.") (collecting cases).

Rather, non-domiciliaries, like Defendants, must engage in a "sustained and substantial transaction of business" to meet Section 302(a)(1). *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014). Applying that principle, the CAC fails to establish jurisdiction because the alleged New York contacts consist primarily of retaining counsel or advisors, and even those alleged engagements were not substantially connected to the claims at issue. *See Haussmann, Tr. of Konstantin S. Haussmann Tr. v. Baumann* 157 N.Y.S.3d 355 (N.Y. Sup. 2021) (hiring New York based lawyers and funding through New York banks was insufficient to ground jurisdiction in New York based on a foreign transaction).

Plaintiffs also cannot satisfy the "arising from" requirement, which requires an "articulable nexus" or "substantial relationship" between the asserted claim and the transacted business, not merely conduct "related to" it. *Reich v. Lopez*, 38 F. Supp. 3d 436, 458 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) ("*Reich*"). There is no "articulable nexus" or "substantial relationship" here between the alleged retention and the asserted claims.

As to the New York law firm, Plaintiffs do not allege that their claims arise from any advice, documents, or work product it provided, and Plaintiffs were not parties to, involved in, or aware of the private negotiations in which the law firm was allegedly engaged.

Plaintiffs' allegations regarding the alleged New York consultant fail for the same reason. Plaintiffs do not allege that any media training (CAC ¶ 81) or other emails and communications (like the ASI Press Release (*id.* ¶ 83), Bloomberg article (*id.* ¶ 88), and FAQs (*id.* ¶ 91)) contain, concern, or otherwise relate to any alleged misstatement. Nor do Plaintiffs plausibly allege that the consultant's putative involvement in the Vision Paper gives rise to their claims. The CAC alleges only, in conclusory fashion, that the Vision Paper was drafted "in part" by the consulting firm, without identifying what portion it drafted or whether such portion contained the challenged statements. CAC ¶ 108. No Plaintiffs were involved in, privy to, or even aware of that work, if any. Such "conclusory allegations are not enough to establish personal jurisdiction." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 417 (S.D.N.Y. 2010).

The attenuated relationship between alleged New York services and Plaintiffs' claims is precisely what *Reich* rejected. As *Reich* explains, plaintiffs cannot establish specific jurisdiction based on retention of professionals located in New York where the alleged harm does not "stem[] from the retention" of those professionals. *Reich* at 458. The same is true here: Plaintiffs do not plausibly allege that their claimed injury stemmed from the retention of New York counsel or consultants to perform discrete services ancillary to the alleged misconduct.

***Defendants Did Not Engage The Service Providers***. In any event, Plaintiffs' fulcrum jurisdictional theory is factually incorrect. CAC ¶ 23 (alleging that Defendants "secur[ed] the services of a New York law firm" and "engag[ed] a New York [consulting] firm"). "As 12(b)(2) motions are inherently matters requiring the resolution of factual issues outside the pleadings, courts may rely on additional materials when ruling on such motions." *Camacho v. Northeastern*

*Univ.*, No. 18 CIV. 10693 (ER), 2019 WL 5190688, at *2 (S.D.N.Y. Oct. 15, 2019) (citation modified). None of the Defendants hired, contracted, or engaged the law firm or consulting firm named in the CAC. Declaration of Bruce Pon ("B. Pon Decl.") ¶¶ 14–15; Declaration of Trent McConaghy ("McConaghy Decl.") ¶ 8; C. Pon. Decl. ¶ 8; Declaration of Daniel Lustig ("Lustig Decl.") ¶¶ 8–11.[10] Nor did the Individual Defendants or the DAO Defendants directly pay either entity. B. Pon Decl. ¶¶ 14–16; C. Pon Decl. ¶ 10; McConaghy Decl. ¶ 10; Lustig Decl. ¶¶ 9, 11. To the extent Mr. Pon, Ocean Foundation, or Ocean Foundation's lawyers had any contact with the law firm, their communications were primarily with lawyers located in Singapore, not New York. B. Pon Decl. ¶ 17. The alleged communications did not involve any Plaintiff; they were made between certain Defendants, Fetch, and Singularity (or between the parties' counsel). The ASI Press Release likewise identifies the "Media Contact" as "Fetch.ai@fticonsulting.com," confirming that non-party Fetch served as the relevant contact. CAC Ex. 10. With these allegations, Plaintiffs improperly try to attribute non-party Fetch's New York contacts to Defendants. *See Walden v. Fiore*, 571 U.S. 277, 284–86 (2014) ("[T]he ***defendant's*** suit-related conduct must create a substantial connection with the forum State.") (emphasis added).

***Remote Correspondence into New York is Insufficient***. Plaintiffs next allege "numerous telephone conversations and email communications with parties located in New York" (CAC ¶ 23), and that "Defendants knew that certain of Fetch's representatives were located in New York" (*id.* ¶ 62). It is well-settled that "mere existence of a business relationship with entities within the forum state is insufficient to establish presence." *Mantello v. Hall,* 947 F. Supp. 92, 98 (S.D.N.Y. 1996). "Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction." *Int'l*

[10] Defendants submit these declarations as conflicting affidavits to factual disputes in the CAC.

*Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1999). That principle applies with particular force here, where Plaintiffs do not allege that any purported communications involved Plaintiffs or gave rise to their claims. *See JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844 (CS), 2019 WL 2578306, at *6 (S.D.N.Y. June 24, 2019), *aff'd sub nom.*, *Yih v. Taiwan Semiconductor Mfg. Co*., 815 F. App'x 571 (2d Cir. 2020) (declining jurisdiction because "limited electronic or telephonic communication between an out-of-state Defendant and a New York Plaintiff regarding services to be performed outside of New York, without more, will not justify long-arm jurisdiction.").

Indeed, any alleged participation by Defendants with the New York firms occurred remotely via video, making any New York contacts incidental, without any physical presence in New York, and certainly not directly with Plaintiffs. *See* CAC ¶¶ 63, 75, 81, 82 (indicating remote participation by Defendants); *cf. JihShyr Yih*, 2019 WL 2578306, at *6 (finding no jurisdiction where defendant contacted the *plaintiff* "via five emails, two phone calls, and two Skype calls").

***Online Communications Not Targeted to the Forum State Do Not Establish Jurisdiction***. In addition, Plaintiffs allege that "Defendants" are subject to jurisdiction based on the dissemination of the Vision Paper, Press Release, and "other online communications" that solicited Plaintiffs' conduct. CAC ¶ 23; *see also* CAC Exs. 3–9, 14. But those publications and statements by certain Defendants were made abroad through passive websites and are not alleged to have been specifically directed to New York, tailored to New York recipients, or otherwise purposefully targeted at this forum. "The law is now settled that the mere availability of [a website] to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, No. 23-CV-7106 (LJL),

2024 WL 1533189, at *7 (S.D.N.Y. Apr. 8, 2024).[11] Plaintiffs cannot convert globally accessible online statements into purposeful New York conduct. "[G]eneral marketing efforts, including its website and email campaigns," are not sufficient to confer specific jurisdiction if not "specifically targeted at New York residents." *Goldman*, 2025 WL 1099088, at *1.

