**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Fetch Compute, Inc., Seth Ian, Greg Graves, Victor Larivee, individually and on behalf of all others similarly situated, <br><br>       Plaintiffs, <br><br>       v. <br><br> Bruce Pon, Trent McConaghy, Christina Pon, Ocean Protocol Foundation Ltd., Ocean Expeditions Ltd., and OceanDAO, <br><br>       Defendants. | Case No.: 1:25-cv-09210-DEH |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE <u>ALTERNATIVE, FOR FAILURE TO STATE A CLAIM</u>

| **MCDERMOTT WILL & SCHULTE LLP** | **BROWN RUDNICK LLP** | **MORRISON COHEN LLP** |
|---|---|---|
| Joseph B. Evans <br> James A. Pardo <br> Lisa Gerson <br> Daniel H. Kaltman | Stephen D. Palley <br> Daniel L. Sachs | Jason Gottlieb <br> Michael Mix <br> Emma McGrath |
| One Vanderbilt Avenue <br> New York, NY 10017 <br> Tel: (212) 547-5400 <br> jbevans@mcdermottlaw.com <br> jpardo@mcdermottlaw.com <br> lgerson@mcdermottlaw.com <br> dkaltman@mcdermottlaw.com | 1900 N Street NW <br> 4th Floor <br> Washington, DC 20036 <br> Tel: (202) 536-1700 <br> spalley@brownrudnick.com <br> dsachs@brownrudnick.com | 909 Third Avenue <br> New York, NY 10022 <br> Tel: (212) 735-8600 <br> jgottlieb@morrisoncohen.com <br> mmix@morrisoncohen.com <br> emcgrath@morrisoncohen.com |
| *Attorneys for Defendant Ocean Protocol Foundation Ltd.* | *Attorneys for Defendants Bruce Pon, Christina Pon, and Trent McConaghy* | *Attorneys for Defendants Ocean Expeditions Ltd. and OceanDAO (through its successor-in-interest Ocean Expeditions Ltd.)* |

Dated: June 26, 2026

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

I.    THE COURT LACKS PERSONAL JURISDICTION OVER
      DEFENDANTS. ............................................................................................2

      A.    Incidental Contact With New York-Based Professionals Does Not
            Establish Jurisdiction ......................................................................2

      B.    Globally Accessible Publications Are Not Targeted New York
            Solicitations.....................................................................................4

      C.    Jurisdiction Does Not Exist Under CPLR 302(a)(3)(ii) ...............5

      D.    Jurisdiction Cannot Be Established Over the Individual Defendants
            or the DAO Defendants ...................................................................7

      E.    Exercising Jurisdiction Over Defendants Would Violate Due
            Process .............................................................................................8

      F.    Plaintiffs Are Not Entitled to Jurisdictional Discovery ...............9

II.   PLAINTIFFS FAIL TO STATE A CLAIM.................................................9

      A.    Under Rule 9(b), the CAC Engages in Improper Group Pleading ..............9

      B.    The CAC Does Not Allege Any of the Elements for Fraud (Count
            One)................................................................................................10

            1.    The Alleged Misrepresentations Were True When
                  Made .....................................................................................10

            2.    Conclusory Allegations of Scienter Are Insufficient.....................11

            3.    Plaintiffs' Conclusory Reliance Allegations Are
                  Insufficient ...........................................................................12

            4.    Plaintiffs Do Not Adequately Allege Injury or
                  Causation...............................................................................13

      C.    The CAC Fails To State A Claim For Civil Conspiracy (Count
            Two)................................................................................................15

      D.    The CAC Fails To State A Claim For GBL Violations (Count
            Three)..............................................................................................16

E.      The CAC Fails To State Claims For Breach of Contract (Count
        Four) or Breach of Covenant of Good Faith and Fair Dealing
        (Count Five) ...................................................................................................18

F.      The CAC Fails To State A Claim For Promissory Estoppel (Count
        Six) ................................................................................................................19

III.    **PLAINTIFFS' ALTER EGO ALLEGATIONS SHOULD BE
        DISREGARDED.** ............................................................................................19

**CONCLUSION** ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*,
No. 05 CIV. 8988 (GEL),2007 WL 1732427 (S.D.N.Y. June 14, 2007) ...............................12

*Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*,
975 F. Supp. 494 (S.D.N.Y. 1997)....................................................................................6

*Apace Commc'ns, Ltd. v. Burke*,
522 F. Supp. 2d 509 (W.D.N.Y. 2007) ..............................................................................20

*Ardent Harmony Fund, Inc. v. BDO Trinity Ltd.*,
248 A.D.3d 859 (2d Dep't 2026) .....................................................................................2

*AVRA Surgical Robotics, Inc. v. Gombert*,
41 F. Supp. 3d 350 (S.D.N.Y. 2014)..................................................................................4

*Axiom Investment Advisors, LLC v. Deutsche Bank AG*,
234 F. Supp.3d 526 (S.D.N.Y. 2017)................................................................................17

*Baliga v. Link Motion Inc.*,
 No. 18-CV-11642 (VM) (VF), 2025 WL 1908379 (S.D.N.Y. June 9, 2025),
*R&R adopted*,  No. 18 CV 11642(VM), 2025 WL 3022262 (S.D.N.Y. Oct. 29,
2025) ................................................................................................................................14

*Barron v. Helbiz Inc.*,
No. 20 CIV. 04703 (LLS), 2023 WL 5672640, at *10 (S.D.N.Y. Sept. 1,
2023) ..........................................................................................................................18, 19

*Basic v. BProtocol Foundation*,
2024 WL 4113751, at *6 (W.D. Tex. July 31, 2024), *R&R adopted*, 2024 WL
4113024 (W.D. Tex. Sept. 6, 2024), *vacated in part*, 2024 WL 6077793
(W.D. Tex. Dec. 16, 2024)..................................................................................................8

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
667 F. Supp. 3d 83 (S.D.N.Y. 2023)...................................................................................9

*Beach v. Citigroup Alt. Invs. LLC*,
No. 12 CIV. 7717 PKC, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ....................................13

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund
Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016).............................12–14

iii

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)........................................................................................6

*Bissonnette v. Podlaski*,
    138 F. Supp. 3d 616 (S.D.N.Y. 2015)........................................................................................6

*Capitol Records, LLC v. VideoEgg, Inc.*,
    611 F. Supp. 2d 349 (S.D.N.Y. 2009)........................................................................................5

*Caplan v. Dollinger*,
    803 F. Supp. 3d 219 (S.D.N.Y. 2025)......................................................................................20

*Channel One Russia Worldwide, v. Infomir LLC*,
    No. 16CIV1318GBDBCM, 2018 WL 4666069 (S.D.N.Y. Sept. 28, 2018)...............................8