***There Are Insufficient Allegations for Jurisdiction Over the Individual Defendants***. As to the Individual Defendants specifically, the CAC pleads no specific facts demonstrating their purposeful availment. As to Messrs. Pon and McConaghy, the CAC admits their only purported contacts with New York were through (1) Zoom meetings with other individuals located in New York, (2) alleged retention of New York service firms, and (3) publications on passive websites. As to Ms. Pon, the CAC contains only group pled allegations that she was involved in posts on passive globally accessible websites. As set forth above, these allegations do not suffice.

***Jurisdiction Fails as to the DAO Defendants***. There are no allegations that the DAO Defendants transacted any business within New York or contracted anywhere to supply goods or services in the state. The CAC confirms that neither DAO Defendant was a member of the Alliance. CAC ¶ 85. The amended allegations impermissibly use the term "Defendants," but none of these new allegations relating to personal jurisdiction specifically name the DAO Defendants. For example, the DAO Defendants are not specifically named as part of any alleged engagement with the New York attorneys and consultants, and the DAO Defendants are not specifically alleged to have participated in any remote video conferences. In addition, the DAO Defendants were not parties to the Vision Paper (CAC Ex. 14), are not alleged to have disseminated the Press Release

[11] *See also Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a distant state that residents of New York visit does not, by itself, subject a defendant to jurisdiction in New York."); *Alibaba*, 2018 WL 2022626, at *6 n.5 ("Defendants' use of U.S.-based media and U.S.-based platforms, such as GoDaddy.com, Facebook, Youtube, and Twitter … is also irrelevant to the question of personal jurisdiction in New York.").

or the ASI Press Release, and are not alleged to have made any other statements. Indeed, the accompanying Lustig Declaration confirms that despite Plaintiffs' group pleading gambit, neither DAO Defendant was ever a member of the Alliance, hired a New York law firm or marketing or consulting firm related to the Alliance, or drafted or disseminated any public statements pertaining to the Alliance. Lustig Decl. ¶¶ 7–21.

**2. The CAC Does Not Allege Jurisdiction Under Section 302(a)(2)**

Jurisdiction under Section 302(a)(2) also is unavailing.[12] That provision applies "only [to] tortious acts performed by a defendant who was ***physically present*** in New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). The CAC pleads no such tortious acts or statements committed by any Defendants while physically present in New York.

**3. The CAC Does Not Allege Jurisdiction Under Section 302(a)(3)**

Finally, Section 302(a)(3), which applies to out-of-state torts causing in-state injury, also does not apply. "[T]he suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York," and such economic harm is all that is alleged here.[13] *Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013). But even if the CAC did plead a sufficient in-state injury, Section 302(a)(3) also requires that defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods [sold] or services rendered, ***in the state***," or that it "expects or should reasonably expect [its] act to have consequences ***in the state and*** derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3)(i)–(ii) (emphasis added). As noted, the

[12] Section 302(a)(2) and Section 302(a)(3) do not apply to non-tort claims of breach of contract, implied covenant of good faith and fair dealing, promissory estoppel, and GBL Sections 349 and 350. *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 360 (S.D.N.Y. 2014). Therefore, Plaintiffs cannot allege jurisdiction of those claims based on those sections.

[13] The CAC alleges non-economic harm to the Alliance. *See* CAC ¶ 9. The Alliance is a non-party to this lawsuit. As to the named Plaintiffs, the CAC does not allege non-economic damages.

CAC is devoid of any allegations that Ocean Foundation had any persistent course of conduct in the United States—let alone in New York. There is no basis to conclude that Ocean Foundation "should reasonably expect its act to have had consequences in [New York]" when it specifically excluded the entire U.S. from its business. *See* Pardo Decl. Exs. A-D; B. Pon Decl., ¶¶ 8–13.

As to the Individual Defendants, the CAC alleges no facts showing that any Individual Defendant engaged in a persistent course of conduct in New York or the United States. Nor does it plead facts supporting a reasonable expectation of New York consequences, particularly where the underlying business expressly excluded the United States.

Finally, as to the DAO Defendants, the CAC does not allege that they committed any tortious act whatsoever. The DAO Defendants did not author or participate in the drafting or dissemination of the Vision Paper, the Press Release, the ASI Press Release, or any other public statements, did not solicit the votes of token holders, and did not make any misrepresentations. CAC ¶¶ 78–134. *See Metamorfoza D.O.O. v. Big Funny LLC*, No. 19-CV-11743 (RA), 2021 WL 735243, at *5 (S.D.N.Y. Feb. 25, 2021) (no jurisdiction under CPLR 302(a)(3) where plaintiff "failed to plausibly plead that Defendants committed a tortious act."). In addition, the CAC contains no allegations of ongoing activity or revenue derived in New York by the DAO Defendants to meet Section 302(a)(3)(i) or (ii).

### B. Exercising Personal Jurisdiction Over Defendants Would Violate Constitutional Due Process

Because Plaintiffs have failed to establish jurisdiction over Defendants under CPLR § 302(a), the Court need not reach the constitutional inquiry. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007) ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality."). But assuming, *arguendo*, Plaintiffs could meet

their burden of proof under the long-arm statute, exercising specific jurisdiction over Defendants would offend due process. *See Whitaker*, 261 F.3d at 208.

Personal jurisdiction requires a "strong relationship among the defendant, the forum, and the litigation," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021), such that the defendant has "certain minimum contacts." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). "First, the [non-resident] must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the [non-resident's] forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).

In New York, "except in rare cases," questions about whether the long-arm statute permits personal jurisdiction and whether personal jurisdiction comports with due process "yield the same result." *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 273 (S.D.N.Y. 2019). This is not one of those rare cases. Indeed, "the elements of the 'transacts business' prong of § 302(a)(1) and the elements satisfying minimum contacts are substantially the same under New York law." *Kravitz v. Binda*, No. 17-CV-07461 (ALC)(SN), 2020 WL 927534, at *8 (S.D.N.Y. Jan. 21, 2020).

For the reasons set forth above, Plaintiffs fail to satisfy this standard with respect to the alleged retention of New York professionals and communications with non-parties. Nor does the dissemination of a Vision Paper or blog posts from abroad and accessible worldwide—without individualized outreach, contracts, or operations in New York—constitute "purposeful availment." Courts in this District have held that publishing content on a "website that is accessible nationwide" does not equate to purposeful availment. *Glob. Edge Design Inc. v. Michel*, No. 20-CV-9654 (PKC), 2021 WL 1549990, at *4 (S.D.N.Y. Apr. 20, 2021) (granting motion to dismiss

for lack of personal jurisdiction); *see also In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 457–458 (S.D.N.Y. 2022) (Twitter and LinkedIn posts insufficient to confer jurisdiction where not directed at forum). In fact, federal courts in this and other districts, addressing cryptocurrency claims similar to those in this case, routinely have found personal jurisdiction lacking based on ***more*** extensive contacts than those alleged here.[14] In *Basic v. BProtocol Foundation*, for example, the court dismissed a complaint for lack of personal jurisdiction despite allegations involving worldwide social media postings and United States conference participation, emphasizing that online statements "available to nearly the entire world" and decentralized token availability did not establish minimum contacts. *Basic v. BProtocol Found.,* No. A-23-CV-533-RP, 2024 WL 4113751, at *7 (W.D. Tex. July 31, 2024), *R&R adopted*, No. 1:23-CV-533-RP, 2024 WL 4113024 (W.D. Tex. Sept. 6, 2024), *vacated in part,* No. 1:23-CV-533-RP, 2024 WL 6077793 (W.D. Tex. Dec. 16, 2024). Accordingly, the Court should decline to exercise personal jurisdiction as to all Defendants and dismiss the CAC with prejudice under Rule 12(b)(2).