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
    465 F. Supp. 3d 416 (S.D.N.Y. 2020)........................................................................................8

*City of New York v. Smokes-Spirits.com, Inc.*,
    12 N.Y.3d 616 (2009) ...............................................................................................................18

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)................................................................................................16, 19

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir.1996)...........................................................................................................20

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
    797 N.Y.S.2d 439 (1st Dep't 2005), *aff'd*, 7 N.Y.3d 65, 850 N.E.2d 1140
    (2006)..........................................................................................................................................2

*DirecTV Latin Am., LLC v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2010)........................................................................................3

*DiVittorio v. Equidyne Extractive Indus., Inc.*
    822 F.2d 1242 (2d Cir. 1987)...................................................................................................10

*Doe 1 v. Gov't of U.S. Virgin Islands*,
    771 F. Supp. 3d 379 (S.D.N.Y. 2025)........................................................................................8

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336, 346 (2005)..........................................................................................................15

*In re EHang Holdings Ltd. Securities Litigation*,
    646 F. Supp. 3d 443 (S.D.N.Y. 2022)........................................................................................9

*Fantis Foods, Inc. v. Standard Importing Co.*,
    49 N.Y.2d 317 (1980) ............................................................................................................5, 6

*Felske v. Hirschmann*,
No. 10 CIV. 8899 RMB, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ....................................18

*Fesseha v. TD Waterhouse Investor Servs., Inc.*,
305 A.D.2d 268 (2003) ........................................................................................................18

*Fink v. Time Warner Cable*,
810 F. Supp. 2d 633 (S.D.N.Y. 2011)...................................................................................18

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*,
218 F. Supp. 2d 369 (S.D.N.Y. 2002).....................................................................................4

*Fischbarg v. Doucet*,
9 N.Y.3d 375 (2007) ..............................................................................................................4

*In re Frito-Lay N. Am, Inc. All Natural Litig.*,
No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ......................11

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002) ..........................................................................................................16

*Gray v. Seaboard Sec., Inc.*
788 N.Y.S.2d 471 (2005)......................................................................................................17

*Henneberry v. Sumitomo Corp. of Am.*,
415 F. Supp. 2d 423 (S.D.N.Y. 2006)...................................................................................19

*Holsworth* v. *BProtocol Found.*,
No. 20 CIV. 2810 (AKH), 2021 WL 706549 (S.D.N.Y. Feb. 22, 2021)...................................9

*Kernan v. Kurz–Hastings, Inc.*,
175 F.3d 236 (2d Cir. 1999)....................................................................................................6

*Kimco Exch. Place Corp. v. Thomas Benz, Inc.*
34 A.D.3d 433 (2d Dep't 2006)...............................................................................................2

*Kitchen Winners NY Inc. v. Rock Fintek LLC*,
668 F. Supp. 3d 263 (S.D.N.Y. 2023)...................................................................................15

*La. Health Serv. & Indem. Co. v. Celgene Corp.*,
No. 23-CV-7871 (ER), 2024 WL 3342603 (S.D.N.Y. July 9, 2024) ........................................9

*Lively v. Wayfarer Studios LLC*,
810 F. Supp. 3d 421 (S.D.N.Y. 2025)....................................................................................8

*Maranga v. Vira*,
386 F. Supp. 2d 299 (S.D.N.Y. 2005).....................................................................................3

*Matana v. Merkin*,
    957 F. Supp. 2d 473 (S.D.N.Y. 2013)........................................................................14

*Matana v. Merkin*,
    989 F. Supp. 2d 313 (S.D.N.Y. 2013)...........................................................13, 14, 18

*McVetty v. TomTom N. Am. Inc.*,
    No. 19 CV 4908 (NSR), 2021 WL 965239 (S.D.N.Y. March 13, 2021) ..................16

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ...............................................................................................17

*Palace Expl. Co. v. Petroleum Dev. Co.*,
    41 F. Supp. 2d 427 (S.D.N.Y.1998)............................................................................3

*Pathak v. Molopo Energy Ltd.*,
    No. 13 CIV. 2812 JMF, 2013 WL 5477594 (S.D.N.Y. Oct. 2, 2013)........................5

*In re Platinum-Beechwood Litig.*,
    427 F. Supp.3d 395 (S.D.N.Y. Oct. 7, 2019)......................................................10, 15

*Plavin v. Group Health Inc.*,
    35 N.Y.3d 1 (2020) ..................................................................................................17

*Prickett v. New York Life Ins. Co.*,
    896 F. Supp. 2d 236 (S.D.N.Y. 2012).......................................................................12

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015).........................................................................7

*Superb Motors Inc. v. Deo*,
    776 F. Supp. 3d 21 (E.D.N.Y. 2025) ........................................................................20

*Univ. Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*,
    560 F. App'x 52 (2d Cir. 2014) ..................................................................................9

*Villanova v. Harbilas*,
    No. 08-CV-10448, 2010 WL 1640187 (S.D.N.Y. Apr. 13, 2010) ............................6

*White v. Davidson*,
    150 A.D.3d 610 (1st Dep't 2017) .............................................................................11

## Other Authorities

CPLR § 302............................................................................................................ *passim*

Fed. R. Civ. P. 9(b) ........................................................................................9, 10, 13

Fed. R. Civ. P. 12(b)(6)...............................................................................................20

**INTRODUCTION**

Far from rebutting Defendants' arguments that the amended CAC fails to establish personal jurisdiction or allege legally cognizable claims, Plaintiff's Opposition ("Opp.") largely reinforces those arguments for dismissal.

As to personal jurisdiction, Defendants' opening brief demonstrated that, as a matter of well-settled law, a few attenuated interactions with "New York" service providers are insufficient to establish jurisdiction over Defendants. Rather than refute those points, Plaintiffs principally argue that personal jurisdiction exists because "Defendants" engaged in a "solicitation campaign" specifically "directed" to a "known investor community" of New York token holders. Opp. at 14. Yet Plaintiffs also plead (correctly) that such a targeted campaign was not possible; "because of the pseudo-anonymous nature of blockchain holdings, ***token holders' identities and locations*** cannot be obtained through conventional shareholder lists and direct communications." *Id*. (emphasis added). Because Plaintiffs' allegation that token holders' identities and location were unknowable directly contradicts its jurisdictional theory that New York token holders were specifically targeted, its opposition fails. In any event, no court has ever adopted the theory that blockchain-based entities are subject to jurisdiction wherever their token holders are located.

As to the merits of their claims, Plaintiffs' argument that certain Defendants' statements about community governance must have been false because Defendants later converted and sold tokens is textbook fraud-by-hindsight that New York law forecloses. Plaintiffs also offer nothing to cure the CAC's fatal damages deficiency: namely that no Plaintiff is alleged to have ever sold a token at a loss, and no cognizable damages to token holders have been identified.