---

[14] *See, e.g., Holsworth v. BProtocol Found.*, No. 20 CIV. 2810 (AKH), 2021 WL 706549, at *2 (S.D.N.Y. Feb. 22, 2021) (similar facts as *Basic* and declining to find personal jurisdiction in New York "over citizens of another country" based on "communications world-wide"); *Karnas v. Cuban*, No. 22-CV-22538, 2025 WL 3759241, at *11 (S.D. Fla. Dec. 30, 2025) (dismissing for lack of personal jurisdiction because social media and other press targeted a "global" audience making "[t]he sole jurisdictional hook … a nationwide campaign"); *Meany v. Atomic Protocol Sys. OU*, No. 23-CV-01582-PAB-MEH, 2024 WL 4135762, at *5–6 (D. Colo. Sept. 10, 2024) (no personal jurisdiction against Estonian crypto company because plaintiffs did not "allege that [defendant] intentionally direct[ed] its marketing activity at [forum state] rather than just having the [advertisements] accessible there" and that "unlike tangible goods that must be shipped to customers in a forum state, [defendant's cryptocurrency] products can reach users without [defendant] knowing where those users are located."); *Safex Found., Inc. v. SafeLaunch Ventures Ltd.*, 694 F. Supp. 3d 1, 16–17 (D.D.C. 2023) (declining jurisdiction over a foreign crypto company because social media posts "do not themselves evince any effort to target United States business.").

## II. <u>EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS FAIL TO STATE A CLAIM.</u>

Even if the Court had personal jurisdiction over Defendants—and it does not—the CAC should be dismissed because Plaintiffs fail to allege a legally cognizable claim under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, the CAC must contain "enough facts to state a claim to relief that is plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To avoid dismissal, Plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Dismissal is appropriate when it is clear from the face of the complaint . . that the plaintiff's claims are barred as a matter of law." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014).

### A. The CAC Improperly Engages in Impermissible Group Pleading

Fed. R. Civ. P. "requires, at a minimum, that a complaint gives each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). A complaint that "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct. . . fail[s] to satisfy this minimum standard." *Id.*; *S.G. v. Bank of China Ltd.*, No. 23-CV-2866 (LAK), 2024 WL 1861158, at *2 (S.D.N.Y. Apr. 29, 2024) *aff'd sub nom., S.G. v. Bank of China U.S.A.*, No. 24-1426, 2024 WL 4891390 (2d Cir. Nov. 26, 2024) ("[T]he fact that separate legal entities may have a corporate affiliation does not alter this pleading requirement."). The prohibition against group pleading is even more strict under Rule 9(b), which governs the CAC's fraud claim. *See* Fed. R. Civ. P. 9(b); *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 453 (S.D.N.Y. 2019) ("These allegations rely on impermissible group pleading that does not satisfy Rule 9(b)").

After Defendants demonstrated that Plaintiffs' original complaint contained impermissible group pleading, Plaintiffs doubled down. The CAC contains ***even more*** group-pleaded allegations

against "Defendants" generally that do not specifically refer to any Defendants. *See* CAC ¶¶ 1–10, 57, 62, 83, 94, 125, 127, 129–30, 133–35, 137–52, 157–62, 164–67, 169–170, 181–87, 189, 191–99, 203–09, 211–14, 216, 218–19, 221, 223–24.[15] The Court should reject Plaintiffs' attempt to circumvent their pleading obligation and disregard allegations made against "Defendants" collectively. Absent allegations specific to each Defendant, no cause of action can be sustained against them. *Atuahene*, 10 F. App'x. at 34 (affirming dismissal of complaint that impermissibly relied on group pleading in violation of Fed. R. Civ. P. 8).

### B. Plaintiffs Have Not Alleged Any of the Elements for Fraud (Count One)

To plead fraud under New York law, Plaintiffs must plausibly allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."[16] *Hunt v. Enzo Biochem, Inc.*, 471 F. Supp. 2d 390, 399 (S.D.N.Y. 2006). Rule 9(b) also requires that "a party must state with particularity the circumstances constituting fraud."

Here, Plaintiffs identify three statements (collectively, "Statements") by "Defendants" that Plaintiffs allege were misrepresentations that caused them injury:

- Defendants "confirm[ed] that they operated a DAO with the goal of developing open-source AI," CAC ¶ 181, with "no central governance structure." CAC ¶ 184 (the "DAO Statements");

[15] Illustrating the absurdity of Plaintiffs' group pleading stratagem, numerous allegations made against all "Defendants" collectively pre-date OE's incorporation on June 27, 2025. *Compare* CAC ¶¶ 61–63, 65–72, 74, 77–79, 81, 83, 88, 91, 93–95, 107–109, 120, 123, 124, 130 *with* CAC ¶ 139. It is literally impossible for OE to have been involved in many of the allegedly wrongful activities set forth in the CAC and ascribed to all "Defendants."

[16] Although Count One alleges common law fraud, Defendants cite to securities fraud cases in this section "[b]ecause [the elements of common law fraud] are substantially identical to those governing § 10(b), [so] the identical analysis applies." *Rich v. Maidstone Fin., Inc.*, No. 98 CIV. 2569 (DAB), 2002 WL 31867724, at *13 (S.D.N.Y. Dec. 20, 2002).

- That approximately 700,000,000 $OCEAN Community Tokens "would remain designated for Alliance community incentives after the token merger, and would not be converted or liquidated into treasury tokens," CAC ¶ 181, but would instead "be awarded to community members through autonomous smart contracts." CAC ¶ 184; and that said $OCEAN Community Tokens "would enter circulation, as network rewards to the community, over a period of decades." CAC ¶ 130, 189 (the "Community Tokens Statements"); and

- That Ocean Foundation "would join a merged token network with Singularity and Fetch, that the three entities would form a decentralized community, and that this community would be monitored and guided by the Alliance." CAC ¶ 185 (the "Alliance Statements").

Even accepting Plaintiffs' non-conclusory allegations as true, none of these Statements suffices to support a fraud claim for at least five independent reasons.[17]

### 1. The CAC Fails to Allege A Misrepresentation by Any Defendant

There can be no fraud without a misrepresentation about a "material existing fact." *Urstadt Biddle Prop., Inc. v. Excelsior Realty Corp.*, 65 A.D.3d 1135, 1136–7 (2d Dep't 2009). The CAC does not allege that any Statements were materially false when any Defendant made them. At most, the CAC alleges that later developments diverged from Defendants' earlier expectations, which is not fraud.[18] In fact, Plaintiffs' own exhibits to the CAC confirm that the Statements were ***true*** when made.[19] Much of the challenged pre-Alliance conduct references future events, *see* CAC ¶¶

[17] Plaintiffs' CAC adds certain articles and publications in paragraphs 96–106, but none are alleged to have been a misrepresentation. Moreover, certain statements added in paragraphs 150–156 occurred after the alleged transactions and thus could not have been the basis for any reliance by Plaintiffs.