## ARGUMENT[1]

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

#### A.    Incidental Contact With New York-Based Professionals Does Not Establish Jurisdiction

Plaintiffs acknowledge that CPLR 302(a)(1) requires both purposeful availment and "an articulable nexus, or substantial relationship, between the claim asserted and the actions that occurred in New York." Opp. at 6–7. Plaintiffs contend that Defendants transacted business in New York principally because they allegedly worked with a New York-based law firm and consulting firm in connection with the Alliance and merger. *Id*. at 8–13. That theory fails.

Courts consistently hold that engaging professionals located in New York, without more, is not purposeful availment or the transaction of business in New York. *See Ardent Harmony Fund, Inc. v. BDO Trinity Ltd*., 248 A.D.3d 859, 861–62 (2d Dep't 2026) (no jurisdiction where foreign defendant performed all work abroad, never traveled to New York, and only New York contacts were calls and emails with New York-based advisors); *Kimco Exch. Place Corp. v. Thomas Benz, Inc.* 34 A.D.3d 433, 434 (2d Dep't 2006) (no purposeful availment where defendants engaged New York broker because they were "not seeking to take advantage of a field particular to New York" and only communications with New York were calls and contract transmissions).

The principle applies here. Plaintiffs allege that certain Defendants communicated from abroad with New York-based professionals and non-parties about a transaction involving foreign entities and a proposed Singapore foundation. CAC ¶¶ 62, 67, 75, 81, 82.[2] Plaintiffs do not allege

---

[1] Unless otherwise noted, all emphasis is added and internal citations and quotations are omitted.

[2] Plaintiffs' reliance on *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 797 N.Y.S.2d 439 (1st Dep't 2005), *aff'd*, 7 N.Y.3d 65, 850 N.E.2d 1140 (2006) is misplaced. Opp. at 12. Courts repeatedly have distinguished *Deutsche Bank* where defendants "were not seeking to take advantage of a field particular to New York. . . ." *See, e.g., Kimco*, 43 A.D.3d at 434.

that any Defendant traveled to New York in connection with the challenged conduct, maintained a presence in New York, or sought to exploit specifically the New York market.

The CAC and incorporated documents contradict Plaintiffs' conclusory claim that New York was the "epicenter of the negotiations and solicitations relating to the Alliance and the merger." CAC ¶ 66. "Communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York…." *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005). Here, Plaintiffs' allegations establish the opposite. The Vision Paper states that the "Superintelligence Alliance Foundation will be incorporated in the jurisdiction of **Singapore**. All three Foundations have operated in Singapore for many years."[3] CAC Ex. 14 at 19 (emphasis added). The CAC admits Defendants communicated from abroad and does not allege the token conversion occurred in New York. CAC ¶¶ 62, 67, 75, 82. These allegations describe a foreign transaction involving foreign entities, not a New York-centered deal. *See DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420–421 (S.D.N.Y. 2010) (no jurisdiction because "the center of gravity…was indisputably outside New York," "defendants were four foreign nationals," and "no part of the contract was to take place in New York."); *Palace Expl. Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 434 (S.D.N.Y.1998) (no jurisdiction where defendant's only New York contacts were "telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that ha[d] a center of gravity well outside the state.").

Even if Plaintiffs could establish purposeful availment, they fail to satisfy the "arising from" prong. Plaintiffs' claims arise from alleged misrepresentations about OceanDAO, Community Tokens, and the merger. The consulting firm is alleged to have helped draft *portions*

---

[3] This also belies Plaintiffs' argument that Defendants are not subject to jurisdiction anywhere. *See* Opp. at 14.

of the Vision Paper and assisted with the ASI Press release. CAC ¶¶ 83, 108. But Plaintiffs do not allege that the consulting firm drafted any allegedly false statements or that any Plaintiff relied on the Press Release. Merely characterizing those firms as "inseparable" from the alleged scheme does not make it so. *See* Opp. at 11; *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 359 (S.D.N.Y. 2014) (no jurisdiction because "the complaint does not establish how, if at all, these activities relate—much less substantially relate—to the causes of actions pled."); *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 393 n.121 (S.D.N.Y. 2002) ("that [defendant] engaged in 'numerous New York-connected transaction[s]' through various agents ... does not contribute anything to [plaintiffs'] *prima facie* showing of jurisdiction").

Plaintiffs' allegations about the law firm are even more attenuated. Plaintiffs are not suing over the law firm's legal, tax, or regulatory advice, or a breach of agreements it drafted. *See* CAC ¶ 77. Nor do Plaintiffs allege that any advice provided by the law firm was communicated to them, induced them to act, or formed the basis of any misrepresentation. The law firm's work, therefore, cannot supply the nexus required by CPLR § 302(a)(1). *Fischbarg v. Doucet*, 9 N.Y.3d 375 (2007), confirms this distinction. There, jurisdiction existed because the dispute arose directly from the defendants' retention of a New York attorney and the attorney-client relationship itself. *Id*. at 384. Here, by contrast, Plaintiffs do not allege that their claims arise from any engagement with the professional firms. *See* CAC ¶ 77. Their professional services are merely background to the Alliance's formation and are distinct from the conduct that allegedly injured Plaintiffs.

**B.    Globally Accessible Publications Are Not Targeted New York Solicitations**

Plaintiffs argue that Defendants' internet communications were a "functional equivalent of direct solicitation" in New York because the pseudo-anonymous nature of blockchain prevents conventional outreach. Opp. at 14–15. But that argument is internally inconsistent and legally unsupportable. Plaintiffs cannot plausibly assert "Defendants participated in a coordinated

4

solicitation campaign … directed at a known [New York] investor community" (*id.* at 15), while also admitting that the "pseudo-anonymous" investors' "locations cannot be obtained[.]" *Id.*[4]

Moreover, as a matter of law, the use of globally accessible internet platforms does not convert general communications into New York-directed conduct because web-based activity is "neither volitional nor distinguishable from [defendants'] interaction with users located in any other jurisdiction." *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 359 (S.D.N.Y. 2009). The allegation that a single plaintiff resides in New York and saw certain communications is insufficient for jurisdiction under CPLR 302(a)(1). *Pathak v. Molopo Energy Ltd.*, No. 13 CIV. 2812 JMF, 2013 WL 5477594, at *5 (S.D.N.Y. Oct. 2, 2013) (residence of plaintiff insufficient).

### C.   Jurisdiction Does Not Exist Under CPLR 302(a)(3)(ii)

Plaintiffs also argue that Defendants are subject to jurisdiction under CPLR 302(a)(3)(ii) because an injury occurred in New York and the consequences of those acts could reasonably have been expected in New York.[5] Neither argument has merit.