[18] Such divergence is even more common where, as here, significant time passed between the statements and alleged consequences. In this case, the majority of statements cited by Plaintiffs were made ***years*** before the merger was even contemplated, not "shortly before Defendants began converting the $OCEAN Community Tokens." *Compare* Exs. 5 (Oct. 7, 2021), 6 (May 22, 2023), 8 (October 29, 2020), 9 (July 24, 2023), *with* CAC ¶ 186.

[19] CAC Exhibits 1, 2, and 6 describe the launch, vision, and implementation of OceanDAO. Regarding the Community Tokens Statement, Plaintiffs' exhibits demonstrate that Community Tokens were distributed through DAO processes and that community grants operated as described. *See, e.g.*, CAC Ex. 18. Regarding the Alliance Statement, Plaintiffs do not dispute that Ocean

51–60, 107–19, 125–35 (referencing Exs. 2, 5–16), but "expressions of hope for the future do not constitute actionable representations of fact . . . [A] party does not make an actionable representation of fact when predicting a future event with no knowledge of whether or not the event may occur." *Cimen v. HQ Cap. Real Est. L.P.*, 227 A.D.3d 587, 587 (1st Dep't 2024) (affirming dismissal of fraud claims). Here, Plaintiffs do not allege contemporaneous falsity, which is fatal to their fraud claim.

Moreover, the CAC does not identify any Defendant's promise that Community Tokens would be held indefinitely in $OCEAN. *See* CAC Ex. 5 at 1 (announcing "$140 million USD in grants for the community"); CAC Ex. 6 at 8–9 (discussing tokens that are "earmarked for community incentives"); CAC Ex. 17 (discussing time frame for distribution of network rewards). Plaintiffs rely heavily on the Vision Paper, which states only that certain tokens were "designed for community incentives" and that subsequently those rewards would "still be utilized for upcoming incentives programs." CAC Ex. 14 at 20. That language speaks to purpose, not denomination. That is, the Vision Paper did not represent that the tokens would be maintained indefinitely in $OCEAN, prohibit conversion to other coins, or restrict the form in which incentives could be distributed. At most, the Vision Paper is silent as to the form of those "rewards" and whether they will be held or disseminated in $OCEAN, $FET, cash or any other manner. Plaintiffs' "subjective misunderstanding of information that is not objectively false or misleading cannot mean that defendant has committed the tort of fraud." *Gomez-Jimenez v. New York Law School,* 103 A.D.3d 13, 18 (1st Dep't 2012) (dismissing fraud claim based on alleged statements that were "not actually false (even if it was incomplete).").

Foundation joined the Alliance. *See* CAC Ex. 11. In short: these Exhibits contain statements that were accurate when made, and Plaintiff does not allege otherwise.

Plaintiffs' new allegations about the Community Tokens fare no better. *See* CAC ¶¶ 130, 150-56. Paragraph 130 does not allege fraud. Rather, it alleges that Defendants discussed a *schedule* for token distribution—i.e., a forward-looking design parameter, not a binding commitment or representation of present fact. *Id.* ¶ 130. Similarly, the 2023 statement that tokens would "vest to community over decades" (CAC Ex. 6) contains generic aspirational plans, but no guarantee of a specific denomination or method of distribution. These statements reflect "expressions of hope for the future" subject to change based on evolving circumstances. *Cimen*, 227 A.D.3d at 587. Moreover, the CAC does not allege that these statements were false when made in 2019 or 2023, well before the Alliance was even contemplated. The challenged statements are "not actionable because such projections are merely statements of prediction or expectation." *ESBE Holdings, Inc. v. Vanquish Acquisition Partners, LLC*, 50 A.D.3d 397, 398 (1st Dep't 2008).

In addition, new paragraphs 150–156 rely entirely on a March 2026 article—published after Ocean Foundation exited the Alliance—to impute fraudulent intent to statements made years earlier. Plaintiffs cite one author's observation that the "split was inevitable" given "different missions" and "different priorities" between the platforms. CAC ¶ 150 (quoting Ex. 20). But this non-party, post-hoc observation about incompatibility is not evidence that any pre-Alliance statement was false when made. *See Kumaran v. Northland Energy Trading, LLC*, No. 19-CV-8345 (MKV) (RWL), 2025 WL 1982945, at *8 n.5 (S.D.N.Y. July 9, 2025) (misrepresentations or misleading documents provided after a particular action cannot suffice for fraud). Rather, it reflects the reality that partnerships evolve and sometimes fail—a common occurrence that does not, standing alone, establish fraud. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 96 F. Supp. 3d 325, 344 (S.D.N.Y. 2015), *aff'd*, 645 F. App'x 72 (2d Cir. 2016) ("[F]raud by hindsight is not a cognizable theory of relief.").

Finally, as to the DAO Defendants, there are no non-conclusory, non-group-pleaded allegations of misstatements at all. "It is well-settled that a plaintiff who alleges fraud against multiple defendants must plead with particularity by setting forth separately acts complained of by each defendant." *Kirschner v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 9815174, at *18 (S.D.N.Y. Dec. 1, 2020); *see also Hunt*, 471 F. Supp. 2d at 408 (dismissing fraud claim against defendants who never "made a single misleading statement"). Plaintiffs point to alleged misstatements in "the Vision Paper, press releases, blog posts, and other communications," CAC ¶¶ 181-85, but do not allege that DAO Defendants made those statements. CAC ¶¶ 125-34, Exs. 6, 11, 13, 14, 17, 18. Because there are no allegations of any misstatements by the DAO Defendants, the fraud claim should be dismissed against them.

#### 2. The CAC Lacks Allegations Supporting a Strong Inference of Scienter As To All Defendants

To state a fraud claim, Plaintiffs must allege facts with particularity giving rise to a strong inference of scienter as to each defendant. *Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012); *In re BISYS Sec. Litig.*, 397 F. Supp.2d 430, 441 (S.D.N.Y. 2005). The CAC fails to do so.

Plaintiffs do not allege any non-speculative facts showing that any Defendant intended to defraud Plaintiffs or mislead them with the Statements at the time they were made. *Special Situations Fund III QP, L.P*, 96 F. Supp. 3d at 344 (declining to find scienter and holding that "in retrospect, certain actions or statements may be interpreted or characterized as demonstrating awareness of fraud, fraud by hindsight is not a cognizable theory of relief."). Instead, Plaintiffs' scienter theory rests primarily on the claim that "Defendants" sold Community Tokens "for their own benefit." CAC ¶ 186; *see also id.* ¶¶ 150-56. But self-interested desire to profit does not give rise to an inference of fraudulent intent. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir.

1996) (general corporate profit motive does not establish scienter); *In re Frito-Lay N. Am, Inc. All Natural Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) ("[G]eneralized motive to…increase sales and profits, does not support a strong inference of fraudulent intent.").

Plaintiffs also try to suggest fraudulent intent by alleging that an after-the-fact characterization of the Alliance's failure as "inevitable" demonstrates that it was part of Defendants' scheme all along. CAC ¶¶ 150–156 (citing Ex. 20). This statement, however, was drafted by a "Stu L"—a writer for Altcoin Buzz Pte Ltd.—not by Defendants. *See* Ex. 20 at 1, 4. And an allegation that relies "on a flawed assumption about the determinate outcome" of the Alliance does nothing to establish that Defendants entered the Alliance with the intent of defrauding others or looting corporate funds. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 356 (S.D.N.Y. March 31, 2011) (dismissing fraud claim for inadequate scienter allegations in part because "lack of clairvoyance simply does not constitute securities fraud.").