*First*, Plaintiffs do not allege a New York injury merely because a plaintiff resides in New York. "The residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980) (collecting cases). When the alleged fraud is "international in scope, and harmed investors across the planet…, including investors in New York," the "situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the

---

[4] It is undisputed that Ocean Foundation **excluded** U.S. participants from the $OCEAN sale in 2019, and that secondary market exchanges **still** prohibit $OCEAN trading in New York. MTD at 9 (citing Pardo Decl., Exs. A–D); Opp. at 8 n.1. Thus, any statements to the $OCEAN community cannot plausibly be characterized as a "New York-directed" solicitation. Plaintiffs likewise do not allege Defendants knew the identities or locations of $FET or $AGIX holders.
[5] Plaintiffs do not dispute that only CPLR 302(a)(1) can form the jurisdictional basis for their non-fraud claims. *See* MTD, at 15 n.12 (citing *AVRA Surgical Robotics*, 41 F. Supp. 3d at 360).

plaintiff." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 406 (S.D.N.Y. 2021) (finding no jurisdiction); *Villanova v. Harbilas*, No. 08-CV-10448, 2010 WL 1640187, at *5 (S.D.N.Y. Apr. 13, 2010) ("[A]ny fraud…would be based on the defendant's improper use of the funds in the Pennsylvania account. Therefore, the first effect of [fraud] would have been in Pennsylvania."). Here, the alleged injury arises from the transfer and conversion of Community Tokens by foreign Defendants (CAC ¶¶ 15–21), and there is no allegation those acts occurred in New York.

*Second*, New York courts look for "tangible manifestations" of a defendant's intent to target New York, or for "concrete facts known to the nondomiciliary that should have alerted it" to the prospect of litigation there. *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.,* 975 F. Supp. 494, 497 (S.D.N.Y. 1997). Plaintiffs identify neither. Their claim that "Defendants" "directed communications they expected New York token holders to receive and act upon" (Opp. at 16), is belied by the undisputed fact that Ocean Foundation affirmatively ***excluded*** the New York market. *See supra* n.4. And Defendants' alleged engagement with professionals who happen to be in New York does not establish foreseeability because those firms are not parties and are not alleged to be the targets of any tort. *See Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 627 (S.D.N.Y. 2015) (declining jurisdiction because "[d]efendants never actively represented [p]laintiff in New York proceedings" and "no actions or meetings [ ] took place in New York").

In any event, because the professional firms operate globally and used personnel worldwide in connection with a global transaction, Plaintiffs are left with nothing more than "sheer speculation" that Defendants intended, or even knew of, harm within New York. *Fantis Foods, Inc.,* 425 N.Y.S.2d at 787 n.4. That is insufficient to establish reasonable foreseeability under CPLR 302(a)(3). *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999)

("[F]oreseeability must be coupled with evidence of a purposeful New York affiliation," such as "a discernible effort to directly or indirectly serve the New York market").[6]

> **D.    Jurisdiction Cannot Be Established Over the Individual Defendants or the DAO Defendants**

The Opposition identifies no independent basis for exercising jurisdiction over Messrs. Pon and McConaghy. Instead, Plaintiffs simply repackage the same theories: interactions with persons Plaintiffs allege were in New York, and statements concerning the Alliance and merger. Those allegations fail to establish jurisdiction for the reasons explained above. In addition, the allegations against Christina Pon are even more deficient. Plaintiffs do not allege any comparable New York-directed conduct by Ms. Pon. Their only non-conclusory allegation is that, "upon information and belief", she was part of the "Ocean Protocol Team" Opp. at 18. Even if credited, that allegation identifies no New York-directed conduct by Ms. Pon or any conduct giving rise to Plaintiffs' claims. The remaining allegations—that Ms. Pon co-founded Ocean, was "viewed by the market as an alter ego," and "dominated and controlled" Ocean—are conclusory and thus insufficient. *Id*.[7]

Plaintiffs' entire argument for jurisdiction over the DAO Defendants is relegated to one paragraph without a single case citation. Opp. at 20. Plaintiffs' theory is particularly insufficient because it is undisputed that the DAO Defendants were not members of the Alliance, did not hire any professionals relating to the Alliance, and did not draft or disseminate any public statements relating to the Alliance. MTD at 14–15. Plaintiffs next contend that the DAO Defendants are the "alter egos of the Individual Defendants" which "directly tie the DAO Defendants to…the New

---

[6] Plaintiffs' theory that Defendants could foresee consequences in New York based on the consulting agreement's terms defies logic because Defendants are not party to that consulting agreement. MTD at 12.

[7] Courts impose a "very demanding" standard to disregard the corporate form, and "conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015). Plaintiffs do not satisfy that standard.

York-directed solicitation." Opp. at 20. But, "to plead alter ego liability, it is not enough to allege that two entities are working in concert." *Channel One Russia Worldwide, v. Infomir LLC*, No. 16CIV1318GBDBCM, 2018 WL 4666069, at *3 (S.D.N.Y. Sept. 28, 2018). Plaintiffs fail to allege any non-conclusory ***facts*** establishing that DAO Defendants are alter egos of the Individual Defendants. *See City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 438 (S.D.N.Y. 2020) (no alter ego jurisdiction where there is "little more than bare allegations of control"); *see also infra* Section III.

Finally, Plaintiffs' new conspiracy jurisdiction argument is unavailing. "[N]o case has ever even applied conspiracy jurisdiction under CPLR 302(a)(1)." *Lively v. Wayfarer Studios LLC*, 810 F. Supp. 3d 421, 450 (S.D.N.Y. 2025). And Plaintiffs cite no authority recognizing conspiracy jurisdiction under (a)(3), likely because (a)(3) concerns a "tortious act ***without*** the state" (CPLR 302(a)(3)) and, thus, is inconsistent with conspiracy jurisdiction which "must be tethered to a tort committed ***within*** the state" *Doe 1 v. Gov't of U.S. Virgin Islands*, 771 F. Supp. 3d 379, 391 (S.D.N.Y. 2025) (emphasis added). But the Court need not resolve this issue because Plaintiffs fail to allege a conspiracy. *See infra* Section II.C.[8]

### E.    Exercising Jurisdiction Over Defendants Would Violate Due Process

Because Plaintiffs fail to establish jurisdiction under CPLR 302(a)(1), their due process argument fails for the reasons as above. Plaintiffs cite no authority finding jurisdiction on comparable facts and instead attempt to distinguish Defendants' cases as involving "more limited" contacts. Opp. at 21. That argument mischaracterizes the relevant authorities. *Basic v. BProtocol Foundation* involved U.S.-directed promotional activity, including in-person events, yet found no