The CAC also fails to allege particularized facts connecting any Defendant to any purportedly fraudulent conduct. It does not allege which Defendant(s) sold tokens, or any basis for the conclusion that such sales were for any *Defendant's* benefit or financial gain. *See* CAC ¶ 147. Allegations made "[u]pon information and belief," including Plaintiffs' admission that it is "unclear precisely how many tokens were ultimately sold," are "insufficient to state a fraud claim." *Id.*; *Cimen*, 227 A.D.3d at 588.

The scienter allegations are even more deficient as to the Individual Defendants. The CAC does not allege that they sold or authorized the sale of tokens or received proceeds in furtherance of a fraud. *See* CAC ¶¶ 145–49, 157–58, 186. The CAC criticizes an October 9, 2025, statement that purportedly encouraged the sale of $FET as a "dog whistle", but this blog post is attributed to the "Ocean Protocol Team" not Messrs. Pon or McConaghy, Ms. Pon, or the DAO Defendants.

*See* CAC ¶ 158, Ex. 19. The CAC cites their statements in certain exhibits, but the allegations often conflate statements made by an entity with statements made by an individual (*compare e.g.*, CAC Ex. 4 at 42 ("OE had *only* one way out. . ."), *with* CAC ¶ 144 ("Defendants 'had only one way out . . .'")), and do not allege specific facts from which a strong inference of scienter could be inferred. The generalized allegations about the "Defendants" do not suffice to allege a strong inference of scienter as to the Individual Defendants. *In re BISYS Sec. Litig.*, 397 F. Supp.2d at 449 (dismissing claims as to individual defendants where individualized allegations of scienter were inadequate).

As to the new allegations in paragraphs 151–155 that Defendants benefited from reduced $OCEAN supply following consummation of the Alliance, they are nothing more than speculation dressed as fraud. Plaintiffs cannot manufacture fraud from their own unsupported assumptions about what Defendants intended. *See Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir. 1990) (stating that exceptions to the rigid requirement that fraud be pleaded with particularity "…must not be mistaken for license to base claims of fraud on speculation").

As to the DAO Defendants, because they are not alleged to have made any misrepresentations, they *ipso facto* could not have made any misrepresentations with scienter. There are no specific allegations that the DAO Defendants knew that any statements were false when made. Moreover, any alleged economic benefit from the sale of $FET tokens cannot support an inference of scienter. *See Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 247 (S.D.N.Y. 2012) ("[T]he profit motive common to all businesses is insufficient to establish scienter").

### 3. Plaintiffs Fail to Plead Specific Reliance

Under New York law, a plaintiff alleging fraud must establish it actually heard or read the alleged false statement and relied on it in some way. *See Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817 (2016) ("[F]raud is intended to protect a party from being induced to act

or refrain from acting based on false representations—a situation which does not occur where, as here, the misrepresentations were not communicated to, or relied on, by plaintiff.").

Here, Plaintiffs primarily allege that "Plaintiffs and Class member relied on [the Statements] when voting to approve the token merger and in acquiring, holding, and converting ASI tokens." CAC ¶ 188. Such conclusory group pleading does not suffice to plead reliance. *Schwab v. E*TRADE Fin. Corp.*, 258 F. Supp. 3d 418, 430 (S.D.N.Y. 2017) (dismissing securities fraud claim for failure to plead reliance because the allegations "fail to show with any sort of particularity that the plaintiff was aware—whether by reading, hearing, or otherwise—of any of the challenged misstatements."). The CAC now alleges that a single Plaintiff, Seth Ian, "read the Vision Paper" and other "online publications" and relied on the accuracy of these representations. CAC ¶ 122. That is not enough. The CAC still fatally fails to identify the specific representation that misled this Plaintiff or that he allegedly relied on. *See In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019) (dismissing fraud claim in part because "plaintiffs do not establish that [defendant] made any ***specific statement*** on which a plaintiff relied"); *Rider v. Uphold HQ Inc*., 657 F. Supp.3d 491, 504 (S.D.N.Y. 2023) (dismissing negligent misrepresentation claim in part because the complaint "pleads no facts regarding whether any class member actually relied upon any ***specific representation***."); *see also generally Stephenson,* 482 F. App'x at 622 (plaintiff "believed and justifiably relied ***upon the statement*** and was induced ***by it*** to engage in a certain course of conduct") (emphases added). The CAC does not allege any other Plaintiff saw any other Statements (including those in the Vision Paper), when any other Plaintiff saw them, or how they influenced any other Plaintiff's decision.[20] *See Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222

[20] Even if the Court finds the CAC's allegations sufficient to establish reliance by Seth Ian (and it should not so find), the other Plaintiffs cannot remain as class representatives because they have not pled reliance.

F.3d 63, 72 (2d Cir. 2000) (rejecting fraud claim because plaintiffs "never received" the alleged misrepresentation); *Schwab,* 258 F. Supp. 3d at 430 (finding failure to plead reliance because the "allegations of detrimental reliance are entirely conclusory.").[21]

#### 4. The CAC Fails to State a Viable Theory of Injury or Causation Based on a Decrease in Value of the $FET Token

Plaintiffs fail to plead cognizable injury. Under New York law, fraud damages are limited to actual, realized pecuniary loss, not expected profits or market value fluctuations. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 422 (1996) (dismissing fraud claim because there were "no losses here."). The CAC does not allege that any Plaintiff sold any $FET tokens or otherwise realized a loss. The CAC instead alleges that "the class members have been left ***holding*** tokens." CAC ¶ 8 (emphasis added). Indeed, Plaintiffs Ian and Larivee received exactly what they expected: $FET tokens converted at the announced ratio. *See* CAC ¶¶ 3, 12, 14. In addition, Plaintiffs Fetch Compute and Graves are only alleged to be "a ***holder*** of $FET tokens," conceding that they have unrealized losses. CAC ¶¶ 11, 13 (emphasis added). A fraud claim fails where a plaintiff "remained in possession of the true value of [his holdings], whatever that value may have been at any given time." *Starr Found. v. Am. Int'l Grp., Inc.*, 901 N.Y.S.2d 246, 249 (1st Dep't 2010).

Plaintiffs' theory of loss causation also fails New York's out-of-pocket rule because it seeks recovery based on what the price of $FET would have been if "Defendants" had not allegedly bought and sold the $FET Community Tokens, which is precisely the type of speculation-based recovery that is impermissible. CAC ¶ 170; *Negrete v. Citibank, N.A.*, 759 F. App'x 42, 47–48 (2d Cir. 2019) (dismissing fraud claim because alleged damages were "the profits [plaintiffs] would

[21] Any purported reliance on the Vision Paper would fail in any event, as it explicitly states that "[b]y accessing this document, you acknowledge and agree that any reliance on or use of the information provided shall be at your sole risk." CAC Ex. 14 at 38.

have made were it not for the allegedly fraudulent" conduct); *Lama Holding Co.,* 88 N.Y.2d at 442 (rejecting loss theory that was "undeterminable and speculative").