---

[8] The DAO Defendants' purported "overt acts" are the same alleged New York contacts discussed above and cannot be converted to a basis for jurisdiction just by labeling them part of a conspiracy. *See Lively*, 810 F. Supp. 3d at 444 (overt acts must be "completed in furtherance of the conspiracy" and "to the benefit of the out-of-state co-conspirator").

personal jurisdiction. 2024 WL 4113751, at *6 (W.D. Tex. July 31, 2024), *R&R adopted*, 2024 WL 4113024 (W.D. Tex. Sept. 6, 2024), *vacated in part*, 2024 WL 6077793 (W.D. Tex. Dec. 16, 2024). Plaintiffs' attempt to distinguish *In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 458 (S.D.N.Y. 2022), likewise fails because, as set forth above, the CAC does not allege false statements made in New York or prepared by New York-based professionals. Plaintiffs thus fail to identify any forum-directed, suit-related contacts sufficient to satisfy due process.

### F.       Plaintiffs Are Not Entitled to Jurisdictional Discovery

Jurisdictional discovery is appropriate only where the allegations suffice "to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 151 (S.D.N.Y. 2023). Where a plaintiff has not made a *prima facie* case for personal jurisdiction, "jurisdictional discovery is generally not granted." *La. Health Serv. & Indem. Co. v. Celgene Corp.*, No. 23-CV-7871 (ER), 2024 WL 3342603, at *2 (S.D.N.Y. July 9, 2024). Nor is jurisdictional discovery a tool to "allow [Plaintiffs] to fish for additional grounds of jurisdiction that they ha[ve] not alleged." *Univ. Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 56 (2d Cir. 2014); *see also Holsworth* v. *BProtocol Found.*, No. 20 CIV. 2810 (AKH), 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) ("The discovery request contradicts the purpose of personal jurisdiction, not to subject foreigners to the burden of court proceedings in a jurisdiction where there is neither general or specific jurisdiction."). Because Plaintiffs fail to present a colorable *prima facie* case for personal jurisdiction, discovery is not warranted.

## II.       PLAINTIFFS FAIL TO STATE A CLAIM.

### A.       Under Rule 9(b), the CAC Engages in Improper Group Pleading

Plaintiffs argue that group pleading is permissible if it is merely "plausible" that "each defendant was involved." Opp. at 24–25. Their argument relies on inapplicable out-of-circuit

9

decisions and ignores Second Circuit precedent that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails to provide fair notice. MTD at 19 (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)). This precedent applies with even greater force here because Plaintiffs' fraud and conspiracy claims are subject to Rule 9(b)'s requirements. *See DiVittorio v. Equidyne Extractive Indus., Inc.* 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). By repeatedly lumping Defendants together without specifying the basis for its scienter or knowledge allegations, the CAC fails to meet Rule 9(b)'s heightened standard. *In re Platinum-Beechwood Litig.*, 427 F. Supp.3d 395, 453–54 (S.D.N.Y. Oct. 7, 2019) (dismissing aiding and abetting claims for failure to satisfy Rule 9(b)).[9]

### B. The CAC Does Not Allege Any of the Elements for Fraud (Count One)

#### 1. The Alleged Misrepresentations Were True When Made[10]

Plaintiffs contend that the challenged statements were "misrepresentations of existing fact" that were "objectively false" when made (Opp. at 27), but ignore cited evidence showing otherwise. MTD at 21, n.19 (citing CAC Exs. 1, 2, 6, 11, 18).[11] For example, Plaintiffs claim that Defendants did not operate OceanDAO "as a true DAO" as promised in a May 22, 2023, blog post and misrepresented their control over the Community Tokens. Opp. at 26–27 (citing CAC ¶ 56 and Ex. 6). But Plaintiffs do not identify any Defendants' statement about how OceanDAO would operate that was false. Exhibit 6 to the CAC confirms Defendants disclosed that "Ocean core team

---

[9] The Opposition's focus on Rule 8 decisions is, therefore, unpersuasive. *See* Opp. at 24 (citing *Ortiz v. Consol. Edison Co. of New York, Inc.*, 801 F. Supp. 3d 260, 294 (S.D.N.Y. 2025)).

[10] This argument also applies to Plaintiffs' argument about the GBL counts. *See* Opp. at 35.

[11] Plaintiffs fail to rebut that the CAC does not allege the DAO Defendants made any alleged misstatements. MTD at 24. To the extent that Plaintiffs are relying on their alter ego allegations to plead a misstatement, Opp. at 5–6, those allegations are insufficient, as explained throughout.

members" would hold a "*minority*" of the signatures necessary to operate the controlling "multisig wallet," and Plaintiffs do not allege any false promise that the OCEAN token contract was not modifiable under those terms. *See* CAC Ex. 6 at 2 (emphasis added). Plaintiffs allege that Defendants transferred the Community Tokens years later, but the CAC does not allege anything that was inaccurate about Exhibit 6 or Defendants' statements when they were made. Plaintiffs also suggest Defendants misrepresented that the Community Tokens would be disbursed via only smart contracts. Opp. at 27.[12] The CAC's exhibits confirm that statement was true when made. CAC Exhibit 6 at 10 published the on-chain transactions making the Community Tokens available for distribution under Ethereum-based smart contracts.[13]

Plaintiffs' claim that "Defendants" promised $OCEAN "could not be liquidated" (Opp. at 27) also does not cite a misstatement by Defendants. The CAC alleges (at ¶ 60) only that "OceanDAO funds not allocated in a given funding cycle" would be burned, not that all unused Community Tokens for all time would be allocated or burned. Similarly, Plaintiffs suggest the Vision Paper promised that Community Tokens "could not be liquidated" (CAC ¶ 160), but it states only that the tokens will be "utilized for upcoming incentives programs." CAC Ex. 14 at 20.

### 2.    Conclusory Allegations of Scienter Are Insufficient

Plaintiffs concede that a "strong inference of scienter" is required, and that that a "self-interested desire to profit does not give rise to an inference of fraudulent intent" at least in securities fraud cases. Opp. at 28-29. Yet, without any citation, they assert that this "sensible rule" has no application here. *Id.* Not so. As Defendants demonstrated in their opening brief, the rule is applied across a broad range of fraud claims. *See, e.g.*, *In re Frito-Lay N. Am, Inc. All Natural Litig.*, No.

---

[12] "Smart contract" appears six times in the CAC without quoting any Defendant's statement.
[13] Plaintiffs cite to *White v. Davidson*, 150 A.D.3d 610, 611 (1st Dep't 2017) for the proposition that intent cannot be resolved on a motion to dismiss.  This case does not stand for that proposition.