Even if Plaintiffs could plead injury, they fail to plead causation. A fraud plaintiff must allege that the injury "is the natural and probable consequence of the defrauder's misrepresentation." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992) (dismissing fraud claim based on lack of causation). The CAC does not plausibly allege that any Statements proximately caused Plaintiffs' alleged losses, as opposed to intervening causes such as general cryptocurrency market fluctuations. Instead, Plaintiffs rely on an impermissible market-wide inference that later price declines must have resulted from earlier statements. Such allegations are insufficient as a matter of law. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (dismissing securities fraud claim because "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price."); *see also Laub v. Faessel*, 745 N.Y.S.2d 534, 537 (1st Dep't 2002) (dismissing fraud claim because "plaintiff failed to allege or provide any evidence that [defendant's] asserted misrepresentations—rather than market forces—caused plaintiff's alleged losses.").

Lastly, the fraud claim should also be dismissed because it is duplicative of the breach of contract claim. "Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract." *Ellington Credit Fund, Ltd., v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011). Here, Plaintiffs allege "Defendants" committed fraud by converting Community Tokens into $FET and selling them for their own gain, which they characterize as a "blatant breach" of contractual obligations. CAC ¶¶ 5–6, 144, 213. Plaintiffs' fraud claim relies on the same facts as their breach of contract claim,

adding only conclusory assertions of fraudulent intent. *See Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996) (dismissing fraud claim indistinct from breach of contract claim that "merely appended allegations about [defendants'] state of mind to the claim for breach of contract."). In particular, the new allegations at paragraphs 151–156 argue that Defendants never intended to remain part of the Alliance. But "an intention not to perform a contract does not bring on heavier damages than actual nonperformance." *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 435 (1994) (affirming conclusion that "willful" breach of contract "did not establish [] tortious conduct.").

### C. The CAC Fails To State A Claim For Civil Conspiracy (Count Two)

New York does not recognize civil conspiracy as an independent cause of action. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). A conspiracy claim "cannot stand alone" and must be dismissed if the underlying independent tort has not been adequately pleaded. *Filler v. Hanvit Bank*, 156 F. App'x 413, 418 (2d Cir. 2005) (dismissing conspiracy claim based on insufficiently plead fraud claims). Here, Count Two alleges civil conspiracy based on the fraud inadequately alleged in Count One. Therefore, Count Two should be dismissed. *Id.*

Even if Plaintiffs had alleged a viable fraud claim, Count Two still fails because the conspiracy claim rests on the conclusory allegation that "Defendants agreed amongst themselves." CAC ¶¶ 191–93. Indeed, the CAC contains no competent allegations of any agreement between any Defendants or any overt act in furtherance of a conspiracy. Courts routinely dismiss such pleadings. *Enemigo Ltd. v. Trinity Bev. Grp., LLC*, No. 22 CIV. 9794 (NRB), 2025 WL 1425731, at *5 (S.D.N.Y. May 16, 2025) (dismissing civil conspiracy claim because complaint "fails to allege any facts that might suggest the Selby defendants agreed to participate in a conspiracy or committed any overt act, intentional or otherwise, in furtherance of that agreement"). The conspiracy claim here (CAC ¶¶191–199) relies on "sweeping references to the collective

fraudulent actions of multiple defendants" without particularized allegations required under Rule 9(b) and therefore should be dismissed. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 579–80 (2d Cir. 2005) (dismissing conspiracy claim as insufficient under Rule 9(b)).

**D. The CAC Fails To State A Claim For GBL Violations (Count Three)**

Count Three alleges violations of GBL §§ 349 and 350. Section 349 requires allegations that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009). New York courts apply the same standard to § 349 and § 350 and courts typically analyze them together. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023). The GBL claims fail because the CAC does not plead any transaction that occurred in New York, any consumer-oriented action, or any injury or causation.

The New York Court of Appeals has made clear that a § 349 claim requires "the transaction in which the consumer is deceived ***must occur in New York***." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324–25 (2002) (emphasis added). This reflects the statute's territorial limits and avoids "nationwide, if not global, application of [§] 349." *Id.* Some courts have applied *Goshen* to require that a plaintiff "actually view a deceptive statement while in New York," while others have "focus[ed] on where the underlying deceptive 'transaction' takes place." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013). In all events, territoriality "must be pleaded in order for a claim brought under [Sections 349 and 350] to survive." *Dorris v. Danone Waters of Am.*, 711 F. Supp. 3d 179, 187 (S.D.N.Y. 2024), *on reconsideration in part*, No. 22 CIV. 8717 (NSR), 2024 WL 4792048 (S.D.N.Y. Nov. 14, 2024). Finally, "[t]his test does not turn on the residency of the parties, or on where the defendant allegedly hatched a scheme to deceive consumers." *English v. Danone N. Am. Public Ben. Corp.*, 678 F.Supp.3d 529, 535–36 (S.D.N.Y. 2023).

Under either approach to the test, Count Three should be dismissed because the CAC does not allege any deceptive transaction occurring in New York. As a threshold matter, Plaintiffs do not plead territoriality at all. The CAC fails to allege that any named Plaintiff was physically present in New York when viewing, reading, or relying on any of the allegedly deceptive statements, which is fatal under the first approach.[22] Nor does the CAC allege any New York-centered transaction under the alternative framework. The CAC does not allege that any Plaintiff made a purchase decision, or otherwise consummated any relevant consumer transaction, while located in New York. To the contrary, Plaintiffs describe transactions occurring through decentralized, internet-based mechanisms that are untethered to any particular location. Likewise, Plaintiffs allege the purported misstatements were disseminated to "the public at large" and to "potential acquirers of $OCEAN and $FET tokens" without any allegation of New York-directed conduct, New York-based platforms, or New York intermediaries. CAC ¶ 208. The alleged conduct is, at most, globally disseminated and accessible abroad, which is insufficient under § 349. *See Cruz*, 720 F.3d at 123 ("[C]ases focus on where the underlying deceptive 'transaction' takes place, regardless of the plaintiff's location or where the plaintiff is deceived.").

Plaintiffs' GBL claims also fail because "plaintiffs claiming the benefit of section 349 . . . must charge conduct of the defendant that is consumer-oriented." *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 241 (S.D.N.Y. 2019). Section 349 targets ordinary consumer services or goods such as "an automobile, a television set or the myriad consumer goods found in supermarkets"—not purchases of commodities or currencies for speculation. *Morris v. Gilbert*, 649 F. Supp. 1491, 1497 (E.D.N.Y. 1986) ( "[T]ypical violation" of § 349 involves sale of "consumer goods . . .where

[22] The alleged New York residence of Seth Ian (CAC ¶ 122) is insufficient, standing alone, to satisfy the territoriality requirement. *Goshen,* 8 N.Y.2d at 325 (GBL "analysis does not turn on the residency of the parties"); *see also McVetty v. TomTom North America, Inc.,* No. 19 CV 4908 (NSR), 2021 WL 965239, at *3 (S.D.N.Y. 2021) (same).

the amount in controversy is small" and is a "recurring transaction[] of a consumer type"). "Transactions between businesses or sophisticated parties that do not affect average consumers do not constitute consumer-oriented conduct." *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017).

Here Plaintiffs plead that the tokens at issue are akin to commodities (CAC ¶ 40) and that their alleged injuries derive entirely from market-price movements and alleged "depress[ion]" of token prices—not a deceptive practice in the sale of a good or service consumed by an ordinary customer. CAC ¶¶ 174–75, 189, 199, 206–07. The absence of allegations of "consumer-oriented conduct" brings Plaintiffs' claims far outside the scope of Section 349. *Nguyen*, 364 F. Supp. 3d at 241 (dismissing GBL claim concerning currency trading and quoting *Axiom*, 234 F. Supp. 3d at 537 (dismissing GBL claim because "individuals do not trade FX the way they purchase traditional consumer products")).