12-MD-2413 RRM RLM, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) (applying rule to consumer protection claims). Plaintiffs' scienter theory remains, at its core, an insufficient generalized profit-motive theory. *See* Opp. at 28 (Defendants' "plan all along" was to "gain access to liquidity" and "cash out the $OCEAN"). The conclusory allegation that Defendants attempted to "revive the $OCEAN token" does not suffice. *Id.*; *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 246 (S.D.N.Y. 2012) ("conclusory pleading is insufficient").

The CAC's alleged chronology also forecloses any plausible inference of preconceived fraud. Most of the alleged misrepresentations were made in 2020, 2021, and 2023—well before the Alliance was first contemplated in "late 2023 or early 2024" and years before the merger was proposed, making illogical any claim that Defendants were part of a preconceived scheme to defraud a community that did not yet exist. *See* CAC Exs. 5–6, 8–9; CAC ¶ 61.[14]

### 3. Plaintiffs' Conclusory Reliance Allegations Are Insufficient

Plaintiffs argue that reliance was sufficiently pled because (1) CAC ¶ 122 "alleges Plaintiffs 'read and relied on the Vision Paper, blog posts, and X posts when considering the proposed merger'," and (2) the CAC "identifies the specific blog posts and X posts that contain misrepresentations." Opp. at 30. But reliance on a particular misstatement is required, and Plaintiffs fail to connect any of the pieces they allege. *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d 291, 311 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016) (no reliance when plaintiff did "not link its review of any particular statements in [an over 100 page] document … to any actual purchases."); *Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, No. 05 CIV. 8988 (GEL),2007

---

[14] Plaintiffs do not counter any of the scienter arguments made as to the DAO Defendants (MTD at 26), and their theory with respect to the Individual Defendants fails because the CAC lacks sufficient alter ego allegations, as discussed further in Section III.

WL 1732427, at *9 (S.D.N.Y. June 14, 2007) (dismissing fraud claims in part because "the reliance allegations cannot be tracked to any particular statement.").[15] CAC ¶ 122 contains the totality of Plaintiffs' reliance allegations. There, Plaintiffs claim that Seth Ian "read the Vision Paper" and unnamed "online publications and communications," and relied on their accuracy, before voting for the merger. But Plaintiffs do not allege Mr. Ian's reliance on any particular false statement, which matters because the Vision Paper is 37 pages long and the alleged misrepresentation is in a single sentence on page 20. CAC Ex. 14 at 20. It is not enough to allege generally that a plaintiff read a document that contained a false statement **somewhere** without identifying the particular misstatement that was, in fact, read and relied upon. *In re Bear Stearns*, 995 F. Supp. 2d at 311.

### 4.    Plaintiffs Do Not Adequately Allege Injury or Causation

Defendants' opening brief demonstrated that New York law does not permit recovery for expected profits *or market value fluctuations*. MTD at 28. Plaintiffs now concede they are not seeking to recover expected profits, but continue to demand recovery for "the loss of their investment" (Opp. at 31), relying on *Matana v. Merkin*, 989 F. Supp. 2d 313, 320–24 (S.D.N.Y. 2013), for the proposition that "holders" may recoup their "out-of-pocket" losses. Plaintiffs' argument fails for two reasons.

*First*, a "holder" claim *may* work when statements induce a plaintiff to *retain* its investment rather than divest. *Id.* at 490. Yet there is no such allegation here. The closest the CAC gets to a "holder" claim is alleging those who "held" (*i.e.*, possessed) $FET or $AGIX tokens were induced to vote in favor of the merger, but that does not suffice. *See Beach v. Citigroup Alt. Invs. LLC*, No. 12 CIV. 7717 PKC, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) (holder claim requires "[i] the loss of substantially the entire investment, [ii] whether the plaintiff would have sought to rescind the

---

[15] Plaintiffs suggest that reliance is a class-certification issue. Opp. at 31. That misses the point. The CAC does not plead reliance with particularity as to the named Plaintiffs under Rule 9(b).

investment, had there been an accurate disclosure of the relevant information, [iii] the time frame within which the rescission would have occurred, [iv] the portion of the investment that would have been sold, and [v] the effect truthful disclosure would have had on the value of the investment").

*Second*, the loss alleged in *Mantana* was arguably an actual out-of-pocket loss because plaintiffs' "investments…were wiped out[.]" *Matana*, 989 F. Supp. 2d at 315 (plaintiff "lost its $1.5 million investment).[16] Here, the CAC does not allege an out-of-pocket loss nor that any Plaintiff's entire value was "wiped out." Instead, the CAC alleges only market value fluctuation. *See* CAC ¶ 159. Post-*Mantana*, New York District Courts continue to dismiss fraud claims that violate "New York's longstanding out-of-pocket rule, which precludes recovery of undeterminable and speculative losses." *In re Bear Stearns*, 995 F. Supp. 2d at 314–15; *see also Baliga v. Link Motion Inc.*, No. 18-CV-11642 (VM) (VF), 2025 WL 1908379 (S.D.N.Y. June 9, 2025), *R&R adopted*, No. 18 CV 11642(VM), 2025 WL 3022262 (S.D.N.Y. Oct. 29, 2025) ("a plaintiff asserting a holder claim for stock in a company must allege actual pecuniary loss rather than speculative damages."[17]

As to causation, Plaintiffs concede their alleged injury must be "the natural and probable consequence of the defrauder's [alleged] misrepresentation." Opp. at 32. But rather than distinguish Defendants' cited case law, Plaintiffs simply restate conclusory allegations that

---

[16] The New York Court of Appeals has not resolved whether New York law recognizes such a theory of injury. An earlier decision in *Matana* recognized that "[t]he decision in *Starr* may be read ... as precluding holder claims regardless of whether they seek to recover lost profits or simply losses." *Matana v. Merkin*, 957 F. Supp. 2d 473, 490–92 (S.D.N.Y. 2013). *Mantana* dismissed plaintiff's claim because, "even assuming that New York law would permit a satisfactorily pled holder claim," plaintiff's claim failed for unrelated reasons. *Id*.

[17] Plaintiffs' alternative injury theory—that the Alliance lost Community Tokens as an asset capable of incentivizing participation (Opp. at 32)—also fails. That alleged injury was suffered, if at all, by the Alliance or its other members Fetch and Singularity, not by token holders.