Independently, just as with its fraud claim (*see supra* Section II.B.), Plaintiffs' GBL claims also fail because the CAC "fail[s] to allege that any of the [misrepresentations] were false or misleading when they were made." *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 345 (S.D.N.Y. 2023) (dismissing GBL claims). It is not enough to allege that a statement was accurate when made but became inaccurate later because of subsequent developments or events. *Ellinghaus v. Educ. Testing Serv.*, No. 15CV3442SJFAKT, 2016 WL 8711439, at *8 (E.D.N.Y. Sept. 30, 2016). And, as explained above, there are no allegations that the DAO Defendants made any consumer-facing statements whatsoever, let alone any that are deceptive or constitute false advertising. *Troncoso v. TGI Friday's, Inc.*, No. 19 CIV. 2735 (KPF), 2020 WL 3051020, at *12 (S.D.N.Y. June 8, 2020) (dismissing GBL§§ 349 and 350 claims against defendant due to lack of allegations that defendant "was engaged in creating the allegedly misleading labeling.").

Likewise, Plaintiffs have not pled causation or cognizable injury. A plaintiff must allege that the deceptive act was the direct cause of an actual injury, typically an out-of-pocket loss. *See*, *e.g.*, *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 620 (2009); *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222 (E.D.N.Y. 2013). Courts reject claims where alleged injuries are speculative, derivative of third-party conduct, or untethered to any specific deceptive transaction. *See Smokes-Spirits.Com*, 12 N.Y.3d at 622–24; *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71 (2d Cir. 2018).

Here, Plaintiffs do not specify which specific Vision Paper statements, press releases, or blog posts any Plaintiff read, when or where that occurred, or how the statements directly caused any Plaintiff to enter a specific transaction that produced an out-of-pocket loss. *Se*e CAC ¶¶ 200–09; *Goldemberg v. Johnson & Johnson Consumer Cos. , Inc.*, 8 F. Supp. 3d 467, 480 ("To properly allege causation, a plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."). Instead, Plaintiffs' claims are based entirely on an impermissible "fraud-on-the-market" general causation theory, *i.e.*, that because Defendants allegedly issued misleading public statements on the internet, Plaintiffs necessarily saw them and relied on them (years later, in some cases) when voting on the Alliance or converting or trading tokens. But New York courts have specifically rejected efforts to import such market-wide presumptions into § 349, which requires a concrete causal link between the alleged deception and each of Plaintiffs' transactions. *See Smokes-Spirits.Com*, 12 N.Y.3d at 622–24. The CAC is devoid of any such details, and the publication and dissemination of statements on the internet is not enough. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 903 (E.D.N.Y. 2018), *adhered to on reconsideration,* No. 18CV0334SJFSIL, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) (dismissing GBL claim for causation because "[n]one of these

allegations provides any indication that Plaintiff ever saw these statements and, to the extent he did, where, when and how Plaintiff came to view [] the website.").

Finally, even if it were permissible to plead causation in the abstract (it is not), Plaintiffs do not plead any realized, out-of-pocket loss traceable to the alleged deception because, as demonstrated above, the CAC contains no allegations that any Plaintiff sold their $FET or otherwise suffered a realized loss. *See supra* Section II.A.; *see also Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999) (dismissing GBL claim because it "sets forth deception as both act and injury" and, thus, "contains no manifestation of either pecuniary or actual harm."). Plaintiffs' claims of a speculative loss of hoped-for token value do not qualify as quantifiable damages required under the GBL. *See* CAC ¶¶ 189, 199, 206–07 (asserting "financial harm" and "depress[ed]" token value, but no concrete loss measure).

### E. The CAC Fails To State A Claim For Breach of Contract (Count Four) and Breach of Covenant of Good Faith and Fair Dealing (Count Five)

Plaintiffs' theory that Defendants "solicited Plaintiffs and Class members to enter into a covenant," and that by "approving the token merger and acquiring, holding, and converting ASI tokens, Plaintiffs . . . accepted this solicitation, thereby creating a binding contract," fails as a matter of law. CAC ¶¶ 211–12.

A contract-based claim that fails "to allege facts sufficient to show that an enforceable contract existed" must be dismissed. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). The Vision Paper is unsigned, not addressed to Plaintiffs, does not identify contractual counterparties, and does not state any of the essential terms to create a binding agreement. CAC Ex. 14; *see Hopwood v. Infinity Contracting Servs. Corp.*, 217 N.Y.S. 3d 586 (2d Dep't 2024). In short, it is exactly what it is called—an aspirational "Vision Paper," not a contract or offer to contract. And as if the absence of usual contract terms were not clear enough, the Vision Paper

explicitly states that it is "for ***informational purposes only***" and "not to be construed as . . . a recommendation to engage in any specific transactions, including but not limited to the purchase, sale, or holding of any crypto-assets." CAC Ex. 14 at 36 (emphasis added); *see Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 320–21 (S.D.N.Y. 2012) (finding no contract existed between the parties because of disclaimer language). A document that disclaims even ***recommending*** a transaction cannot be a contract to consummate such a transaction. In *Barron v. Helbiz Inc.*, this Court addressed a similar attempt to deem a cryptocurrency whitepaper an enforceable contract. No. 20 CIV. 04703 (LLS), 2023 WL 5672640, at *10 (S.D.N.Y. Sept. 1, 2023). The court dismissed the breach of contract claim, stating:

> [T]he Whitepaper does not read as an offer that conveys an intent to be bound. Rather, it is a marketing material, a sales tactic more akin to a promotion or an advertisement, which in New York are generally not considered to be offers … Even plaintiffs characterize whitepapers as generally spelling out the nature of the proposed coin, the economics of its operations, how the funds raised will be used, and its technical details, among others … Without more definite statements, the broad generalizations made in the Whitepaper regarding future performance cannot be read as contractual promises. To find otherwise would be to hamstring defendants to one business plan, with no room for organic growth or pivots in other directions.

*Id.* (cleaned up).

Just like the whitepaper in *Barron*, the Vision Paper here set forth merely the "economics of the operation" (*i.e.*, conversion rates between $FET and $OCEAN) and the "technical details" of the Alliance (*i.e.*, structure and voting). *See generally* CAC Ex. 14; CAC ¶ 110 ("The Vision Paper outlines the Platforms' joint mission."); *id.* ¶ 117 ("The Vision Paper detailed the factors taken into consideration by the Platforms when determining the exchange rates."). As in *Barron*, the breach of contract claim should be dismissed.

Even if the Vision Paper could be a "contract," it would be barred by New York's Statute of Frauds. Under New York General Obligations Law § 5-701(a)(1), any agreement that "[b]y its

terms is not to be performed within one year from the making thereof" is void unless memorialized in a signed writing. The alleged contract here, as Plaintiffs portray it, is an unsigned, open-ended governance and tokenomics framework that by its terms extended well beyond one year.