14

Defendants' alleged scheme caused a decrease in $FET's value. Opp. at 32. *Dura Pharms., Inc. v. Broudo* deems this insufficient. 544 U.S. 336, 346 (2005) (lower prices "may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events"). Plaintiffs do not plead facts separating those *Dura* factors from the alleged effect of Defendants' conduct. Even if a Plaintiff voted for the merger or held tokens after reading certain public materials, the CAC fails to plead that the alleged misrepresentation—as opposed to later business developments or market forces— caused a legally cognizable loss.[18]

### C. The CAC Fails To State A Claim For Civil Conspiracy (Count Two)

Plaintiffs concede that civil conspiracy is not an independent tort under New York law. Opp. at 32. Therefore, Count Two should fall with the fraud claim. *See supra* Section II.A.

Plaintiffs also concede that civil conspiracy requires pleading an agreement between two or more parties and an overt act by each Defendant in furtherance of the agreement. *Id.* at 33. Yet, Plaintiffs still fail to identify any agreement among Defendants or the required "times, facts, and circumstances regarding how the conspiracy began." *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 475 (S.D.N.Y. 2019). Instead, Plaintiffs simply assert that "Defendants" jointly took various actions and, *ipso facto*, that those actions constituted a conspiracy. Opp. at 33. But alleging that Defendants collectively took the exact same action, without more, fails to state a conspiracy claim. *See Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 300 (S.D.N.Y. 2023) (complaint "does not contain any non-conclusory allegations that [the parties] had the requisite 'agreement' or acted 'in the furtherance of a plan or purpose' to commit any wrong.").

---

[18] Indeed, Plaintiffs attribute $FET's price decrease not to disclosure of any alleged fraud, but to "simple supply and demand principles" after Defendants allegedly sold $FET.  CAC ¶ 160.

### D.    The CAC Fails To State A Claim For GBL Violations (Count Three)

Plaintiffs' GBL claims fail because the CAC alleges no New York-based transaction, consumer-oriented conduct, or that Defendants' conduct directly caused any injury. *First*, Plaintiffs do not dispute that GBL claims require "the transaction in which the consumer is deceived must occur in New York." MTD at 31 (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324-25 (2002)). They cite *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122–23 (2d Cir. 2013), which acknowledges two tests under *Goshen*: "a 'transaction-based' test [and] a test premised on where the victim is deceived, regardless of where the transaction occurs." *Id*. Plaintiffs' GBL claims fail either test because the CAC alleges neither a transaction occurring in New York nor Plaintiffs' deception in New York. At most, the CAC alleges that two Plaintiffs reside in New York (CAC ¶¶ 12–13, 122), but residency alone does not suffice. MTD at 32 n.22. The CAC does not allege that any Plaintiff was in New York when he transacted or was deceived, which is fatal to the GBL claims. *McVetty v. TomTom N. Am. Inc.*, No. 19 CV 4908 (NSR), 2021 WL 965239, at *3 (S.D.N.Y. March 13, 2021) (dismissing GBL claims in part because complaint "merely alleges that McVetty is a citizen of New York and fails to [allege] *where* he was exposed to allegedly deceptive materials or purchased TomTom Products." (emphasis added)).

*Second*, the Opposition fails to show that the CAC alleges consumer-oriented transactions. *See* MTD at 32–33. While Plaintiffs baldly assert "public-facing conduct" and "a public campaign" as evidence of consumer-oriented transactions (Opp. at 34–35), they fail entirely to address the case law cited in Defendants' opening brief that cryptocurrencies and tokens are not consumer products purchased by ordinary customers. *See* MTD at 33 (transactions between "sophisticated parties that do not affect average consumers do not constitute consumer-oriented conduct."); *see also id.* (citing CAC ¶ 40 allegations that tokens at issue are akin to commodities).

16

The CAC alleges that Plaintiffs purchased tokens to join (1) a DAO focused on "developing open-source artificial intelligence" or (2) an alliance seeking to develop "decentralized AI in an ethical and acceptable manner." CAC ¶ 1–2. These allegations underscore the technical nature of Plaintiffs' putative transactions, each of which required specialized knowledge far removed from ordinary consumer transactions. *See, e.g.*, *Gray v. Seaboard Sec., Inc.* 788 N.Y.S.2d 471, 472 (2005) (affirming dismissal because subject purchase differs from purchases of "traditional consumer products, such as vehicles, appliances or groceries").

Plaintiffs' reliance on *Plavin* and *Oswego* is misplaced. Opp. at 34–35. *Plavin* involved the sale of standard insurance plans to "hundreds of thousands of employees and retirees." *Plavin v. Group Health Inc.*, 35 N.Y.3d 1, 12 (2020). *Oswego* addressed savings accounts for "any customer entering the bank." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). The transactions at issue here are more like the foreign exchange trades found to be outside the GBL's scope in *Axiom Investment Advisors, LLC v. Deutsche Bank AG,* 234 F. Supp.3d 526, 537 (S.D.N.Y. 2017) (dismissing GBL claims because "[i]ndividuals do not trade FX the way they purchase traditional consumer products.").

*Third*, Plaintiffs do not dispute that indirect or derivative injuries are not cognizable under the GBL (MTD at 34), and fail to demonstrate a viably pled GBL injury. Plaintiffs' alleged injury arises from the exchange of "Community Tokens" to $FET and subsequent sale, which allegedly decreased $FET's market price. CAC ¶¶ 141–47. The CAC does not allege that *Plaintiffs* were entitled to any "Community Tokens." Rather, it alleges "Community Tokens" were promised "to **contributors** who satisfied pre-determined requirements" regarding their contributions to the Ocean community. *Id.* ¶ 57 (emphasis added). This alleged injury from the conversion and sale of "Community Tokens" is an "indirect or derivative" injury because it "arises solely as a result of

17

injuries sustained by another party" and, therefore, "will not suffice" to state a GBL claim. *City of New York v. Smokes-Spirits.com, Inc*., 12 N.Y.3d 616, 622–23 (2009).[19]

> **E.** **The CAC Fails To State Claims For Breach of Contract (Count Four) or Breach of Covenant of Good Faith and Fair Dealing (Count Five)**

Plaintiffs allege the "Vision Paper and related public statements" are contracts. Opp. at 36. But not all public statements are contracts, and Plaintiffs fail to dispute—and therefore concede—that the contract claim is barred by the statute of frauds. *Compare* MTD at 37, *with* Opp. at 36; *see Felske v. Hirschmann*, No. 10 CIV. 8899 RMB, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").[20]

Plaintiffs also identify no facts showing objective intent to be bound. The CAC does not allege the Vision Paper (i) was addressed to Plaintiffs or identified token holders as counterparties, (ii) created reciprocal obligations, (iii) specified remedies, or (iv) that any vote, acquisition, holding, or conversion of tokens would create contractual rights. While Plaintiffs contend the Vision Paper made "concrete" representations about Community Tokens, Alliance governance, and the consequences of token-holder approval (Opp. at 37), those statements merely described how the Alliance was *expected* to function. They do not supply the required definite terms for contract formation. *See Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011) ("[P]laintiff must allege the essential terms [of the contract] in nonconclusory language.").