As for the Individual Defendants and DAO Defendants, the defects in Counts Four and Five apply with even greater force. Plaintiffs' contract theory rests on the Vision Paper, yet the CAC alleges, at most, that only Messrs. Pon and McConaghy were involved in its authorship (CAC ¶ 108), and does not allege that the Individual Defendants or DAO Defendants issued, signed, or adopted that document. Indeed, the Vision Paper does not identify any Individual Defendant or DAO Defendant as an author. *See id.* ¶¶ 107, 110 (describing Vision Paper as outlining the vision of SingularityNET, Fetch.ai, Ocean Foundation); CAC Ex. 14 at 1 (listing authors as "SingularityNET, Fetch.ai, Ocean Protocol"). Plaintiffs identify no statement or agreement by the Individual Defendants or DAO Defendants demonstrating an intent to be bound in their respective capacities. As such, the Individual Defendants and DAO Defendants cannot be liable for breach of contract and the claims against them should be dismissed. *See Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 469 (S.D.N.Y. 2016) ("[N]on-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract").

The omission of an intent to be bound in their respective capacities is also independently fatal as to the Individual Defendants because, under New York law, corporate officers and directors are not personally liable for a corporation's contractual obligations absent clear and explicit evidence that they intended to assume personal liability, such as execution of the agreement in an individual capacity. *See Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4, 10 (2d Cir. 2012) ("For a corporate representative to be personally bound by a contract, the officer must sign both in a representative and in an individual capacity.").

Lastly, Plaintiffs' Count Five for breach of the covenant of good faith and fair dealing fails because such a covenant can exist only where "the parties [are] in a contractual relationship." *Matana v. Merkin*, 957 F. Supp. 2d 473, 493 (S.D.N.Y. 2013) (dismissing good faith and fair dealing claim for lack of contractual relationship between the parties). No such contract existed between any Defendant and Plaintiffs.

### F. The CAC Fails To State A Claim For Promissory Estoppel (Count Six)

"A claim for promissory estoppel requires Plaintiff[s] to show 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). The CAC fails these requirements for the same reasons as the fraud claim. *See supra* Section II.B. The Vision Paper and any other alleged statements do not set forth any "clear and unambiguous promises." *See supra* Section II.E; *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019) (dismissing promissory estoppel claim because plaintiff "has not alleged a sufficiently unambiguous promise."). Like Plaintiffs' fraud claim, the CAC alleges nothing to establish when, how, and in what context any Plaintiffs viewed the alleged promises and relied upon them. *See supra* Section II.B. Moreover, Count Six suffers from the same fatal damages theory as Plaintiffs' fraud and GBL claims. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (damages in promissory estoppel claims are "only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages."); *supra* Section II.D.

## III. <u>PLAINTIFFS' ALTER EGO ALLEGATIONS SHOULD BE DISREGARDED</u>

The CAC fails to allege any facts showing that any Defendant—each of which is a distinct legal entity or individual—is an alter ego. "To state a prima facie claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient." *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, No. 08

CIV. 2991 (RJH), 2009 WL 3076094, at *3 (S.D.N.Y. Sept. 28, 2009). Plaintiffs' alter ego allegations fail this standard.

With respect to Ocean Foundation, Plaintiffs rely on conclusory statements that the Individual Defendants "dominate and control" the entity and are "viewed by the markets as the alter egos of Ocean." CAC ¶ 52. But the CAC alleges no facts explaining how any Defendant supposedly exercised such domination or control, and provides no factual support for these characterizations. Such unsupported labels are insufficient as a matter of law. *See Long Side Ventures LLC v. Hempacco Co.*, No. 22-CV-08152 (ALC), 2023 WL 6386888, at *10 (S.D.N.Y. Sept. 29, 2023) (dismissing alter ego allegations because there was "no clear explanation" as to how defendants "exercise dominion and control over the entities.").

With respect to OceanDAO, Plaintiffs offer only the speculative remark that it is "unclear" whether OceanDAO is an alter ego of Messrs. Pon and McConaghy. CAC ¶ 17. That is not a competent allegation and cannot support alter ego liability. OceanDAO allegedly functioned under a "widely adopted governance model" that "allows community members to engage with the organization by holding the organization tokens." *Id.* ¶¶ 34–35. Under basic alter ego principles these allegations fail to meet the high bar to disregard the corporate form.

With respect to OceanDAO's successor-in-interest OE, a Cayman entity, "Cayman Islands law permits piercing corporate veils, but only in 'exceptional cases' where 'special circumstances exist indicating that the corporate form is a mere façade concealing true facts.'" *In re Stillwater Asset Backed Offshore Fund Ltd.,* No. 16 CIV. 8883 (ER), 2018 WL 1610416, at *9 (S.D.N.Y. Mar. 30, 2018)*, aff'd sub nom., Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC,* 777 F. App'x 16 (2d Cir. 2019). "Traditionally, exceptional circumstances have been found when a company (1) engages in conduct that is illegal, or *ultra vires* … (2) perpetrates a fraud against the minority shareholders and the wrongdoers themselves are in control of the company, or (3) passes

a resolution which requires a qualified majority by simple majority." *Id*. The CAC contains no allegations meeting the "exceptional circumstances" required to pierce OE's corporate veil.[23] Accordingly, the Court should disregard the CAC's alter ego allegations entirely.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the CAC for lack of personal jurisdiction over Defendants or, if it concludes personal jurisdiction exists, dismiss the CAC for failure to state a claim.

[23] To the extent New York law applies, the Court should reach the same result. To pierce the corporate veil under New York law, the plaintiff "must show: (1) the owners exercise completed domination of the corporation in respect to the transaction attacked, and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Wang v. Essence Int'l Fin. Holdings Ltd.*, No. 24-CV-8204 (VEC), 2025 WL 2450958, at *2 (S.D.N.Y. Aug. 26, 2025). There are no allegations coming even close to these criteria.

Dated: April 30, 2026 Respectfully Submitted,

**MCDERMOTT WILL & SCHULTE LLP**

By: /s/ *James A. Pardo*

Joseph B. Evans
James A. Pardo
Lisa Gerson
Daniel H. Kaltman

One Vanderbilt Avenue
New York, NY 10017
Tel: (212) 547-5767
jbevans@mcdermottlaw.com
jpardo@mcdermottlaw.com
lgerson@mcdermottlaw.com
dkaltman@mcdermottlaw.com

*Attorneys for Defendant Ocean Protocol Foundation Ltd.*

**BROWN RUDNICK LLP**

By: /s/ *Stephen D. Palley*

Stephen D. Palley
Daniel L. Sachs

1900 N Street NW
4th Floor
Washington, DC 20036
Tel: (202) 536-1700
spalley@brownrudnick.com
dsachs@brownrudnick.com

*Attorneys for Defendants Bruce Pon, Christina Pon, and Trent McConaghy*

**MORRISON COHEN LLP**

By: /s/ *Jason Gottlieb*

Jason Gottlieb
Michael Mix
Emma McGrath

909 Third Avenue
New York, NY 10022
Tel: (212) 735-8600
jgottlieb@morrisoncohen.com
mmix@morrisoncohen.com
emcgrath@morrisoncohen.com

*Attorneys for Defendants Ocean Expeditions Ltd. and OceanDAO (through its successor-in-interest Ocean Expeditions Ltd.)*

**PAGE LIMIT CERTIFICATION**

Pursuant to the Court's Order Granting Letter Motion for Extension of Time (ECF 54), Defendants certify that the brief herein is 40 pages and complies with the Court's order granting an enlargement of the applicable page limitations for the opening briefs in this case.

By: */s/ James A. Pardo*