Plaintiffs' attempt to distinguish *Barron v. Helbiz Inc.* is unavailing. *See* Opp. at 37. *Barron* involved a cryptocurrency whitepaper similar to the Vision Paper here. Without comparing or

---

[19] Plaintiffs cite no law to the contrary. Opp. at 31–32. They rely on *Matana v. Merkin*, 989 F. Supp. 2d 313, 320-24 (S.D.N.Y. 2013), which analyzed a fraud claim, not a GBL claim. Plaintiffs also do not cite any case suggesting a stock's diminution in value is a viable injury under the GBL, nor could it because the statute is "inapplicable to securities transactions." *Fesseha v. TD Waterhouse Investor Servs., Inc*., 305 A.D.2d 268, 268 (2003) (collecting cases).

[20] Having also failed to oppose Defendants' breach of contract and covenant arguments as to the Individual and DAO Defendants (*see* MTD at 37), any opposition is waived. *See id.*

contrasting the language of the *Barron* whitepaper with that of the Vision Paper, Plaintiffs simply assert that the latter contains "more definite statements." *Id.* But, like here, the *Barron* whitepaper described proposed operations and "how the funds raised will be used," and the court dismissed the breach of contract claim because such statements are not "contractual promises." *See Barron*, No. 20 CIV. 04703 (LLS), 2023 WL 5672640, at *10 (S.D.N.Y. Sept. 1, 2023). Plaintiffs' attempts to plead breach based on a strategic business pivot fall squarely within *Barron*. *See* MTD at 36.

Plaintiffs' good faith and fair dealing claim fares no better. When "a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz*, 720 F.3d at 125. Plaintiffs' implied covenant claim also fails because no contract is alleged for the reasons set forth above.

**F.    The CAC Fails To State A Claim For Promissory Estoppel (Count Six)**

The Vision Paper and other statements describe aspirational plans and a governance frameworks, not unambiguous promises as required for promissory estoppel. *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 444 (S.D.N.Y. 2006) ("[A]bsent a distinct communication to be bound, a statement by one party to another that evinces the speaker's desire to consummate or further a commercial transaction does not constitute a clear and unambiguous promise."). As for reliance, Plaintiffs cite only CAC ¶ 122, which, as explained above, is too conclusory to survive a motion to dismiss. *See supra* Section II.B.3. Lastly, the Opposition admits Plaintiffs' alleged injury is based only on a reduction in the value of $FET and a generic undermining of the Alliance (Opp. at 39), and does not dispute that damages are limited to out-of-pocket expenses but not the benefit of the bargain. *See* MTD at 38; *supra* Section II.B.4.

**III.    <u>PLAINTIFFS' ALTER EGO ALLEGATIONS SHOULD BE DISREGARDED.</u>**

The CAC alleges only that the Individual Defendants "dominate and control" Ocean Foundation, are "viewed by the markets as the alter egos of Ocean," and even concedes it is

"unclear" whether OceanDAO is an alter ego of Messrs. Pon and McConaghy. CAC ¶¶ 17, 52. Those are conclusions, not facts, and courts routinely reject alter ego theories premised on such generalized assertions. *See Caplan v. Dollinger*, 803 F. Supp. 3d 219, 233 (S.D.N.Y. 2025) (rejecting alter ego theory alleging "in conclusory and group fashion" that certain defendants were "completely dominated" by other defendants); *see also Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 105 (E.D.N.Y. 2025) ("conclusory statements of domination and control and failure to allege particularized facts are insufficient to impose alter ego liability").

With respect to OceanDAO, Plaintiffs attempt to bridge this gap by asserting that, if discovery were to confirm the absence of separateness, individual liability would follow. Opp. at 40. But Rule 12(b)(6) requires Plaintiffs to plead facts in the CAC plausibly supporting alter ego liability plausible, not theories contingent on future fact development. *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (dismissing alter ego claim at the pleading stage appropriate where "pleadings are devoid of *any* specific facts or circumstances supporting" alter ego liability.).

Finally, Plaintiffs assert that OceanDAO and Ocean Expeditions were "instrumentalities" of the alleged scheme, but they plead no facts showing that either entity was so dominated by Messrs. Pon and McConaghy as to lack a separate existence or function as a mere instrumentality. Simply labeling entities as "instrumentalities" is not a substitute for well-pleaded facts. *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 522 (W.D.N.Y. 2007) (rejecting as conclusory allegations that the defendants "ignored the entity … and treated the [alleged alter ego] as a mere instrumentality or conduit for … their own private business").

## CONCLUSION

For these reasons and those set forth in the MTD, the Court should dismiss the CAC with prejudice.

Dated:    June 26, 2026                                        Respectfully Submitted,

| **MCDERMOTT WILL & SCHULTE LLP** | **BROWN RUDNICK LLP** | **MORRISON COHEN LLP** |
|---|---|---|
| By: /s/ *James A. Pardo* | By: /s/ *Stephen D. Palley* | By: /s/ *Jason Gottlieb* |
| Joseph B. Evans<br>James A. Pardo<br>Lisa Gerson<br>Daniel H. Kaltman | Stephen D. Palley<br>Daniel L. Sachs | Jason Gottlieb<br>Michael Mix<br>Emma McGrath |
| One Vanderbilt Avenue<br>New York, NY 10017<br>Tel: (212) 547-5767<br>jbevans@mcdermottlaw.com<br>jpardo@mcdermottlaw.com<br>lgerson@mcdermottlaw.com<br>dkaltman@mcdermottlaw.com | 1900 N Street NW<br>4th Floor<br>Washington, DC 20036<br>Tel: (202) 536-1700<br>spalley@brownrudnick.com<br>dsachs@brownrudnick.com | 909 Third Avenue<br>New York, NY 10022<br>Tel: (212) 735-8600<br>jgottlieb@morrisoncohen.com<br>mmix@morrisoncohen.com<br>emcgrath@morrisoncohen.com |
| *Attorneys for Defendant Ocean Protocol Foundation Ltd.* | *Attorneys for Defendants Bruce Pon, Christina Pon, and Trent McConaghy* | *Attorneys for Defendants Ocean Expeditions Ltd. and OceanDAO (through its successor-in-interest Ocean Expeditions Ltd.)* |

21

## **PAGE LIMIT CERTIFICATION**

Pursuant to the Court's Order Granting Letter Motion for Extension of Time (ECF 55), Defendants certify that the brief herein is 20 pages and complies with the Court's order granting an enlargement of the applicable page limitations for the briefs in this case.

By: *  /s/ James A. Pardo*

22